M. Laurie Murphy (SBN 121866)
Stephen F. Moeller (SBN 56344)
sfm@vrmlaw.com
Valensi Rose, PLC
1888 Century Park East, Suite 1100
Los Angeles, CA 90067
Tel: (310) 601-7020
Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION

| | |
|---|---|
| THE GARMON CORPORATION, a California corporation <br><br> Plaintiff(s), <br><br> v. <br><br> HEALTHYPETS, INC., a California corporation; MANDEEP GHUMMAN <br><br> Defendant(s). | CASE NUMBER: <br><br> COMPLAINT FOR INJUNCTIVE RELIEF, TRADEMARK AND COPYRIGHT INFRINGEMENT, AND DAMAGES: <br> 1. INJUNCTIVE RELIEF <br> 2. BREACH OF CONTRACT <br> 3. TRADEMARK INFRINGEMENT (15 U.S.C. § 1114) <br> 4. UNFAIR COMPETITION ((15 U.S.C. § 1125(a)) <br> 5. COPYRIGHT INFRINGEMENT (17 U.S.C. § 501) <br> 6. UNFAIR COMPETITION (B&P §§ 17200 ET SEQ. <br> 7. TORTIOUS INTERFERENCE – CONTRACT <br> 8. TORTIOUS INTERFERENCE- ECONOMIC ADVANTAGE |

Plaintiff, The Garmon Corporation ("TGC"), through its undersigned attorneys, alleges the following causes of action against Defendants, HealthyPets, Inc. ("HPI") and Mandeep Ghumman, a/k/a Manny Ghumman ("Ghumman," and collectively with HPI, the "Defendants"):

790078 1

## NATURE OF ACTION

1.  This is a civil action seeking injunctive relief and damages for copyright infringement under the Copyright Act of 1976, 17 U.S.C. §§ 101 *et seq*., federal trademark infringement and unfair competition in violation of the Lanham Act, 15 U.S.C. §§ 1051, *et seq*., and breach of contract, unfair competition, and other claims under California statutory and common law.

## THE PARTIES

2.  TGC is a corporation organized under the laws of the State of California with its principal place of business at 27461 Via Industria, Temecula, California 92590.

3.  HPI is a corporation organized under the laws of the State of California with its principal place of business at 34501 Seventh Street, Union City, California 94587.

4.  Ghumman is an individual and a citizen of California who, upon information and belief, resides in Menlo Park, California.

## JURISDICTION AND VENUE

5.  Subject matter jurisdiction is proper in this Court pursuant to 28 U.S.C. §§ 1331 and 1338, and 15 U.S.C. § 1121, because this case involves federal questions of copyright infringement under the Copyright Act of 1976, 17 U.S.C. §§ 106 and 501, and trademark infringement and unfair competition under the Lanham Act, 15 U.S.C. §§ 1141(a) and 1125(a).

6.  Additionally, this Court has supplemental jurisdiction over TGC's state law claims pursuant to 28 U.S.C. § 1367(a).

7.  This Court may exercise personal jurisdiction over Defendants because they have sufficient contacts with the State of California.  Ghumman is a resident of California, derives substantial revenue from goods sold in California, and continues to promote and sell TGC's products without

790078 1

authorization to customers in California, and thereby has directed his wrongful conduct to the citizens of California.   HPI is a company incorporated in California and, on information and belief, derives substantial California, and thereby has directed its wrongful conduct to the citizens of California.

8.   Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b) and (c), because Defendants transact business within this judicial district, TGC's copyrights and trademarks have been infringed within this judicial district, and the contract at issue provides for a forum-selection clause whereby HPI agreed to litigate all disputes in Riverside, California.   See Cal. Civ. Proc. Code § 395(a).

9.   Such contract further provides that it shall be governed by the laws of the State of California.

## **FACTUAL ALLEGATIONS**

### ***Background***

10.   For more than 20 years, TGC has manufactured and sold through dealers high-quality products to help ensure better lives for pets and other animals.

11.   TGC manufactures a wide range of products for dogs, cats and horses.

12.   TGC produces products at a Good Manufacturing Practice standards facility, following the highest industry standards.   Good Manufacturing Practice standards are regulations promulgated by the U.S. Food and Drug Administration ("FDA") under the authority of the Federal Food, Drug, and Cosmetic Act.   TGC's facility is FDA-registered and audited and is third-party audited by Underwriters Laboratories.

13.   TGC markets and sells its products through dealers authorized by TGC ("Authorized Dealers") that not only promote and sell the physical products marketed by TGC, but also provide certain services, abide by certain restrictions and apply knowledge and experience in connection

with such promotion and sale, effectively creating offerings that go beyond the physical products themselves and help TGC and its Authorized Dealers differentiate their offerings from others (the "Enhanced Products").

14. For example, Authorized Dealers provide advanced customer service support and outreach regarding TGC's products to end users through NATURVET University, which is an exclusive source of product education, training materials, and live support that has been developed and is maintained at great expense by TGC.

15. TGC provides Authorized Dealers with access to NATURVET University, and it assigns to its Authorized Dealers a dedicated TGC sales representative to facilitate the education and support provided to Authorized Dealers through NATURVET University.

16. In addition, Authorized Dealers are expected to comply with TGC product recalls and inventory stock rotation policies promulgated exclusively by TGC, which policies prohibit the sale of recalled and expired or unsaleable products in order to achieve the highest quality standards of TGC Products on the market.

17. In order to encourage compliance with such policies, TGC permits Authorized Dealers to participate in certain TGC-sponsored buy-back and stock rotation programs.

18. The services and restrictions characteristic of the Enhanced Products are also mandated in the agreements entered into by TGC and the Authorized Dealers (individually, the "Authorized Online Dealer Agreement") and encouraged elsewhere by one or more policies to which Authorized Dealers are subject.

19. The Authorized Online Dealer Agreement requires Authorized Dealers to, among other things: (a) promptly and effectively respond to questions and requests from end user customers; (b) represent TGC's products in a

professional manner during the term of the contract; (c) refrain from any conduct that could be detrimental to the reputation or integrity of TGC or its dealers; and (d) promptly comply with any requests from TGC relating to any law, regulation or recall of any or all TGC products.

20.  One of the policies to which Authorized Dealers are subject is TGC's Authorized Dealer Retail Price Policy (RPP) (the "Retail Policy"), a unilateral policy adopted by TGC that (a) prohibits unfair discounting and free-riding on the efforts of other Authorized Dealers by establishing minimum resale prices (individually, an "MRP" and in the singular or the plural, "MRP(s)") for certain TGC products (the "Covered Products") and (b) bans various other conduct with respect to some or all TGC products.

21.  Under the Retail Policy, each Authorized Dealer is free to make its own pricing and marketing decisions, but violations are penalized by denying the violator access to TGC products either temporarily or indefinitely.

22.  The Retail Policy (herein below, the "Policy") states that an Authorized Dealer (herein below a "Dealer") violates such policy by conduct that consists of one or more of the following:

   a. using the terms "lowest price, the "lowest prices" or "prices too low to show," any form of low-price guarantee or the substantive equivalent (as determined by TGC) of any or all of these terms or concepts;

   b. offering to match a lower price offered by another seller;

   c. in connection with the advertising, promotion or sale of any or all of the Covered Products: (i) a strike-through of any MRP(s) regardless whether one or more other prices is or are shown, or (ii) the failure to show a price for each of the Covered Products depicted, described or to which a reference is otherwise made;

d. other than as expressly authorized by TGC, with respect to any or all items of TGC products (or, if so designated by TGC, just one or more particular items of TGC products), knowingly or negligently directly or indirectly (i) advertising, promoting or selling in either or both of the following ways: (A) outside the USA and Canada, and (B) online in any fashion (unless and only to the extent each website used for such purpose by such Dealer is expressly approved by TGC for such use and which approval has not been rescinded by TGC in whole or part) and (ii) selling in any or all of the following ways: (A) to anyone for resale other than to any or all of the Authorized Dealers and TGC (such Dealer may drop ship to one or more end users (but not resellers) on behalf of any or all the Authorized Dealers, so long as such Dealer has not received TGC notice to the contrary which rescinds the approval of TGC therefor), (B) to each individual and entity appearing on the then-current Do-Not-Sell List (including without limitation drop shipping on behalf thereof), except to the extent as may be permitted therein and (C) except as otherwise permitted by the Policy, to anyone other than the Authorized Customers, including without limitation to the Special Accounts (for purposes of the Policy: (1) the "Authorized Customers" means actual and prospective end user purchasers (but not resellers) of any or all item(s) of the TGC products permitted by TGC and (2) the "Special Accounts" means, collectively, each individual or entity so designated by notice from TGC);

e. if an advertisement, promotion or other marketing vehicle (regardless of the medium employed) used or done by or on behalf of such Dealer (i) includes one or more trademarks, trade names, service marks, logotypes, images or copy in which TGC claims

rights (collectively, "TGC Intellectual Property") and (ii) is not consistent with either the guidelines for such use provided by notice from TGC or is otherwise expressly approved in advance in writing by TGC (the failure of such Dealer to receive such approval from TGC within ten (10) days after submission to and receipt by TGC of such advertisement, promotion or other marketing vehicle will be deemed to be a disapproval thereof);

f.  if a price for a Covered Product is shown in Internet advertising or promotion or as part of an Internet sale permitted by the Policy and (i) the price for such product does not appear on the initial webpage mentioning, depicting or describing such product or (ii) such price varies with respect to such product (exclusive of applicable taxes and all shipping, delivery and insurance charges) across any or all of (A) such initial webpage, (B) the in-the-cart (or other container) price, (C) the checkout price and (D) the substantive equivalent of any or all of them as determined by TGC;

g.  an invitation to click, rollover, call, e-mail, visit a location (such as a website, store or showroom) or otherwise communicate to obtain a price;

h.  the promotion or sale to group purchasers, except at price(s) no less than each applicable MRP;

i.  advertising or promoting a trade-in offer for any or all TGC product or any other product(s) in connection with or applicable to any or all of the Covered Products, regardless whether a specific trade-in price or value is advertised or promoted;

j.  except as otherwise directed by the Policy, on any or all proposals, quotations, contracts, invoices and receipts provided to or prepared for the benefit of any or all of such Dealer's potential and actual

customers in connection with the offer or sale of any or all of the Covered Products (individually and collectively, "Customer Communications"), the failure of such Dealer to itemize the price charged for each of the products and services shown or referred to on such Customer Communications, regardless whether such Customer Communications contain(s) any reference to any or all of the Covered Products; and

k. one or more tactics which TGC determines is or are intended to circumvent application of the Policy.

23. To facilitate the operation of the Authorized Online Dealer Agreement and each related policy with respect to the marketing and sale of the Enhanced Products, resellers that sell to Authorized Dealers ("Distributors" and individually, a "Distributor") enter into agreements with TGC (individually, the "Authorized Distributor Agreement").

24. In the ordinary course of its business, TGC maintains and provides to the Distributors on a weekly basis a "Do-Not-Sell List" of accounts that have been restricted from purchasing TGC's products.

25. Under the Authorized Distributor Agreement, a Distributor must, among other things, refrain from selling, supplying or drop shipping in any or all of the following ways to or on behalf of: (a) anyone for resale other than to any or all of the Authorized Dealers and TGC, (b) to any or all actual or prospective end user purchasers other than through such Distributor's own retail operation, if any (such Distributor may drop ship to one or more end user purchasers (but not resellers) on behalf of any or all of the Authorized Dealers, so long as the Distributor has not received notice from TGC which rescinds the approval of TGC therefor) and (c) each individual and entity (i) that is one of the Special Accounts (as defined by TGC) nor (ii) appearing on the then-current Do-Not-Sell List (including without

limitation drop shipping on behalf thereof), except to the extent as may be permitted therein.

26.   The approach of offering the Enhanced Products (i.e., high-quality products coupled with certain services, particular restrictions, knowledge and experience) has been developed by TGC over a significant period of time and at considerable expense to TGC and provides a substantial advantage to TGC and its Authorized Dealers over competitors.

27.   Purchasers and potential purchasers of TGC products have come to expect such approach from TGC and its Authorized Dealers.

### *TGC's Intellectual Property*

28.   Many of the products that TGC manufactures and sells are under TGC's federally registered trademarks NATURVET, VET CLASSICS, PET ORGANICS and OVERBY FARM.

29.   NATURVET is a federally-registered trademark in the United States Patent and Trademark Office (the "USPTO") (Registration No. 2,002,613) and is owned by TGC.   A copy of the NATURVET Certificate of Registration is attached hereto as part of Group Exhibit A.

30.   VET CLASSICS is a federally-registered trademark in the USPTO (Registration No. 3,973,579) and is owned by TGC.   A copy of the VET CLASSICS Certificate of Registration is attached hereto as part of Group Exhibit A.

31.   PET ORGANICS is a federally-registered trademark in the USPTO (Registration No. 3,703,952) and is owned by TGC.   A copy of the PET ORGANICS Certificate of Registration is attached hereto as part of Group Exhibit A.

32.   OVERBY FARM is a federally-registered trademark in the USPTO (Registration No. 3,584,717) and is owned by TGC.   A copy of the

OVERBY FARM Certificate of Registration is attached hereto as part of Group Exhibit A.

33.  Apart from TGC's four primary trademarks (NATURVET, VET CLASSICS, PET ORGANICS and OVERBY FARM), TGC also owns the following 24 federally-registered trademarks, whose Certificates of Registration are also included in Group Exhibit A, and which, along with such primary trademarks are referred to in this Complaint individually and collectively, as the "TGC Trademarks":

  a. ALLER-911 (Registration No. 4,242,068);

  b. ARTHRISOOTHE (REGISTRATION NO. 4,012,511);

  c. ARTHRIEASE (REGISTRATION NO. 4,104,323);

  d. BERRIER (REGISTRATION NO. 3,330,783);

  e. BITTER YUCK! (REGISTRATION NO. 3,919,928);

  f. CALM DOWN (REGISTRATION NO. 3,919,904);

  g. CRANBERRY COMFORT (REGISTRATION NO. 4,104,331);

  h. CRANBERRY RELIEF (REGISTRATION NO. 4,124,048);

  i. GRASSSAVER (REGISTRATION NO. 4,012,590);

  j. HIP FLEX (REGISTRATION NO. 3,610,474);

  k. NO DIG! (REGISTRATION NO. 3,923,174);

  l. NO GO! (REGISTRATION NO. 3,923,173);

  m. NO MARK! (Registration No. 3,923,172);

  n. NO SCOOT (Registration No. 4,225,288);

  o. NO SCRATCH (Registration No. 3,923,171);

  p. NO STAY! (Registration No. 3,919,903);

  q. ODOKLEEN (Registration No. 1,053,138);

  r. OUTTA MY BOX (Registration No. 5,167,411);

  s. POTTY HERE (Registration No. 4,640,723);

  t. QUIET MOMENTS (Registration No. 3,923,364);

u.  SEPTIDERM-V (Registration No. 4,015,759);

v.  SHOWBATH (Registration No. 1,954,954);

w.  STOOL EASE (Registration No. 4,428,270); and

x.  YUCK! (Registration No. 3,970,332).

34.    The TGC Trademarks are used by TGC in the marketing and sale of the Enhanced Products.

35.    TGC owns and operates the domain NaturVet.com (the "TGC Website").

36.    TGC uses the TGC website in the ordinary course of its business to advertise and promote the Enhanced Products.

37.    TGC has filed applications with the United States Copyright Office for the following copyright registrations, which are currently pending (hereinafter, the "TGC Copyright Works"):

| Title of Work | Copyright Application No. | Application Date |
|---|---|---|
| Photograph of NATURVET QUIET MOMENTS Product Package | 1-6481413718 | April 11, 2018 |
| Photograph of NATURVET GRASSSAVER Product Package | 1-6477995191 | April 11, 2018 |
| Advertising Text for NATURVET GRASSSAVER Tabs | 1-6484634796 | April 12, 2018 |
| Advertising Text for NATURVET Ear Wash Liquid | 1-6484364431 | April 12, 2018 |

38.    The TGC Copyright Works have been published on the TGC Website.

39.    TGC is the true, rightful and sole owner of the TGC Copyright Works.

40.    TGC has complied with all statutory requirements necessary to secure federal copyright registrations for the TGC Copyright Works.

41.    The Copyright Works are original works of authorship and constitute copyrightable subject matter under the copyright laws of the United States.

### *The Dealer Agreement*

42.  HPI is an online distributer and retailer of pet supplies and also a former Authorized Dealer of the Enhanced Products.

43.  Ghumman serves as Chief Executive Officer and Director of HPI.

44.  On or about April 19, 2016, TGC and HPI entered into the Authorized Online Dealer Agreement (the "Dealer Agreement"). A true and correct copy of the fully-executed Dealer Agreement is attached hereto as Exhibit B.

45.  The Dealer Agreement provides that HPI agrees to sell TGC products as a Nonexclusive Authorized Online Dealer, as such term is defined in the Dealer Agreement.

46.  Consistent with the marketing and sale of the Enhanced Products, the Dealer Agreement requires HPI to, among other things: (a) promptly and effectively respond to questions and requests from end user customers; (b) represent TGC's products in a professional manner during the term of the contract; (c) refrain from any conduct that could be detrimental to the reputation or integrity of TGC or its dealers; and (d) promptly comply with any requests from TGC relating to any law, regulation or recall of any or all TGC products.

47.  During the time that HPI was an Authorized Dealer, HPI was subject to the Retail Policy and the controls included in it.

48.  The Dealer Agreement contains an integration clause stating that it, along with the TGC policies, constitute the entire understanding of the parties and supersedes all arguments, representations or statements between TGC and HPI.

49. After entering into the Dealer Agreement, HPI sold the Enhanced Products bearing the TGC Trademarks, including, but not limited to, NATURVET, VET CLASSICS, PET ORGANICS and OVERBY FARM.

50. HPI owns and operates the following websites (collectively the "HPI Websites"): EntirelyPets.com; HealthyPets.com; NaturalPets.com; EntirelyPetsPharmacy.com and HeartlandVetSupply.com.

### *TGC's Termination of the Dealer Agreement & HPI's Post-Termination Obligations*

51. Prior to September 12, 2017, TGC indefinitely suspended HPI's access to TGC's products due to HPI's repeated violations of the Retail Policy.

52. The Dealer Agreement allows either TGC or HPI to terminate the contract effective thirty (30) days after notice is given. Exhibit B, Section 5.

53. On September 12, 2017, TGC's Director of Sales notified Ghumman in writing that TGC was terminating the Dealer Agreement (the "Notice of Termination"). A true and correct copy of the September 12, 2017 email from TGC to Ghumman is attached hereto as **Exhibit C**.

54. The Notice of Termination informed HPI that it was no longer an Authorized Dealer of TGC's products.

55. Consistent with the Dealer Agreement, the Notice of Termination further informed HPI that TGC would be willing to "buy back any re-sellable inventory" of TGC's products.

56. Pursuant to the Dealer Agreement, HPI's termination as an Authorized Dealer became effective October 12, 2017, and on such date HPI was prohibited from selling TGC's products anywhere, including, but not limited to, on any of the HPI Websites or in stores or on third party websites.

57.    When TGC lawfully terminated the Dealer Agreement, HPI simultaneously lost its status as an Authorized Dealer of TGC's products and certain post-termination obligations arose.

58.    Under the Dealer Agreement, HPI continues to have post-termination obligations to TGC, including, but not limited to, the following (collectively referred to as the "Post-Termination Obligations"):

    a.  Refrain from representing itself as an authorized dealer of TGC's products;

    b.  Discontinue the use of TGC's intellectual property, including its trademarks, trade names, copyrighted images and text, trade dress and designs;

    c.  Discontinue the advertising, promotion and sale of any of TGC's products;

    d.  Discontinue the use of anything which would give the impression that HPI is an authorized dealer, reseller or representative of or for any and all of TGC's products or has any affiliation with TGC;

    e.  Refrain from knowingly or negligently directly or indirectly advertising, promoting or selling in any of the following ways: online, to anyone for resale or to anyone other than authorized customers; and

    f.  As requested by TGC, sell the remainder of HPI's inventory of TGC's products to TGC.

### *Defendants' Infringing Activity and Breach of Post-Termination Obligations*

59. HPI has failed to perform the Post-Termination Obligations.

60. In the normal course of its business, TGC maintains an inventory of the TGC Products that it sold to HPI under the Dealer Agreement.

61. As of the date of this Complaint, under the direction of Ghumman, HPI continues to advertise, promote, and sell hundreds of TGC's products to end users on the HPI Websites without authorization and in breach of the Dealer Agreement.

62. TGC is unable to trace some or all of the TGC Products that HPI continues to advertise, promote, and sell to the inventory that TGC sold to HPI under the Dealer Agreement.

63. Upon information and belief, under the direction of Ghumman, HPI has purchased, and continues to purchase or continues to attempt to purchase, without authorization, TGC's Products from TGC's Authorized Dealers and Distributors in violation of TGC's Post-Termination Obligations and in violation of TGC's third party Authorized Online Dealer Agreements, the Retail Policy, and the Authorized Distributor Agreements.

64. HPI's unauthorized advertisement, promotion and sale of TGC's products in violation of the Post-Termination Obligations gives the impression that HPI is an authorized dealer, reseller, or representative TGC's Enhanced Products even though the Dealer Agreement has been lawfully terminated.

65. Upon information and belief, under the direction of Ghumman, HPI continues to advertise, promote, and sell TGC's products by passing them off to consumers as the Enhanced Products but without actually providing the services, abiding by the restrictions or applying the knowledge and experience characteristic of the Enhanced Products.

66. Under the direction of Ghumman, HPI continues to use without authorization the TGC Trademarks and TGC Copyright Works on the HPI Websites in a manner that would lead a reasonable consumer to believe that HPI is an authorized dealer, reseller, or representative of TGC's Enhanced Products.

67. Under the direction of Ghumman, HPI continues to use without authorization TGC's intellectual property, including, without limitation, the TGC Trademarks, the TGC Copyright Works and TGC's trade names, images, text, trade dress, and designs.

68. Under the direction of Ghumman, HPI continues to use without authorization the NATURVET trademark in html source code and metatags on the HPI Websites:

69. Under the direction of Ghumman, HPI continues to use the NATURVET trademark without authorization in order to advertise, promote, and sell numerous NATURVET products on the HPI Websites in violation of HPI's Post-Termination Obligations.

70. Under the direction of Ghumman, HPI continues to use without authorization the TGC Copyright Works as follows, without limitation, by and by way of example:

    a. Photograph of NATURVET QUIET MOMENTS Product Package (*see* **Exhibit D**, including comparison);

    b. Photograph of NATURVET GRASSSAVER Product Package (*see* **Exhibit E**, including comparison);

| Page Title | URL |
|---|---|
| NaturVet & GreenTree | https://www healthypets com/naturvet.html |
| NaturVet products \| EntirelyPets | https://www entirelypets com/naturvet html |
| NaturVet products \| EntirelyPets | http://www.naturalpets.com/naturvet html |
| NaturVet & GreenTree | https://entirelypetspharmacy.com/naturvet html |
| EntirelyPets @ Amazon.com: NaturVet | https://www amazon.com/s/ref=sr_il_ti_merchantitems?me=A2701FG002WN6Z&fst=as%3Aoff&rh=p_4%3ANaturVet&ie=UTF8&qid=1522683248&lo=merchantitems |
| | https://www amazon com/s/ref=sr_pg_2?me=A2701FG002WN6Z&fst=as%3Aoff&rh=p_4%3ANaturVet&page=2&ie=UTF8&qid=1522683365&lo=merchantitems |
| | https://www.amazon.com/s/ref=sr_pg_3?me=A2701FG002WN6Z&fst=as%3Aoff&rh=p_4%3ANaturVet&page=3&ie=UTF8&qid=1522683400&lo=merchantitems |
| Items in EntirelyPets.com Pet Supplies store on eBay! | http://stores ebay com/entirelypetsmedstore/_i html?_dmd=2&_nkw=naturvet&rt=nc&_ipg=192 |

    c.  Advertising Text for NATURVET GRASSSAVER Tabs (*see* **Exhibit F**, including comparison); and

    d.  Advertising Text for NATURVET Ear Wash Liquid (*see* **Exhibit G**, including comparison).

71.    Under the direction of Ghumman, HPI continues to use these and numerous other of TGC's copyrighted images and text, trade dress, and designs without authorization in order to advertise, promote, and sell numerous TGC products in violation of HPI's Post-Termination Obligations.

72.    Upon information and belief, Ghumman enjoys a direct financial benefit from HPI's infringing activity.

73.    Upon information and belief, Ghumman supervised, controlled, and/or directed the illegal infringing acts of HPI.

74.    Upon information and belief, Ghumman was and continues to be actively involved in the unauthorized advertisement, promotion and sale of TGC's products bearing the TGC Trademarks.

75.     TGC has demanded that Ghumman and HPI cease and desist from violating the Post-Termination Obligations outlined without limitation hereinabove; however, Ghumman and HPI have simply ignored both such obligations and such demand.  A true and correct copy of TGC's February 16, 2018 cease and desist letter to Ghumann and HPI is attached hereto as **Exhibit H**.

## FIRST CLAIM
## INJUNCTIVE RELIEF FOR BREACH OF CONTRACT

76.     TGC incorporates by reference the previous paragraphs of this Complaint as if fully set forth herein.

77.     The Dealer Agreement is a valid and enforceable contract.

78.     TGC performed its obligations under the Dealer Agreement, including without limitation, providing written notice of termination to HPI.

79.     HPI has materially breached the Post-Termination Obligations of the Dealer Agreement.

80.     HPI's breach of the Post-Termination Obligations of the Dealer Agreement has proximately caused TGC to suffer injury for which there is no adequate remedy at law, including without limitation the continuing loss of goodwill associated with TGC, its products, and the Authorized Dealers.

81.     TGC has suffered and continues to suffer irreparable harm as a direct and proximate result of HPI's breaches of the Post-Termination Obligations because HPI's wrongful conduct is continuous and ongoing.

82.     TGC's remedy at law is inadequate to compensate it for the damages that HPI has caused and continues to cause as a result of its failure and refusal to honor the Post-Termination Obligations because they are difficult to approximate and are ongoing.

83.   It is likely that TGC will succeed on the merits of this claim because the Post-Termination Obligations are unambiguous, and it is obvious to any reasonable person that HPI continues to flagrantly breach them.

84.   Unless enjoined, HPI's breach will be detrimental to the reputation and integrity of TGC and its products.

## SECOND CLAIM
## DAMAGES FOR BREACH OF CONTRACT
### (In the Alternative)

85.   TGC incorporates by reference the previous paragraphs of this Complaint as if fully set forth herein.

86.   The Dealer Agreement is a valid and enforceable contract.

87.   TGC performed its obligations under the Dealer Agreement, including without limitation, providing written notice of termination to HPI.

88.   HPI has materially breached the Post-Termination Obligations of the Dealer Agreement.

89.   As a direct and proximate result of the foregoing acts by HPI, TGC has suffered, and continues to suffer substantial damages not yet determinable, including loss of goodwill, loss of profits, and other compensable damages.

## THIRD CLAIM
## FEDERAL TRADEMARK INFRINGEMENT
### (15 U.S.C. § 1114)

90.   TGC incorporates by reference the previous paragraphs of this Complaint as if fully set forth herein.

91.   TGC owns, has the exclusive right to use, and actively uses the TGC Trademarks in the United States.

92.   HPI has, without the consent or authorization from TGC, used and continues to use some or all of the TGC Trademarks, through its

unauthorized sale of TGC's products on the HPI Websites and other locations, and in interstate commerce.

93. HPI has made and continues to make misrepresentations about TGC's products, their origin and HPI's authorization to promote and sell them in HPI's advertising and promotion of TGC's products.

94. HPI's misrepresentations actually deceived or tended to deceive the recipients of HPI's advertising and promotion of TGC's products.

95. HPI's misrepresentations are likely to influence end users' purchasing decisions.

96. HPI's misrepresentations were made in interstate commerce.

97. The TGC products that HPI offers and sells are materially different than the Enhanced Products offered and sold by TGC through its Authorized Dealers, because HPI no longer provides the services, abides by the restrictions and applies knowledge and experience in connection with such promotion and sale as required or encouraged by the terms and conditions of the Authorized Online Dealer Agreement and the Retail Policy.

98. HPI's use of the TGC Trademarks and copying of TGC's product descriptions and images is likely to cause confusion, mistake and deception as to the affiliation, connection or association of HPI with TGC and the TGC Trademarks, and as to the origin, sponsorship or approval of HPI's goods, services or commercial activities.

99. The wrongful and unauthorized conduct of HPI as set forth herein constitutes direct infringements of TGC's rights in the TGC Trademarks in violation of Section 32(1) of the Lanham Act, 15 U.S.C. 1114(1).

100. HPI's acts have been willful, intentional and with full knowledge that TGC owns and has the exclusive right to use the TGC Trademarks.

101. As a direct and proximate result of the foregoing acts by HPI, TGC has suffered, and continues to suffer substantial damages not yet determinable,

including loss of goodwill, loss of profits and irreparable injury for which there is no adequate remedy at law.

### FOURTH CLAIM
### UNFAIR COMPETITION
### (Section 43(a) of the Lanham Act – 15 U.S.C. § 1125(a))

102. TGC incorporates by reference the previous paragraphs of this Complaint, including Paragraphs 91 through 98 above, as if fully set forth herein.

103. Defendants are misleading consumers by passing off TGC's products bearing the TGC Trademarks as containing no material differences from the Enhanced Products that are offered only by TGC and its Authorized Dealers.

104. Absent a disclaimer from HPI that HPI is not an Authorized Dealer of the TGC Products, a reasonable consumer of TGC's products would believe that they are purchasing the Enhanced Products from an Authorized Dealer.

105. The wrongful and unauthorized conduct of Defendants as set forth herein constitutes false designation of origin, false advertising, and unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. 1125(a).

106. Defendants' acts have been willful, intentional and with full knowledge that TGC owns and has the exclusive right to use the TGC Trademarks.

107. As a direct and proximate result of the foregoing acts by Defendants, TGC has suffered, and continues to suffer substantial damages not yet determinable, including loss of goodwill, loss of profits and irreparable injury for which there is no adequate remedy at law.

/ / /

/ / /

/ / /

**FIFTH CLAIM**
**COPYRIGHT INFRINGEMENT**
**(17 U.S.C. §§ 106 and 501)**

108.  TGC incorporates by reference the previous paragraphs of this Complaint as if fully set forth herein.

109.  HPI has not received any license, assignment, or other authorization to exploit and reproduce the TGC Copyright Works.

110.  HPI has and continues to reproduce, make derivative works of, distribute and display the TGC Copyright Works, in violation of the Copyright Act of 1976, 17 U.S.C. § 501.

111.  HPI's acts have been willful, intentional and with full knowledge that TGC owns and has the exclusive right to use the TGC Copyright Works.

112.  As a direct and proximate result of the foregoing acts by HPI, TGC has suffered, and continues to suffer substantial damages not yet determinable, including loss of goodwill, loss of profits and irreparable injury for which there is no adequate remedy at law.

**SIXTH CLAIM**
**UNFAIR COMPETITION**
**(Cal. Bus. & Prof. Code §§ 17200 and 17500 *et seq.*)**

113.  TGC incorporates by reference the previous paragraphs of this Complaint, including Paragraphs 91 through 98 and 103 through 104 above, as if fully set forth herein.

114.  The wrongful and unauthorized conduct of Defendants as set forth herein constitutes unfair competition as defined by California Business & Professions Code, §§ 17200 and 17500 *et seq.*

115.  Defendants' acts have been willful, intentional and with full knowledge that TGC owns and has the exclusive right to use the TGC Trademarks.

116. As a direct and proximate result of the foregoing acts by Defendants, TGC has suffered, and continues to suffer substantial damages not yet determinable, including loss of goodwill, loss of profits and irreparable injury for which there is no adequate remedy at law.

## SEVENTH CLAIM
## TORTIOUS INTERFERENCE WITH CONTRACT

117. TGC incorporates by reference the previous paragraphs of this Complaint, including Paragraphs 91 through 98 and 103 through 104 above, as if fully set forth herein.

118. TGC has enjoyed long and successful business relationships with its Authorized Dealers and Distributors that have contracted with TGC to sell TGC's products.

119. The Authorized Online Dealer Agreements, the Retail Policy, the Authorized Distributor Agreements, and other agreements and policies between TGC and the Authorized Dealers and Distributors (collectively, the "TGC Agreements") are valid and enforceable.

120. Upon information and belief, Defendants know, or should know, of the existence of the TGC Agreements.

121. Upon information and belief, through the wrongful and unauthorized conduct of Defendants as set forth herein, Defendants have willfully, knowingly, and intentionally induced Authorized Dealers and Distributors to breach the TGC Agreements.

122. Upon information and belief, Defendants are using false pretenses to induce Authorized Dealers and Distributors to sell TGC products to HPI in breach of their obligations to TGC under the TGC Agreements.

123. The conduct of Defendants is willful, malicious and unjustified, and such interference is neither privileged nor excusable.

124. As a direct and proximate result of the foregoing acts by Defendants, TGC has suffered, and continues to suffer substantial damages not yet determinable, including loss of goodwill, loss of profits, and other compensable damages.

## EIGHTH CLAIM
## TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

125. TGC incorporates by reference the previous paragraphs of this Complaint, including Paragraphs 91 through 98, 103 through 104, and 118 through 121 above, as if fully set forth herein.

126. Upon information and belief, through the wrongful and unauthorized conduct of Defendants as set forth herein, Defendants have interfered with TGC's relationships with its Authorized Dealers and Distributors.

127. The wrongful and unauthorized conduct of Defendants as set forth herein constitutes tortious interference with TGC's prospective business relationships with the Authorized Dealers and Distributors.

128. The conduct of Defendants was done by wrongful means and for the purpose of harming TGC and its distribution system.

129. By passing itself as an authorized dealer of TGC's products without offering the Enhanced Products, HPI is able to undercut the Authorized Dealers and Distributors on price, driving prices down with their unfair advantage and making it difficult for TGC, the Authorized Dealers, and Distributors to make a profit.

130. The conduct of Defendants is willful, malicious and unjustified, and such interference is neither privileged nor excusable.

131. As a direct and proximate result of the foregoing acts by Defendants, TGC has suffered, and continues to suffer substantial damages not yet

determinable, including loss of goodwill, loss of profits, and other compensable damages.

## **PRAYER FOR RELIEF**

WHEREFORE, TGC seeks relief as follows:

1.  That upon motion, the Court issue a preliminary injunction, enjoining and restraining Defendants, and their agents, employees, successors and assigns, and all other persons acting in concert or conspiracy with HPI or affiliated with HPI in the following manner, and in accordance with the terms of the Dealer Agreement:

    a.  Immediately cease: (i) advertising, promoting and selling any and all TGC products, and (ii) any conduct that would give the impression that HPI is an authorized dealer, reseller, or representative of or for any or all of such products or has any affiliation whatsoever with TGC or such products.

    b.  Refrain from knowingly or negligently directly or indirectly: (i) advertising, promoting, or selling TGC's products online in any fashion, unless and only to the extent each website and marketplace used for such purpose by such HPI is (along with each business name and storefront) approved in advance by TGC for such use and which approval has not been rescinded by TGC's Notice of Termination, and (ii) selling (A) to anyone for resale other than, in

the case of permitted returns, to any or all of the dealers or distributors of TGC, and (B) to anyone other than customers that TGC authorizes.

c.  Refrain from purchasing or attempting to purchase any of TGC's products from any third party, including but not limited to Authorized Dealers and Distributors that have contracted with TGC to sell TGC's products;

d.  Refrain from using in any manner any the TGC Trademarks, any marks confusingly similar thereto, or reproductions, counterfeits, copies or colorable imitations thereof in connection with any of TGC's goods or services; and

e.  Refrain from otherwise infringing any of TGC's trademarks, now or hereafter existing.

2.  That the Court issue a permanent injunction making permanent the orders requested in paragraph 1 of this Prayer for Relief.

3.  That upon motion, the Court issue a mandatory injunction, ordering that HPI sell or cause the sale to TGC of and, as directed by TGC and at HPI's expense, ship or cause to be shipped to TGC or its designee(s) each of the items in HPI's inventory of TGC's products (free of all liens, security interests, claims and encumbrances, other than that or those in favor of TGC) which is acceptable (as determined by TGC) at a price equal to the

lowest price HPI would have paid to TGC, or each relevant dealer or distributor therefor or, if unpaid, in lieu of the amount due to TGC, or each such dealer or distributor therefor, less in either case a reasonable restocking charge equal to the amount, if any.

4.   That upon motion, the Court issue a mandatory injunction, ordering that HPI return to TGC any TGC products that are in HPI's possession, custody or control.

5.   That TGC be awarded for Defendants' willful, intentional and malicious trademark infringement and unfair competition, and, as set forth in 15 U.S.C. 1117(a), the profits obtained by Defendants and the damages sustained by TGC by reason of Defendants' acts and omissions as alleged herein.

6.   That the Court award TGC its costs and reasonable attorney's fees pursuant to the Dealer Agreement and 15 U.S.C. 1117(a)(3).

7.   That the Court issue an order requiring Defendants to serve upon TGC, within thirty (30) days after issuance of the injunction requested above, a report, in writing, under oath, setting forth in detail the manner and form in which HPI has complied with the injunction.

8.   That, in the alternative to the injunctive relief requested in this Prayer for Relief, the Court enter judgment in favor of TGC and against HPI on the First Claim, in an amount to be proven at trial, plus interest, other sums

due and owing, costs of suit, reasonable attorney's fees, and such other and further relief as this Court deems just and proper.

9.   That, in addition to the injunctive relief requested in this Prayer for Relief, the Court enter judgment in favor of TGC and against Defendants on Claims VII and VIII in an amount to be proven at trial, plus interest, other sums due and owing, costs of suit, reasonable attorney's fees, and such other and further relief as this Court deems just and proper.

10.   That the Court grant such other relief as it deems just and proper.


DATED: April 19, 2018            Respectfully submitted,

                                 PLAINTIFF THE GARMON CORPORATION


                          By: /s/ *Stephen F. Moeller*
                                 Stephen F. Moeller
                                 One of its Attorneys

M. Laurie Murphy
mlm@vrmlaw.com
Stephen F. Moeller
sfm@vrmlaw.com
VALENSI ROSE, PLC
1888 Century Park East, Suite 1100
Los Angeles, CA 90057
Telephone:  (310) 601-7020
Facsimile: (310) 277-1706

EXHIBIT A

Int. Cls.: 3 and 5

Prior U.S. Cls.: 1, 4, 6, 18, 44, 46, 50, 51 and 52

## United States Patent and Trademark Office

Reg. No. 2,002,613
Registered Sep. 24, 1996

### TRADEMARK
### PRINCIPAL REGISTER

## NATURVET

GARMON CORPORATION (CALIFORNIA COR-
PORATION)
27461 B DIAZ ROAD
TEMECULA, CA 92590

FOR NON-MEDICATED, NON-VETERI-
NARY PET GROOMING PREPARATIONS,
NAMELY SHAMPOOS AND CONDITIONERS,
IN CLASS 3 (U.S. CLS. 1, 4, 6, 50, 51 AND 52)
FIRST USE 4–5–1995, IN COMMERCE
5–19–1995.

FOR ANIMAL FOOD SUPPLEMENTS; PET
SHAMPOOS, POWDERS, AND GROOMING
PREPARATIONS FOR DESTROYING AND/OR
REPELLING FLEAS, MEDICATED GELS,
CREAMS, AND OINTMENTS FOR TREATING
PET SKIN CONDITIONS CAUSED BY FLEA
BITES AND ALLERGIC REACTIONS, IN
CLASS 5 (U.S. CLS. 6, 18, 44, 46, 51 AND 52).
FIRST USE 4–5–1995, IN COMMERCE
5–19–1995.

SER. NO. 74–693,337, FILED 6–26–1995

GEORGE POLOGEORGIS, EXAMINING AT-
TORNEY

# United States of America

### United States Patent and Trademark Office

# Vet Classics

**Reg. No. 3,973,579**

**Registered June 7, 2011**

**Int. Cls.: 3 and 5**

**TRADEMARK**

**PRINCIPAL REGISTER**

GARMON CORPORATION (CALIFORNIA CORPORATION)
27461 VIA INDUSTRIA
TEMECULA, CA 92590

FOR NON-MEDICATED GROOMING PREPARATIONS, NAMELY, PET SHAMPOO CLEANSERS, LOTIONS AND SKIN AND COAT CARE PRODUCTS IN CLASS 3 (U S CLS 1, 4, 6 50, 51 AND 52)

FIRST USE 12-1-2005, IN COMMERCE 12 1-2005

FOR DIETARY SUPPLEMENTS FOR PETS AND NUTRITIONAL SUPPLEMENTS FOR ARTHRITIC PETS, VETERINARY PREPARATIONS FOR PETS FOR USE AS A CALMING AID, VETERINARY PREPARATION, NAMELY, DIETARY STOOL DEODORIZER FOR USE IN PETS, IN CLASS 5 (U S CLS 6, 18, 44, 46, 51 AND 52)

FIRST USE 12-1-2005, IN COMMERCE 12 1 2005

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PAR-TICULAR FONT, STYLE, SIZE, OR COLOR

NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "VET" APART FROM THE MARK AS SHOWN

SER NO 85-141,290, FILED 9-29 2010

CHRISTINA SOBRAL, EXAMINING ATTORNEY



David J. Kappos

Director of the United States Patent and Trademark Office

# United States of America

## United States Patent and Trademark Office

# PET ORGANICS

**Reg. No. 3,703,952**
Registered Nov 3 2009

**Int. Cl.: 5**

**TRADEMARK**
**PRINCIPAL REGISTER**

GARMON CORPORATION (CALIFORNIA CORPORATION)
27461-B DIAZ ROAD
TEMECULA, CA 92590

FOR ANIMAL REPELLANTS NAMELY, HERBAL-BASED NON-AEROSOL SPRAY FOR USE IN REPELLING PETS FROM TREATED AREAS HERBAL-BASED NON-AEROSOL SPRAY FOR USE IN DISCOURAGING PETS FROM DIGGING IN TREATED AREAS HERBAL-BASED NON-AEROSOL SPRAY FOR USE IN DISCOURAGING PETS FROM SCRATCHING TREATED SURFACES, HERBAL-BASED NON-AEROSOL SPRAY FOR USE IN DISCOURAGING PETS FROM CHEWING ON TREATED SURFACES HERBAL-BASED NON-AEROSOL SPRAY FOR USE IN CALMING ANIMALS WHEN SPRAYED ONTO SURFACES OR INTO AIR, ALL OF THE FOREGOING MADE IN PART OR IN WHOLE WITH ORGANIC INGREDIENTS, IN CLASS 5 (U S CLS 6, 18 44, 46, 51 AND 52)

FIRST USE 12-31 1978, IN COMMERCE 12-31-1978

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT STYLE SIZE OR COLOR

SEC 2(F)

SER NO 77-164,233, FILED 4 24-2007

JOHN DWYER, EXAMINING ATTORNEY



David J. Kappos
Director of the United States Patent and Trademark Office

# United States of America

## United States Patent and Trademark Office

# ALLER-911

**Reg. No. 4,242,068**

**Registered Nov. 13, 2012**

GARMON CORPORATION (CALIFORNIA CORPORATION)
27461 VIA INDUSTRIA
TEMECULA, CA 92590

**Int. Cls.: 3 and 5**

FOR: PET PRODUCTS, NAMELY NON-MEDICATED SHAMPOOS AND COAT RINSES
AND NON-MEDICATED EAR WASHES, IN CLASS 3 (U.S. CLS. 1, 4, 6, 50, 51 AND 52)

**TRADEMARK**

FIRST USE 2-29-2012, IN COMMERCE 2-29-2012

**PRINCIPAL REGISTER**

FOR: PET PRODUCTS, NAMELY, DIETARY SUPPLEMENTS, HERBAL TOPICAL CREAMS,
GELS, SALVES, SPRAYS, POWDER, BALMS, LINIMENT AND OINTMENTS TO RELIEVE
AND PREVENT ALLERGY SYMPTOMS AND TO IMPROVE CONDITION OF SKIN AND
COAT IN CLASS 5 (U.S. CLS. 6, 18, 44, 46, 51 AND 52)

FIRST USE 2-29-2012, IN COMMERCE 2-29-2012

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PAR-
TICULAR FONT, STYLE, SIZE, OR COLOR

SER. NO. 85-609,161, FILED 4-26-2012

HEATHER THOMPSON, EXAMINING ATTORNEY



*David J. Kappos*

Director of the United States Patent and Trademark Office

---

### REQUIREMENTS TO MAINTAIN YOUR FEDERAL TRADEMARK REGISTRATION

### WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.

---

**Requirements in the First Ten Years***
**What and When to File:**

> *First Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date. *See* 15 U S C §§1058, 1141k. If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court

> *Second Filing Deadline·* You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between the 9th and 10th years after the registration date +
> *See* 15 U S C §1059

**Requirements in Successive Ten-Year Periods***
**What and When to File:**

> You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between every 9th and 10th-year period, calculated from the registration date *

**Grace Period Filings***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee

---

The United States Patent and Trademark Office (USPTO) will NOT send you any future notice or reminder of these filing requirements.

---

***ATTENTION MADRID PROTOCOL REGISTRANTS:** The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the USPTO The time periods for filing are based on the U S registration date (not the international registration date) The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations *See* 15 U S C §§1058, 1141k However, owners of international registrations do not file renewal applications at the USPTO Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the World Intellectual Property Organization under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration *See* 15 U S C §1141j For more information and renewal forms for the international registration, see http //www wipo int/madrid/en/

**NOTE:** Fees and requirements for maintaining registrations are subject to change. Please check the USPTO website for further information. With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at http //www uspto gov



# United States of America

### United States Patent and Trademark Office

# ARTHRISOOTHE

**Reg. No. 4,012,511**
**Registered Aug. 16, 2011**

GARMON CORPORATION (CALIFORNIA CORPORATION)
27461 VIA INDUSTRIA
TEMECULA, CA 92590

**Int. Cl.: 5**

FOR: FOOD SUPPLEMENTS FOR HORSES, PETS AND LIVESTOCK, NUTRITIONAL SUPPLEMENTS FOR ARTHRITIC HORSES, PETS, AND LIVESTOCK, IN CLASS 5 (U.S. CLS. 6, 18, 44, 46, 51 AND 52)

**TRADEMARK**

FIRST USE 7-1-1996; IN COMMERCE 7-1-1996

**PRINCIPAL REGISTER**

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT, STYLE, SIZE, OR COLOR.

SER. NO. 85-226,811, FILED 1-26-2011

JULIE WATSON, EXAMINING ATTORNEY



*David J. Kappos*

Director of the United States Patent and Trademark Office

---

REQUIREMENTS TO MAINTAIN YOUR FEDERAL
TRADEMARK REGISTRATION

WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE
DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.

---

**Requirements in the First Ten Years\***
**What and When to File:**

> *First Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date   *See* 15 U S C §§1058, 1141k   If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court

> *Second Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between the 9th and 10th years after the registration date [4]
> *See* 15 U S C §1059

**Requirements in Successive Ten-Year Periods\***
**What and When to File:**

> You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between every 9th and 10th-year period, calculated from the registration date [4]

**Grace Period Filings\***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee

---

The United States Patent and Trademark Office (USPTO) will NOT send you any future notice or reminder of these filing requirements.

---

**\*ATTENTION MADRID PROTOCOL REGISTRANTS:** The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the USPTO  The time periods for filing are based on the U S registration date (not the international registration date)   The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations *See* 15 U S C §§1058, 1141k   However, owners of international registrations do not file renewal applications at the USPTO  Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the World Intellectual Property Organization  under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration   *See* 15 U S C §1141j  For more information and renewal forms for the international registration, see http //www wipo int/madrid/en/

**NOTE:** Fees and requirements for maintaining registrations are subject to change.  Please check the USPTO website for further information.  With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at http //www uspto gov

Page 2 / RN # 4,012,511

# United States of America

### United States Patent and Trademark Office

# ARTHRIEASE

**Reg. No. 4,104,323**

**Registered Feb. 28, 2012**

**Int. Cl.: 5**

**TRADEMARK**

**PRINCIPAL REGISTER**

GARMON CORPORATION (CALIFORNIA CORPORATION)
27461 VIA INDUSTRIA
TEMECULA, CA 92590

FOR: FOOD SUPPLEMENTS FOR HORSES, PETS, AND LIVESTOCK, NUTRITIONAL SUPPLEMENTS FOR ARTHRITIC HORSES, PETS, AND LIVESTOCK, IN CLASS 5 (U.S. CLS. 6, 18, 44, 46, 51 AND 52).

FIRST USE 7-1-1996; IN COMMERCE 7-1-1996

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT, STYLE, SIZE, OR COLOR.

SER. NO. 85-227,820, FILED 1-27-2011.

JULIE WATSON, EXAMINING ATTORNEY



*David J. Kappos*

Director of the United States Patent and Trademark Office

---

### REQUIREMENTS TO MAINTAIN YOUR FEDERAL
### TRADEMARK REGISTRATION

### WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE
### DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.

---

**Requirements in the First Ten Years***
**What and When to File:**

>    *First Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) between the
>    5th and 6th years after the registration date. *See* 15 U S C §§1058, 1141k  If the declaration is
>    accepted, the registration will continue in force for the remainder of the ten-year period, calculated
>    from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a
>    federal court

>    *Second Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) and an
>    Application for Renewal between the 9th and 10th years after the registration date *
>    *See* 15 U S C §1059

**Requirements in Successive Ten-Year Periods***
**What and When to File:**

>    You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between
>    every 9th and 10th-year period, calculated from the registration date *

**Grace Period Filings***

The above documents will be accepted as timely if filed within six months after the deadlines listed above
with the payment of an additional fee

---

### The United States Patent and Trademark Office (USPTO) will NOT send you any future notice or
### reminder of these filing requirements.

---

**\*ATTENTION MADRID PROTOCOL REGISTRANTS:** The holder of an international registration with
an extension of protection to the United States under the Madrid Protocol must timely file the Declarations
of Use (or Excusable Nonuse) referenced above directly with the USPTO  The time periods for filing are
based on the U S registration date (not the international registration date)   The deadlines and grace periods
for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations
*See* 15 U S C §§1058, 1141k  However, owners of international registrations do not file renewal applications
at the USPTO  Instead, the holder must file a renewal of the underlying international registration at the
International Bureau of the World Intellectual Property Organization under Article 7 of the Madrid Protocol,
before the expiration of each ten-year term of protection, calculated from the date of the international
registration  *See* 15 U S C §1141j  For more information and renewal forms for the international registration,
see http //www wipo int/madrid/en/

**NOTE:** Fees and requirements for maintaining registrations are subject to change.  Please check the
USPTO website for further information.  With the exception of renewal applications for registered
extensions of protection, you can file the registration maintenance documents referenced above online
at http //www uspto gov



# United States of America

### United States Patent and Trademark Office

## BITTER YUCK!

**Reg. No. 3,919,928**
**Registered Feb. 15, 2011**

**Int. Cl.: 5**

**TRADEMARK**

**PRINCIPAL REGISTER**

GARMON CORPORATION (CALIFORNIA CORPORATION)
27461 VIA INDUSTRIA
TEMECULA, CA 92590

FOR: ANIMAL REPELLANT NAMELY, HERBAL BASED NON-AEROSOL SPRAY FOR USE IN DISCOURAGING PETS FROM CHEWING ON TREATED SURFACES, IN CLASS 5 (U.S. CLS. 6, 18, 44, 46, 51 AND 52).

FIRST USE 12-31-1999, IN COMMERCE 12-31-1999.

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT, STYLE, SIZE, OR COLOR.

SER. NO. 85-120,314, FILED 8-31-2010.

MICHAEL KEATING, EXAMINING ATTORNEY



*David J. Kappos*

Director of the United States Patent and Trademark Office



# United States of America

### United States Patent and Trademark Office

# CALM DOWN

**Reg. No. 3,919,904**

**Registered Feb. 15, 2011**

**Int. Cl.: 5**

**TRADEMARK**

**PRINCIPAL REGISTER**

GARMON CORPORATION (CALIFORNIA CORPORATION)
27461 VIA INDUSTRIA
TEMECULA, CA 92590

FOR ANIMAL REPELLANT, NAMELY, HERBAL-BASED NON-AEROSOL SPRAY FOR USE IN CALMING ANIMALS WHEN SPRAYED ONTO SURFACES OR INTO AIR, IN CLASS 5 (U.S. CLS. 6, 18, 44, 46, 51 AND 52)

FIRST USE 1-1-1985, IN COMMERCE 1-1-1985

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT, STYLE, SIZE, OR COLOR

SER. NO. 85-102,430, FILED 8-6-2010

MICHAEL KLALING, EXAMINING ATTORNEY



*David J. Kappos*

Director of the United States Patent and Trademark Office



# United States of America
### United States Patent and Trademark Office

# CRANBERRY COMFORT

**Reg. No. 4,104,331**

**Registered Feb. 28, 2012**

GARMON CORPORATION (CALIFORNIA CORPORATION)
27461 VIA INDUSTRIA
TEMECULA, CA 92590

**Int. Cls.: 5 and 31**

**TRADEMARK**

**PRINCIPAL REGISTER**

FOR: ANIMAL NUTRACEUTICALS FOR USE AS A DIETARY SUPPLEMENT, PET FOOD CONTAINING A THERAPEUTIC INGREDIENT, PET TREAT CONTAINING A THERAPEUTIC INGREDIENT, DIETARY SUPPLEMENTS AND FOOD FOR PETS THAT PROMOTE A HEALTHY URINARY TRACT, ALL THE AFOREMENTIONED GOODS MADE IN WHOLE OR SUBSTANTIAL PART OF CRANBERRY EXTRACT, IN CLASS 5 (U.S. CLS. 6, 18, 44, 46, 51 AND 52)

FIRST USE 1-1-1997, IN COMMERCE 1-1-1997

FOR: ANIMAL FOOD, PET FOOD, PET TREATS, ORGANIC PET FOOD, ALL THE AFOREMENTIONED GOODS MADE IN WHOLE OR SUBSTANTIAL PART OF CRANBERRY EXTRACT, IN CLASS 31 (U.S. CLS. 1 AND 46)

FIRST USE 1-1-1997, IN COMMERCE 1-1-1997

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT STYLE, SIZE, OR COLOR

NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "CRANBERRY", APART FROM THE MARK AS SHOWN

SER. NO. 85-229,118, FILED 1-28-2011

JULIE WATSON, EXAMINING ATTORNEY

*David J. Kappos*

Director of the United States Patent and Trademark Office

---

### REQUIREMENTS TO MAINTAIN YOUR FEDERAL
### TRADEMARK REGISTRATION

### WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE
### DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.

---

**Requirements in the First Ten Years***
**What and When to File:**

> *First Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date  *See* 15 U S C §§1058, 1141k  If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court

> *Second Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between the 9th and 10th years after the registration date +
> *See* 15 U S C  §1059

**Requirements in Successive Ten-Year Periods***
**What and When to File:**

> You must file a Declaration of Use (or Excusable Nonuse)  and an Application for Renewal between every 9th and 10th-year period, calculated from the registration date +

**Grace Period Filings***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee

---

**The United States Patent and Trademark Office (USPTO) will NOT send you any future notice or reminder of these filing requirements.**

---

*ATTENTION MADRID PROTOCOL REGISTRANTS: The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the USPTO  The time periods for filing are based on the U S  registration date (not the international registration date)   The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations *See* 15 U S C  §§1058, 1141k  However, owners of international registrations do not file renewal applications at the USPTO  Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the World Intellectual Property Organization  under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration   *See* 15 U S C  §1141j  For more information and renewal forms for the international registration, see http //www wipo int/madrid/en/

**NOTE:  Fees and requirements for maintaining registrations are subject to change.  Please check the USPTO website for further information.  With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at http //www uspto gov**



# United States of America

### United States Patent and Trademark Office

# CRANBERRY RELIEF

**Reg. No. 4,124,048**

**Registered Apr. 10, 2012**

**Int. Cls.: 5 and 31**

**TRADEMARK**

**PRINCIPAL REGISTER**

GARMON CORPORATION (CALIFORNIA CORPORATION)
27461 VIA INDUSTRIA
TEMECULA, CA 92590

FOR ANIMAL NUTRACEUTICALS FOR USE AS A DIETARY SUPPLEMENT, PET FOOD CONTAINING A THERAPEUTIC INGREDIENT, PET TREAT CONTAINING A THERAPEUTIC INGREDIENT, PET FOOD AND DIETARY SUPPLEMENTS THAT PROMOTE A HEALTHY URINARY TRACT, ALL THE AFOREMENTIONED GOODS MADE IN WHOLE OR SUBSTANTIAL PART OF CRANBERRY EXTRACT, IN CLASS 5 (U.S. CLS. 6, 18, 44, 46, 51 AND 52)

FIRST USE 1-1-1997; IN COMMERCE 1-1-1997

FOR ANIMAL FOOD, PET FOOD, PET TREATS, ORGANIC PET FOOD ALL OF THE AFOREMENTIONED GOODS MADE IN WHOLE OR SUBSTANTIAL PART OF CRANBERRY EXTRACT, IN CLASS 31 (U.S. CLS. 1 AND 46)

FIRST USE 1-1-1997; IN COMMERCE 1-1-1997

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT, STYLE, SIZE, OR COLOR

NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "CRANBERRY" APART FROM THE MARK AS SHOWN

SEC. 2(F)

SER. NO. 85-229,094, FILED 1-28-2011

JULIE WATSON, EXAMINING ATTORNEY

David J. Kappos

Director of the United States Patent and Trademark Office

---

### REQUIREMENTS TO MAINTAIN YOUR FEDERAL TRADEMARK REGISTRATION

### WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.

---

**Requirements in the First Ten Years\***
**What and When to File:**

> *First Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date. *See* 15 U S C §§1058, 1141k If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court

> *Second Filing Deadline·* You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between the 9th and 10th years after the registration date *
> *See* 15 U S C §1059

**Requirements in Successive Ten-Year Periods\***
**What and When to File:**

> You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between every 9th and 10th-year period, calculated from the registration date *

**Grace Period Filings\***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee

---

The United States Patent and Trademark Office (USPTO) will NOT send you any future notice or reminder of these filing requirements.

---

**\*ATTENTION MADRID PROTOCOL REGISTRANTS:** The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the USPTO The time periods for filing are based on the U S registration date (not the international registration date) The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations *See* 15 U S C §§1058, 1141k However, owners of international registrations do not file renewal applications at the USPTO Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the World Intellectual Property Organization under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration *See* 15 U S C §1141j For more information and renewal forms for the international registration, see http //www wipo int/madrid/en/

**NOTE:** Fees and requirements for maintaining registrations are subject to change. Please check the USPTO website for further information. With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at http //www uspto gov



# United States of America

### United States Patent and Trademark Office

# GRASSSAVER

**Reg. No. 4,012,590**  GARMON CORPORATION (CALIFORNIA CORPORATION)
27461 VIA INDUSTRIA
**Registered Aug. 16, 2011**  TEMECULA, CA 92590

**Int. Cl.: 5**  FOR: DIETARY SUPPLEMENT FOR PETS, IN CLASS 5 (U.S. CLS. 6, 18, 44, 46, 51 AND 52)

FIRST USE 11-1-1996; IN COMMERCE 11-1-1996

**TRADEMARK**
THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PAR-
**PRINCIPAL REGISTER**  TICULAR FONT, STYLE, SIZE, OR COLOR

SER. NO. 85-228,138, FILED 1-27-2011

JULIE WATSON, EXAMINING ATTORNEY



Director of the United States Patent and Trademark Office

---

**REQUIREMENTS TO MAINTAIN YOUR FEDERAL TRADEMARK REGISTRATION**

**WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.**

---

**Requirements in the First Ten Years***
**What and When to File:**

> *First Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date. *See* 15 U S C §§1058, 1141k. If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.

> *Second Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between the 9th and 10th years after the registration date.*
> *See* 15 U S C §1059

**Requirements in Successive Ten-Year Periods***
**What and When to File:**

> You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between every 9th and 10th-year period, calculated from the registration date.*

**Grace Period Filings***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

---

The United States Patent and Trademark Office (USPTO) will NOT send you any future notice or reminder of these filing requirements.

---

*ATTENTION MADRID PROTOCOL REGISTRANTS: The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the USPTO  The time periods for filing are based on the U S registration date (not the international registration date)  The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations  *See* 15 U S C §§1058, 1141k  However, owners of international registrations do not file renewal applications at the USPTO  Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration  *See* 15 U S C §1141j  For more information and renewal forms for the international registration, see http //www wipo int/madrid/en/

NOTE: Fees and requirements for maintaining registrations are subject to change.  Please check the USPTO website for further information.  With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at http //www uspto gov

# United States of America

### United States Patent and Trademark Office

# NO DIG!

**Reg. No. 3,923,174**

**Registered Feb. 22, 2011**

**Int. Cl.: 5**

**TRADEMARK**

**PRINCIPAL REGISTER**

GARMON CORPORATION (CALIFORNIA CORPORATION)
27461 VIA INDUSTRIA
TEMECULA, CA 92590

FOR ANIMAL REPELLANT NAMELY, HERBAL-BASED NON-AEROSOL SPRAY FOR USE IN DISCOURAGING PETS FROM DIGGING IN TREATED AREAS, IN CLASS 5 (U S CLS  6, 18, 44, 46, 51 AND 52)

FIRST USE 1-1-1985, IN COMMERCE 1-1-1985

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PAR-TICULAR FONT, STYLE, SIZE, OR COLOR

SER NO  85-102,438, FILED 8-6-2010

MICHAEL KLAEING, EXAMINING ATTORNEY



David J. Kappos

Director of the United States Patent and Trademark Office



# United States of America
### United States Patent and Trademark Office

# NO GO!

**Reg. No. 3,923,173**
GARMON CORPORATION (CALIFORNIA CORPORATION)
27461 VIA INDUSTRIA
**Registered Feb. 22, 2011**
TEMECULA, CA 92590

**Int. Cl.: 5**
FOR  ANIMAL  REPELLANT,  NAMELY,  HERBAL-BASED  NON-AEROSOL  SPRAY  FOR
USE IN REPELLING PETS FROM TREATED AREAS, IN CLASS 5 (U S  CLS  6, 18, 44  46,
51 AND 52)

**TRADEMARK**
FIRST USE 1-1-1985, IN COMMERCE 1-1-1985

**PRINCIPAL REGISTER**
THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PAR-
TICULAR FONT, STYLE, SIZE, OR COLOR

SER  NO  85-102 373  FILED 8 6-2010

MICHAEL KLATING, EXAMINING ATTORNEY



*David J. Kappos*

Director of the United States Patent and Trademark Office



# United States of America

### United States Patent and Trademark Office

# NO MARK!

**Reg. No. 3,923,172**
**Registered Feb. 22, 2011**

GARMON CORPORATION (CALIFORNIA CORPORATION)
27461 VIA INDUSTRIA
TEMECULA, CA 92590

**Int. Cl.: 5**

FOR ANIMAL REPELLANT, NAMELY, HERBAL-BASED NON-AEROSOL SPRAY FOR
USE IN REPELLING PETS FROM TREATED AREAS, IN CLASS 5 (U.S. CLS. 6, 18, 44, 46,
51 AND 52)

**TRADEMARK**

FIRST USE 1-1-1985; IN COMMERCE 1-1-1985

**PRINCIPAL REGISTER**

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PAR-
TICULAR FONT, STYLE, SIZE OR COLOR

SER. NO. 85-102,350, FILED 8-6-2010

MICHAEL KLAUKE, EXAMINING ATTORNEY



*David J. Kappos*

Director of the United States Patent and Trademark Office



# United States of America
## United States Patent and Trademark Office

# NO SCOOT

**Reg. No. 4,225,288**
**Registered Oct. 16, 2012**

GARMON CORPORATION (CALIFORNIA CORPORATION)
27461 VIA INDUSTRIA
TEMECULA, CA 92590

**Int. Cl.: 5**

FOR: DIETARY SUPPLEMENTS FOR DOGS, NUTRITIONAL SUPPLEMENTS FOR DOGS,
IN CLASS 5 (U.S. CLS. 6, 18, 44, 46, 51 AND 52)

**TRADEMARK**

FIRST USE 2-29-2012, IN COMMERCE 2-29-2012

**PRINCIPAL REGISTER**

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PAR-
TICULAR FONT, STYLE, SIZE, OR COLOR

SER. NO. 85-561,514, FILED 3-6-2012

HEATHER THOMPSON, EXAMINING ATTORNEY



David J. Kappos

Director of the United States Patent and Trademark Office

---

### REQUIREMENTS TO MAINTAIN YOUR FEDERAL
### TRADEMARK REGISTRATION

### WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE
### DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.

---

**Requirements in the First Ten Years***
**What and When to File:**

> *First Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date  *See* 15 U S C §§1058, 1141k   If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court

> *Second Filing Deadline.*  You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between the 9th and 10th years after the registration date *
> *See* 15 U S C  §1059

**Requirements in Successive Ten-Year Periods***
**What and When to File:**

> You must file a Declaration of Use (or Excusable Nonuse)  and an Application for Renewal between every 9th and 10th-year period, calculated from the registration date *

**Grace Period Filings***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee

---

The United States Patent and Trademark Office (USPTO) will NOT send you any future notice or reminder of these filing requirements.

---

**\*ATTENTION MADRID PROTOCOL REGISTRANTS:** The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the USPTO  The time periods for filing are based on the U S  registration date (not the international registration date)   The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations *See* 15 U S C §§1058, 1141k  However, owners of international registrations do not file renewal applications at the USPTO  Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration  *See* 15 U S C  §1141j  For more information and renewal forms for the international registration, see http //www wipo int/madrid/en/

**NOTE:**  Fees and requirements for maintaining registrations are subject to change.  Please check the USPTO website for further information.  With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at http //www uspto gov



# United States of America

### United States Patent and Trademark Office

# NO SCRATCH

**Reg. No. 3,923,171**
**Registered Feb. 22, 2011**

GARMON CORPORATION (CALIFORNIA CORPORATION)
27461 VIA INDUSTRIA
TEMECULA, CA 92590

**Int. Cl.: 5**

FOR: ANIMAL REPELLANT, NAMELY, HERBAL BASED NON-AEROSOL SPRAY FOR USE IN DISCOURAGING PETS FROM SCRATCHING TREATED SURFACES, IN CLASS 5 (U.S. CLS. 6, 18, 44, 46, 51 AND 52)

**TRADEMARK**

**PRINCIPAL REGISTER**

FIRST USE 1-1-1985; IN COMMERCE 1-1-1985

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT, STYLE, SIZE, OR COLOR

SER. NO. 85-102,325, FILED 8-6-2010

MICHAEL KLAHNG, EXAMINING ATTORNEY



*David J. Kappos*

Director of the United States Patent and Trademark Office



# United States of America

### United States Patent and Trademark Office

# NO STAY!

**Reg. No. 3,919,903**  GARMON CORPORATION (CALIFORNIA CORPORATION)
                       27461 VIA INDUSTRIA
**Registered Feb. 15, 2011**  TEMECULA, CA 92590

**Int. Cl.: 5**       FOR  ANIMAL REPELLANT, NAMELY, HERBAL-BASED NON-AEROSOL SPRAY FOR
                      USE IN REPELLING PETS FROM TREATED AREAS  IN CLASS 5 (U S  CLS  6, 18  44  46,
                      51 AND 52)

**TRADEMARK**         FIRST USE 1-1-1985, IN COMMERCE 1-1-1985

**PRINCIPAL REGISTER**  THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PAR-
                      TICULAR FONT  STYLE, SIZE  OR COLOR

                      SER  NO  85-102 406, FILED 8-6-2010

                      MICHAEL KEATING, EXAMINING ATTORNEY



*David J. Kappos*

Director of the United States Patent and Trademark Office

Int. Cl.: 3

Prior U.S. Cl.: 52

**United States Patent Office**

Reg. No. 1,053,138
Registered Nov. 23, 1976

## TRADEMARK
Principal Register

## ODOKLEEN

R Thomas Davies, doing business as Greentree Labora-
tories
2041 S Lyon St.
Santa Ana, Calif.  92705

For: ALL-PURPOSE DEODORIZING CLEANING
PREPARATION FOR GENERAL USE, in CLASS 3
(U.S. CL. 52)
First use Nov. 15, 1969, in commerce Nov. 15, 1969.
Owner of Reg No. 758,642

Ser No 69,400, filed Jan 23, 1976

D  E. SHALLANT, Examiner

# United States of America

## United States Patent and Trademark Office

# OUTTA MY BOX

**Reg. No. 5,167,411**

**Registered Mar. 21, 2017**

**Int. Cl.: 5, 31**

**Trademark**

**Principal Register**

The Garmon Corporation (CALIFORNIA CORPORATION)
27461 Via Industria
Temecula, CA 92590

CLASS 5  Dietary pet supplements in the form of pet treats, Dietary supplements for pets

FIRST USE 12-4-2015, IN COMMERCE 12-4-2015

CLASS 31  Consumable pet chews

FIRST USE 12-4-2015, IN COMMERCE 12-4-2015

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY
PARTICULAR FONT STYLE, SIZE OR COLOR

SER NO 86-781,344, FILED 10-07-2015
KRISTIN ELIZA CARLSON, EXAMINING ATTORNEY



Director of the United States
Patent and Trademark Office

---

### REQUIREMENTS TO MAINTAIN YOUR FEDERAL TRADEMARK REGISTRATION

### WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.

---

**Requirements in the First Ten Years***
**What and When to File:**

- *First Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date. See 15 U S C §§1058, 1141k If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.

- *Second Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between the 9th and 10th years after the registration date * See 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods***
**What and When to File:**

- You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between every 9th and 10th-year period, calculated from the registration date *

**Grace Period Filings***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

**\*ATTENTION MADRID PROTOCOL REGISTRANTS:** The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the United States Patent and Trademark Office (USPTO). The time periods for filing are based on the U.S registration date (not the international registration date). The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations. See 15 U S C §§1058, 1141k However, owners of international registrations do not file renewal applications at the USPTO Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration See 15 U S C §1141j. For more information and renewal forms for the international registration, see http://www wipo int/madrid/en/

**NOTE: Fees and requirements for maintaining registrations are subject to change. Please check the USPTO website for further information. With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at h** ttp //www.uspto gov

**NOTE: A courtesy e-mail reminder of USPTO maintenance filing deadlines will be sent to trademark owners/holders who authorize e-mail communication and maintain a current e-mail address with the USPTO. To ensure that e-mail is authorized and your address is current, please use the Trademark Electronic Application System (TEAS) Correspondence Address and Change of Owner Address Forms available at** http //www uspto gov.



# United States of America

### United States Patent and Trademark Office

# POTTY HERE

**Reg. No. 4,640,723**
**Registered Nov. 18, 2014**

THE GARMON CORPORATION (CALIFORNIA CORPORATION)
27461 VIA INDUSTRIA
TEMECULA, CA 92590

**Int. Cl.: 28**

FOR: ANIMAL ATTRACTANT TRAINING AID, NAMELY, NON-AEROSOL SPRAY FOR USE IN ATTRACTING PETS TO TREATED AREAS, IN CLASS 28 (U.S. CLS. 22, 23, 38 AND 50)

**TRADEMARK**

**PRINCIPAL REGISTER**

FIRST USE 3-1-2014; IN COMMERCE 3-1-2014

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT, STYLE, SIZE, OR COLOR.

SER. NO. 86-244,949, FILED 4-7-2014

FRANK LATTUCA, EXAMINING ATTORNEY



Michelle K. Lee

**Deputy Director of the United States**
**Patent and Trademark Office**

---

### REQUIREMENTS TO MAINTAIN YOUR FEDERAL
### TRADEMARK REGISTRATION

### WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE
### DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.

---

**Requirements in the First Ten Years\***
**What and When to File:**

> *First Filing Deadline* You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date *See* 15 U S C §§1058, 1141k If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court

> *Second Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between the 9th and 10th years after the registration date + *See* 15 U S C §1059

**Requirements in Successive Ten-Year Periods\***
**What and When to File:**

> You must file a Declaration of Use (or Excusable Nonuse) **and** an Application for Renewal between every 9th and 10th-year period, calculated from the registration date +

**Grace Period Filings\***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee

---

### The United States Patent and Trademark Office (USPTO) will NOT send you any future notice or reminder of these filing requirements.

---

**\*ATTENTION MADRID PROTOCOL REGISTRANTS:** The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the USPTO The time periods for filing are based on the U S registration date (not the international registration date) The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations *See* 15 U S C §§1058, 1141k However, owners of international registrations do not file renewal applications at the USPTO Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration *See* 15 U S C §1141j For more information and renewal forms for the international registration, see http //www wipo int/madrid/en/

**NOTE:** Fees and requirements for maintaining registrations are subject to change. Please check the USPTO website for further information. With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at http //www uspto gov

Int. Cl.: 5

Prior U.S. Cls.: 6, 18, 44, 46, 51 and 52

Reg. No. 3,293,364

## United States Patent and Trademark Office

Registered Sep. 18, 2007

### TRADEMARK
#### PRINCIPAL REGISTER

# QUIET MOMENTS

GARMON CORPORATION (CALIFORNIA COR-
PORATION)
27461-B DIAZ ROAD
TEMECULA, CA 92590

FOR DIETARY SUPPLEMENT FOR USE IN RE-
DUCING STRESS OR TENSION IN PETS, HERBAL
SPRAY FOR USE IN REDUCING STRESS OR TEN-
SION IN PETS IN CLASS 5 (U.S CLS 6, 18, 44, 46, 51
AND 52)

FIRST USE 12-31-1998, IN COMMERCE 12-31 1998.

THE MARK CONSISTS OF STANDARD CHAR-
ACTERS WITHOUT CLAIM TO ANY PARTICULAR
FONT, STYLE, SIZE, OR COLOR

SER NO 77-087,069, FILED 1-19-2007

PATRICIA EVANKO EXAMINING ATTORNEY



# United States of America

### United States Patent and Trademark Office

# SEPTIDERM-V

**Reg. No. 4,015,759**

**Registered Aug. 23, 2011**

GARMON CORPORATION (CALIFORNIA CORPORATION)
27461 VIA INDUSTRIA
TEMECULA, CA 92590

**Int. Cls.: 3 and 5**

FOR: SHAMPOO FOR USE ON DOGS, CATS AND HORSES, IN CLASS 3 (U.S. CLS. 1, 4, 6, 50 51 AND 52)

**TRADEMARK**

FIRST USE 5-19-1978, IN COMMERCE 5-19-1978

**PRINCIPAL REGISTER**

FOR: MEDICATED ANTISEPTIC LOTION FOR TOPICAL USE ON DOGS, CATS AND HORSES, IN CLASS 5 (U.S. CLS. 6, 18, 44, 46 51 AND 52)

FIRST USE 5-19-1978, IN COMMERCE 5-19-1978

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT, STYLE, SIZE, OR COLOR

SER. NO. 85-228,776, FILED 1-28-2011

JULIE WATSON, EXAMINING ATTORNEY



David J. Kappos

Director of the United States Patent and Trademark Office

---

### REQUIREMENTS TO MAINTAIN YOUR FEDERAL TRADEMARK REGISTRATION

### WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.

---

**Requirements in the First Ten Years***
**What and When to File:**

> ***First Filing Deadline:*** You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date *See* 15 U S C §§1058, 1141k If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court

> ***Second Filing Deadline:*** You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between the 9th and 10th years after the registration date *
> *See* 15 U S C §1059

**Requirements in Successive Ten-Year Periods***
**What and When to File:**

> You must file a Declaration of Use (or Excusable Nonuse) **and** an Application for Renewal between every 9th and 10th-year period, calculated from the registration date *

**Grace Period Filings***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee

---

**The United States Patent and Trademark Office (USPTO) will NOT send you any future notice or reminder of these filing requirements.**

---

*ATTENTION MADRID PROTOCOL REGISTRANTS: The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the USPTO The time periods for filing are based on the U S registration date (not the international registration date) The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations *See* 15 U S C §§1058, 1141k However, owners of international registrations do not file renewal applications at the USPTO Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the World Intellectual Property Organization under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration *See* 15 U S C §1141j For more information and renewal forms for the international registration, see http //www wipo int/madrid/en/

NOTE: Fees and requirements for maintaining registrations are subject to change. Please check the USPTO website for further information. With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at http //www uspto gov

Int. Cl.: 3

Prior U.S. Cls.: 1, 4, 6, 50, 51 and 52

## United States Patent and Trademark Office

Reg. No. 1,954,954
Registered Feb. 6, 1996

### TRADEMARK
### PRINCIPAL REGISTER

## SHOWBATH

GREENTREE LABORATORIES, INC (CALI-
FORNIA CORPORATION)
P O BOX 425
TUSTIN, CA 92681

FOR SHAMPOO FOR PETS, INCLUDING
DOGS, CATS AND HORSES, IN CLASS 3 (U S
CLS 1, 4, 6, 50, 51 AND 52)

FIRST USE 2–1–1973, IN COMMERCE
2–1–1973

SER NO 74–650,442, FILED 3–23–1995

PRISCILLA MILTON, EXAMINING ATTOR-
NEY

# United States of America

### United States Patent and Trademark Office

# Stool Ease

**Reg. No. 4,428,270**

**Registered Nov. 5, 2013**

THE GARMON CORPORATION (CALIFORNIA CORPORATION)
27461 VIA INDUSTRIA
TEMECULA, CA 92590

**Int. Cl.: 5**

FOR: DIETARY PET SUPPLEMENTS IN THE FORM OF PET TREATS, DIETARY SUPPLE-
MENTS FOR PETS TO SOFTEN STOOL AND SUPPORT HEALTHY ANAL GLAND FUNC-
TION, HERBAL SUPPLEMENTS FOR SOFTENING STOOL AND SUPPORTING HEALTHY
ANAL GLAND FUNCTION IN PETS, IN CLASS 5 (U.S. CLS. 6, 18, 44, 46, 51 AND 52)

**TRADEMARK**

**PRINCIPAL REGISTER**

FIRST USE 2-22-2012; IN COMMERCE 2-22-2012

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PAR-
TICULAR FONT, STYLE, SIZE, OR COLOR

NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "STOOL", APART FROM THE
MARK AS SHOWN

SER. NO. 85-860,486, FILED 2-26-2013

APRIL ROACH, EXAMINING ATTORNEY



Deputy Director of the United States Patent and Trademark Office

**REQUIREMENTS TO MAINTAIN YOUR FEDERAL TRADEMARK REGISTRATION**

**WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.**

**Requirements in the First Ten Years***
**What and When to File:**

> *First Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date. *See* 15 U S C §§1058, 1141k. If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court

> *Second Filing Deadline·* You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between the 9th and 10th years after the registration date +
> *See* 15 U S C §1059

**Requirements in Successive Ten-Year Periods***
**What and When to File:**

> You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between every 9th and 10th-year period, calculated from the registration date +

**Grace Period Filings***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee

**The United States Patent and Trademark Office (USPTO) will NOT send you any future notice or reminder of these filing requirements.**

*ATTENTION MADRID PROTOCOL REGISTRANTS:** The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the USPTO The time periods for filing are based on the U S registration date (not the international registration date) The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations *See* 15 U S C §§1058, 1141k However, owners of international registrations do not file renewal applications at the USPTO Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the World Intellectual Property Organization under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration *See* 15 U S C §1141j For more information and renewal forms for the international registration, see http://www wipo int/madrid/en/

**NOTE:** Fees and requirements for maintaining registrations are subject to change. Please check the USPTO website for further information. With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at http //www uspto gov

# United States of America

### United States Patent and Trademark Office

# YUCK!

**Reg. No. 3,970,332**
**Registered May 31, 2011**

**Int. Cl.: 5**

**TRADEMARK**

**PRINCIPAL REGISTER**

GARMON CORPORATION (CALIFORNIA CORPORATION)
27461 VIA INDUSTRIA
TEMECULA, CA 92590

FOR ANIMAL REPELLANTS, NAMELY, HERBAL-BASED NON AEROSOL SPRAY FOR USE IN DISCOURAGING PETS FROM CHEWING ON TREATED SURFACES, IN CLASS 5 (US CLS 6, 18, 44 46, 51 AND 52)

FIRST USE 12-31-1982, IN COMMERCE 12 31 1982

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT, STYLE, SIZE, OR COLOR

SER NO 85-146,315, FILED 10-6-2010

CHRISTINA SOBRAL, EXAMINING ATTORNEY



*David J. Kappos*
Director of the United States Patent and Trademark Office

Int. Cls.: 5 and 31

Prior U.S. Cls.: 1, 6, 18, 44, 46, 51, and 52

Reg. No. 3,584,717

## United States Patent and Trademark Office

Registered Mar. 3, 2009

TRADEMARK
PRINCIPAL REGISTER

# Overby Farm

OVERBY FARM, LLC (MICHIGAN LIMITED LIABILITY COMPANY)
1050 TOP VIEW
BLOOMFIELD HILLS, MI 48304

FOR NUTRACEUTICALS FOR PROMOTING AN ANIMAL'S HEALTH, DIETARY SUPPLEMENTS CONTAINING COX-2 INHIBITOR FOR ANIMALS, VETERINARY FORMULATIONS, NAMELY, ANTI-INFLAMMATORY FOR ANIMALS, DIETARY SUPPLEMENTS FOR PETS IN CLASS 5 (U S CLS 6, 18 44, 46, 51 AND 52).

FIRST USE 4-1-2005, IN COMMERCE 4-1-2005

FOR ANIMAL FOOD, DOG BISCUITS, CAT BISCUITS, ANIMAL FOOD CONTAINING CHER-

RIES, DOG FOOD, CAT FOOD, DOG TREATS, CAT TREATS, DOG FOOD CONTAINING A THERAPEU-TIC INGREDIENT, CAT FOOD CONTAINING A THERAPEUTIC INGREDIENT, IN CLASS 31 (U S. CLS 1 AND 46)

FIRST USE 4-1-2005, IN COMMERCE 4-1-2005

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT, STYLE, SIZE, OR COLOR

SN 78-763,847, FILED S R 11-30-2005, AM P R 12-12-2005

WENDY JUN, EXAMINING ATTORNEY

Int. Cls.: 5 and 31

Prior U.S. Cls.: 1, 6, 18, 44, 46, 51, and 52

**United States Patent and Trademark Office**

Reg. No. 3,330,783

Registered Nov. 6, 2007

**TRADEMARK**
**PRINCIPAL REGISTER**

# BERRIER

OVERBY FARM LLC (MICHIGAN LTD LIAB CO)

1050 TOP VIEW

BLOOMFIELD HILLS, MI 48304

FOR ANIMAL NUTRACEUTICALS FOR USE AS A DIETARY SUPPLEMENT, AN ANTI-INFLAMMATORY FOR ANIMALS, DOG FOOD CONTAINING A THERAPEUTIC INGREDIENT, DOG TREAT CONTAINING A THERAPEUTIC INGREDIENT, PET FOOD CONTAINING AN ANTI-INFLAMMATORY, IN CLASS 5 (U.S. CLS. 6, 18, 44, 46, 51 AND 52)

FIRST USE 4-28-2006, IN COMMERCE 4-28-2006

FOR ANIMAL FOOD, DOG BISCUITS, PET FOOD CONTAINING CHERRIES, DOG FOOD, DOG TREATS, PET FOOD IN CLASS 31 (U.S. CLS. 1 AND 46)

FIRST USE 4-28-2006, IN COMMERCE 4-28-2006

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT, STYLE, SIZE, OR COLOR

SN 78-534,589, FILED 12-17-2004

WARREN L. OLANDRIA, EXAMINING ATTORNEY

Int. Cl.: 31

Prior U.S. Cls.: 1 and 46

**United States Patent and Trademark Office**

Reg. No. 3,610,474
Registered Apr. 21, 2009

**TRADEMARK**
**PRINCIPAL REGISTER**

# HIP FLEX

OVERBY FARM, LLC (MICHIGAN LIMITED LIABILITY CORPORATION)
1050 TOP VIEW ROAD
BLOOMFIELD HILLS, MI 48304

FOR ANIMAL FOOD, DOG BISCUITS, PET FOOD CONTAINING CHERRIES, DOG FOOD, DOG TREATS PET FOOD, IN CLASS 31 (U S CLS 1 AND 46)

FIRST USE 10-6-2006, IN COMMERCE 10-6-2006

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT, STYLE, SIZE, OR COLOR

NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "HIP", APART FROM THE MARK AS SHOWN.

SN 78-905,029, FILED 6-9-2006

RONALD AIKENS, EXAMINING ATTORNEY



 

CONFIDENTIAL
U.S. ONLINE DEALER (SF)
040116/3566627/3

## AUTHORIZED ONLINE DEALER AGREEMENT

<u>THE INTRODUCTION</u> (Various terms are defined in Section 17 and elsewhere in this Agreement in bold italics )

Dealer (full business name) (*"FBN"*)  ___HealthyPets, Inc_____

Principal Address ___34501 Seventh St_____ City _Union City__ State _CA__ Zip Code ___94587__

Owner/Manager ____Dr. Manny Ghumman _____ email __mghumman@healthypets com_____

Contact (if different) _Nick Querubin_____ Contact email (if different) _nickq@healthypets com_____

Phone ___800-306-7910 x155___ Customer Service Phone (if different) _____ Tax Identification No (EIN) _94-3339062_

TGC-approved name(s)/storefronts under which Dealer operates

EntirelyPets com
HealthyPets com
NaturalPets com
EntirelyPetsPharmacy com
**HeartlandVetSupply.com**

TGC-approved website(s) (URLs)/marketplace(s) used by Dealer

Amazon com Celler Central   & Amazon Canada Celler Central
Filled By Amazon
Ebay
Sears
Buy com   Overstock com

Principal address for notices to The Garmon Corporation *("TGC")*
Policy Administrator, The Garmon Corporation, 27461 Via Industria, Temecula, CA 92590 ● email  policyadmin@naturvet com

<u>SIGNATURES</u>
**DEALER**

By _____

Name ___Jesse Padilla_____

Title ___VP of Sales_____

Date ___4/19/2016_____

**TGC**

By _____ , *PRESIDENT*

Scott Garmon, President

Date _____

The Effective Date __4/19/2016_____

Beginning as of the Effective Date, TGC (a California corporation) and Dealer, each located at its respective principal address shown in the Introduction, agree that Dealer will perform as a Nonexclusive Authorized Online Dealer for the Products during the Term subject to the following

**1 Responsibilities** Except as otherwise expressly directed or approved in advance by TGC, Dealer, at its own expense, will do each of the following  (a) promote the sale and use of the Products, (b) promptly and effectively respond to questions and requests from end user customers permitted by the DRD (collectively, the *"Authorized Customers"*) and TGC, (c) represent the Products in a professional manner during the Coverage Period, (d) refrain from any conduct that is or could be detrimental to the reputation or integrity of any or all of Dealer, the Distributors (as applicable), TGC and the TGC products, (e) refrain from knowingly or negligently directly or indirectly (i) advertising, promoting or selling in any or all of the following ways  (A) outside the United States of America *("U S.")* (except to the extent any or all advertising and promotion efforts cannot be reasonably restricted geographically, but this exception does not apply to sales made to anyone located outside the U S ), (B) using any business name(s) or storefront(s) other than the FBN or acceptable variants thereof (as determined by TGC) and (C) online in any fashion, unless and only to the extent each website and marketplace used for such purpose by such Dealer is (along with each business name and storefront) approved in advance by TGC for such use (such as in the Introduction) and which approval has not been rescinded by TGC Notice and (ii) selling in either or both of the following ways  (A) to anyone for resale other than, in the case of permitted returns, to any or all of the Distributors or TGC and (B) to anyone other than the Authorized Customers, including without limitation to the Special Accounts, (f) refrain from creating or assisting in or otherwise cooperating in the creation of new Amazon Standard Identification Numbers (ASINs) or bundles specific to Dealer on Amazon com, (g) use the Intellectual Property only as permitted by TGC in the DRD, (h) refrain from questioning or challenging the rights claimed by TGC, its Affiliate(s) or its designee(s) (individually and collectively, the *"TGC Parties"*) in or to the Intellectual Property or assisting in any way any other(s) in doing so, (i) comply with all laws and, except to the extent expressly excluded by TGC from mandatory compliance therewith, all of the DP, (j) promptly comply with requests from TGC relating to any law, regulation or recall of any or all TGC products, and (k), after termination of this Agreement, immediately cease at the end of the Coverage Period  (i) advertising, promoting and selling any and all TGC products and (ii) all use of anything which would give the impression that Dealer is an authorized dealer, reseller or representative of or for any or all of such products or has any affiliation whatsoever with TGC or such products

**2. Acceptance.** With respect to Direct Orders, TGC shall have the right to  (a) accept, reject or, if already accepted by TGC, cancel any or all such orders for any reason or no reason, (b) allocate any or all items of TGC products in such manner as TGC deems advisable, and (c), in the event that TGC should determine that one or more special credit restrictions (as defined by TGC) apply, impose such payment terms as TGC deems appropriate prior to doing either or both of the following  (i) accepting any or all new Direct Orders or (ii) filling or completing any or all pending Direct Orders (even if accepted) from Dealer  In the event that TGC receives one or more Direct Orders (or similar or related documents) which contain one or more provisions which are inconsistent with or in addition to any or all provisions of the DRD  (A) each such order (or document) will be conclusively deemed to be governed by the DRD, (B) each such inconsistent or additional provision will be deemed stricken, and (C) none of the Direct Orders will be deemed to be governed by any provision(s) other than that or those contained in the DRD, unless and until a written supplement is duly executed by both of the Parties which expressly adopts such provision(s)

**3. Integration.** The DRD  as modified from time to time  (a) constitutes the entire understanding of the Parties binding upon them regarding the subject matter thereof, (b) is intended to govern the relationship between the Parties therefor, (c) supersedes all agreements, representations or statements

between the Parties, either oral or written, (d), except as otherwise provided therein, may be amended or modified only by a written supplement, duly executed by the Parties, as each Party hereby waives its right, if any, to modify this Agreement orally, and (e) is not subject to any rule of strict construction In the event of any conflict between the DP and this Agreement, the DP will control (silence in the DP is not a conflict) This Agreement may be executed in separate counterparts (and any or all of such counterparts may be transmitted or exchanged as hardcopy, as portable document format (pdf) files or by other electronic means), each of which is deemed to be an original (and originally executed), and all of which taken together constitute one and the same binding agreement No failure, refusal, neglect, delay, waiver, forbearance or omission by TGC to exercise any right(s) under the DRD or to insist upon full compliance by Dealer with Dealer's duties, obligations or restrictions thereunder shall constitute a waiver of any provision(s) of thereof or otherwise thereafter limit the right of TGC to fully enforce any or all of the provision(s) and part(s) thereof If applicable law contains any requirement that is inconsistent with the DRD, TGC may, effective as designated by TGC, add or substitute such requirement or terminate this Agreement If one or more parts of the DRD shall be held invalid, the remainder of the DRD shall continue in full force and effect, and each such part shall be deemed not to be included in the DRD TGC shall not be liable for (i) loss, damage or delay resulting from any cause whatsoever beyond the reasonable control of TGC and (ii) consequential, incidental, punitive or special damages, loss or expense to any or all of Dealer and others for any reason(s) whatsoever

**4. Miscellaneous.** Neither any or all of the DRD nor any and all duties and obligations thereunder may be delegated, transferred or assigned by Dealer without the express written consent of TGC Each delegation, transfer or assignment by Dealer without such consent shall be void The relationship between the Parties is that of independent contractors, and Dealer shall have no authority or power to bind TGC or to contract in the name and create a liability against TGC TGC may modify the DP, with such modifications effective as designated by TGC A breach by Dealer of any or all of the DP will be deemed to be a material breach by Dealer of this Agreement One or more item(s) of TGC products may change, and Dealer agrees that TGC and each of the Distributors may without liability or penalty cancel all pending orders (even if accepted) from Dealer for such changed item(s) and refuse to accept any new orders from Dealer for such item(s) Each dispute between the Parties shall be (a) governed by substantive and procedural California law without regard to that state's conflicts of laws provisions and (b) litigated at the trial level as a bench trial in Riverside, California (**each Party waives trial by jury**), except that if litigation of a dispute is not initiated by Dealer during the one (1) year period after the occurrence of the event(s) giving rise to such dispute, Dealer's claims with respect thereto will be barred TGC's interpretation of the DRD governs The following shall survive the termination of this Agreement (i) Sections 1(b) through 7 of this Agreement, (ii) each of the definitions otherwise contained in the DRD, (iii) the Introduction, and (iv) each of the DP that, by its own terms, expressly states that it survives the termination of this Agreement or which TGC otherwise designates as so surviving Each notice described in this Agreement must be in writing and shall be sent to the intended recipient (with all fees paid) by express courier service or email to such recipient's principal address shown in the Introduction and shall be considered effective or received when actually received or refused by such recipient, provided that the sending Party has written confirmation thereof and such refusal was not due electronic or mechanical malfunction or failure

**5. Termination.** Either Party may terminate this Agreement, with or without cause, effective thirty (30) days after receipt of notice thereof by the other Party or, in the case of a material breach or under Section 3 hereof, effective no sooner than the date of receipt of notice thereof by such other Party After termination of this Agreement, acceptance of one or more orders from Dealer by any or all of TGC and the Distributors or fulfillment thereby of one or more accepted orders (regardless whether accepted before or after termination) will (a), unless otherwise designated by TGC, be subject to all of the terms and conditions of the DRD as if such acceptance or fulfillment had occurred during the Term and (b), in no event, be construed as a renewal or extension of this Agreement or as a waiver of termination or of notice of termination If and as requested by TGC, Dealer will sell or cause the sale to TGC of and, as directed by TGC and at TGC's expense, ship or cause to be shipped to TGC or its designee(s) each of the items in the Dealer's Inventory of TGC products (free of all liens, security interests, claims and encumbrances, other than that or those in favor of TGC) which is acceptable (as determined by TGC) at a price equal to the price paid to TGC or each relevant Distributor therefor or, if unpaid, in lieu of the amount due to TGC or each such Distributor therefor, less in either case a restocking charge equal to the amount, if any, described in the DP TGC shall have rights of set-off, recoupment and counterclaim against Dealer

**6. Enforcement.** In the event that the TGC Parties file(s) any action(s) against the Dealer Parties to enforce or defend any of the rights claimed by the TGC Parties or file(s) any response(s) to or in any action(s) brought against the TGC Parties by the Dealer Parties, the TGC Parties shall be entitled (a) to equitable relief without the necessity of posting bond or other security (including without limitation entry of temporary and permanent injunctions and orders of specific performance) and (b) to recover from the Dealer Parties in such judgment wholly or partially in favor of the TGC Parties entered in such action(s) the attorneys' fees and litigation expenses of the TGC Parties, the court costs and damages as permitted by law, the costs of collection thereof and other relief as a court may award or order In the event of any breach or threatened breach of any or all of Sections 1(b) through 1(k), 4 and 5 of this Agreement, remedies at law alone will not be adequate

**7. Definitions.** For purpose of this Agreement (a) **"Affiliate(s)"** means any or all of the individuals and entities directly or indirectly controlling, controlled or under common control with the Party identified, with "control" and its variants in this context having the same meaning as under the U S federal securities laws, (b) the **"Coverage Period"** means the Term and the period afterward, if any, until (as relevant) Dealer has or, as determined by TGC, should have sold or otherwise disposed of all of Dealer's inventory of TGC products (each such sale or other disposition will be in a manner consistent with the DRD), (c) **"Dealer"** means the Party identified as such in the Introduction, which can be the Dealer Operation (as defined in the Authorized Distributor Agreement by and between TGC and Distributor (as the latter term is defined therein)), (d) the **"Dealer Parties"** means any or all of Dealer and its Affiliate(s), (d) **"Direct Orders"** means orders for any or all items of TGC products submitted by Dealer directly to TGC as permitted by the DRD or TGC, (e) **"Distributors"** means resellers authorized by TGC to sell to Dealer, (f) the **"DP"** means the "Dealer Policies," which consist of the then-current versions of the announcements issued or made available electronically or otherwise by TGC and intended by TGC as such, (g) the **"DRD"** means the "Dealer Relationship Documents," which consist of this Agreement and the DP, (h) the **"Effective Date"** means that labeled as such in this Agreement, (i) the **"Intellectual Property"** means any or all of the patents, designs, trademarks, service marks, trade names, commercial symbols, copyrights, data, data bases, market information, trade secrets and confidential information in which TGC claims rights, (j) the **"Introduction"** means that part of this Agreement labeled as such, which will be deemed to be one of the DP, (k) **"Nonexclusive Authorized Online Dealer"** means that Dealer may hold itself out as such and submit orders for the Products to Distributors or TGC, while TGC and others may offer and sell the Products as TGC designates; (l) a **"Party"** means TGC or Dealer and the **"Parties"** means TGC and Dealer, (m) the **"Products"** means those TGC products made available to Dealer by TGC or Distributors, (n) **"TGC Notice"** means notice to Dealer from TGC that either (i) complies with Section 4 of this Agreement or (ii) is made available on a TGC-designated website and notice under such Section 4 is received by Dealer, which, at a minimum, indicates that a change has been or will be made to what is posted thereon, (o) the **"Special Accounts"** means, collectively, each individual or entity so designated by TGC Notice, and (p) the **"Term"** means the period from the Effective Date until this Agreement is terminated pursuant to Section 5 hereof



**From:** Marty Candiotta
**Sent:** Tuesday, September 12, 2017 1:56 PM
**To:** Dr. Manny Ghumman; 'Bob Singh'; Jesse Padilla
**Cc:** Scott Garmon; Tim Lockwood (TimL@naturvet.com); Hannah Dickerson; Denise Caluya; Cathy Rodriguez
**Subject:** Naturvet

Dr. Ghumman, Bob and Jesse

Please accept this e-mail as an official notification that The Garmon Corp/ Naturvet will no longer continue to have a direct relationship with Healthy Pets, Entirely Pets, Heartland Vet Supply or any subsidiary related to any DBA or LLC associated to such companies. We have made the decision to discontinue shipping any Garmon Corp products directly to Healthy Pets moving forward. Any PO's in house will be cancelled immediately. We have also made the decision to " unauthorize" entirely pets as one of our authorized online sellers of our products on any platform you are selling Garmon Corp /Naturvet products. We will be happy to buy back any re-sellable inventory you have in stock and cut you a check as soon as we receive the product back.

If you have any further questions feel free to contact us directly

Best Regards,


Marty Candiotta
Director of Sales
**NaturVet/Garmon Corp**
888-628-8783 ext. 210
Cell 818-821-7266
27461 Via Industria, Temecula, CA 92590





(index html)

**14% Off Sitewide\*  use code : SPRING14**

Home (index html) > Dog Supplies (dogsupplies html) > Training & Behavior (pet training html) > Dog Anxiety & Stress Solutions (dog anxiety stress html) > Quiet Moments for Dogs (quietmoments for dogs html) > NaturVet Quiet Moments   Calming Aid (30 Tabs)





# NaturVet Quiet Moments - Calming Aid (30 Tabs)

☆ ☆ ☆ ☆ ☆  1 Review     💬 Ask a Question (https //myaccount healthypets com/mod_questionsAndAnswers/questionForm php?productId=naqumocaaid3)

Item  79903570
Availability  In Stock

Was  ~~$12.99~~

## $10.99

*You Save: $2.00!  (15%)*

Quantity:  **1**

🔄 **Auto Reship & SAVE!** Details (autoreship.html)

One-Time Order      ▼





Description   Ingredients   Useful Information   Customer Reviews   Customer Q&A

## DESCRIPTION

Case 5:18-cv-00809-ODW-SHK   Document 1   Filed 04/19/18   Page 76 of 102   Page ID #:76

    

**Special Offers**   *Sign Up For NaturVet Emails*    Submit      *What are you looking for?*



**MENU**

# Quiet Moments® Calming Aid Tablets







**Plus Melatonin**

⚘⚘⚘⚘⚘ (2 customer reviews)

For use in dogs only over the age of 12 weeks Recommended to help support the nervous system in reducing stress and tension. Also recommended for dogs when traveling by car, plane or boat

- Helps Reduce Stress and Tension
- Great for Storms, Fireworks, Travel, and Grooming
- Time Release

🌐 Shop NaturVet Products Near You

🌐 Shop NaturVet Products Online

***Available In***

***30 ct***     ***60 ct***

Net Wt 90 g (3 1 oz)

  

**Product Info**    **Active Ingredients**    **Inactive Ingredients**    **Directions For Use**    **Partner Assets**



(index html)

## 14% Off Sitewide*  use code : SPRING14

Home (index html) > Dog Supplies (dogsupplies html) > Food Supplements (stooleatprev html) > Urine Odor & Lawn Burn Supplements (stooleatprevdog html) > NaturVet GrassSaver (grasssaver html) > NaturVet GrassSaver (300 Chewable Wafers)





# NaturVet GrassSaver (300 Chewable Wafers)

☆☆☆☆☆  1 Review    💬 Ask a Question (https //myaccount healthypets com/mod_questionsAndAnswers/questionForm php?productId=grasssaver300chews)

Item  79903427
Availability  In Stock

Was  ~~$23.99~~

## $18.99

*You Save: $5.00!  (21%)*

Quantity:    1

🔄 **Auto Reship & SAVE!** Details (autoreship html)

One-Time Order      ▼





## Customers Also Bought

    

**Special Offers**    *Sign Up For NaturVet Emails*      Submit      *What are you looking for?*



**MENU**

# GrassSaver® Wafers



**Plus Enzymes**

 (1 customer review)

For Dogs  Do Not Use for Cats
Does your dog's urine yellow your lawn?
GrassSaver® wafers contain healthy ingredients that
help to diminish those yellow spots when fed to your
dog on a daily basis

**Helpful Instructions:**
Water yellow spots heavily for two weeks  Once your
pet has been fed GrassSaver® Wafers for two
weeks, reseed all yellow spots

Shop NaturVet Products Near You

Shop NaturVet Products Online

*Available In*

**300ct**

600g (21oz)

 

**Product Info**     **Guaranteed Analysis**     **Ingredients**     **Feeding Directions**     **Partner Assets**





**Special Offers**   *Sign Up For NaturVet Emails*      Submit

🔍 *What are you looking for?*



**MENU**

# GrassSaver® Tabs





### No More Yellow Spots!

Does your dog's urine yellow your lawn? GrassSaver contains healthy ingredients that help to diminish those yellow spots when given to your dog on a daily basis.

• Stops yellow spots on your lawn

• Chewable tablets taste like a treat!

**For use in dogs. Do not use in cats.**

GrassSaver is a healthy supplement to help rid your lawn of yellow spots. This unique formula contains a synergistic combination of B-Complex vitamins and amino acids. Imagine

  

  

how green your lawn can look. Simply feed GrassSaver to your dog on a daily basis and rid your lawn of yellow spots.Yucca contained in GrassSaver also helps to reduce stool odor.

**Helpful Instructions:**

Water lawn heavily for two weeks to bleach out yellow spots. After feeding GrassSaver for two weeks, reseed all yellow spots.

 Shop NaturVet Products Near You

 Shop NaturVet Products Online

*Available In*

*250ct 500ct*

125g (4.4oz)

**Product Info**    **Ingredients**    **Guaranteed Analysis**

**Feeding Directions**    **Calorie Content**    **Partner Assets**

**NaturVet GrassSaver Tabs**

Does your dog's urine yellow your lawn? GrassSaver contains healthy

ingredients that help to diminish those yellow spots when given to your dog
on a daily basis.
• Stops yellow spots on your lawn
• Chewable tablets taste like a treat!

GrassSaver is a healthy supplement to help rid your lawn of yellow spots. This unique formula contains a synergistic combination of B-Complex vitamins and amino acids. Imagine how green your lawn can look. Simply feed GrassSaver to your dog on a daily basis and rid your lawn of yellow spots.Yucca contained in GrassSaver also helps to reduce stool odor.

**Helpful Instructions:**
Water lawn heavily for two weeks to bleach out yellow spots. After feeding GrassSaver for two weeks, reseed all yellow spots.

**Cautions:**
For use in dogs. Do not use in cats. If your dog is on a "prescription diet" by a veterinarian, or if your dog has a metabolic disease (particularly liver or kidney dysfunction) then consult your veterinarian before using. Feed only the recommended amount to avoid adverse effects of excess methionine consumption. For animal use only. Keep out of reach of children and pets. An accidental overdose may cause vomiting, disorientation or unsteady, uncoordinated walking. In case of an overdose, contact a veterinarian immediately.

# We think your pet might also enjoy...






**Aller-911® Skin
Care Shampoo**

**Plus Aloe Vera**

**Outta My Box™**

**Deters Dogs From
Eating Cat Stools**

**Aller-911® Skin &
Coat Tabs**

**Plus Antioxidants**

**Omega-Gold**

**Plus Salmon Oil**

## About

**NaturVet**

NaturVet is pet supplement company that has been manufacturing healthy pet supplements for dogs, cats and horses since 1994. We believe all pets deserve a quality life and a chance at living that life in optimal health and happiness. We are an NASC audited member and we carry the NASC seal on all of our labels. All of our supplements are manufactured in the US in a fully compliant, cGMP standard, FDA registered facility which means we follow the highest industry standards and practices. We also stand behind all of our pet supplements with a 100% money back guarantee.

# Write a review:

Your email address will not be published. Required fields are marked *

*Comment*

*Name* *

*Email* *

*Website*



I'm not a robot

reCAPTCHA
Privacy  Terms

**POST COMMENT**

# Join Us on Social Media

#naturvet #forthehealthofyourpet

    

**Products**
**Where to Buy**
**Inside NaturVet**
**Join Our Pack**
**Partner Assets**

**Coupons**
**Refund Policy**
**Terms Of Use**
**Privacy Policy**
**Contact Us**

Garmon Corp manufactures healthy pet supplements
27461 Via Industria Temecula CA 92590 • M-F 8am-5pm PST • 888-628-8783
© Copyright 2018 by Garmon Corp  All rights reserved



Search by keyword    🔍    CONTACT ⌄  MY ACCOUNT 
(HTTPS //ORDER STORE YAHOO NET/HEALTHYPETSCOM/CGI
BIN/WG ORDER?HEALTHYPETSCOM)

(index html)

## 10% Off Sitewide* + Free Shipping on $49+  use code : 10FSG49

Home (index html) > Dog Supplies (dogsupplies html) > Food Supplements (stooleatprev html) > Urine Odor & Lawn Burn Supplements (stooleatprevdog html) >
NaturVet GrassSaver (grasssaver html) > NaturVet GrassSaver





# NaturVet GrassSaver

Write a Review
(https //myaccount healthypets com/mod_productReviews/reviewForm php?
productId=nagrta)

Item  79903420
Availability  In Stock

Was  ~~$18.00~~
**$13.99**
*You Save  $4 01!  (22%)*

Size
Choose an Option 

Quantity    1

⟳ Auto Reship & SAVE! Details (autoreship html)
One-Time Order ▢



Ask a Questi
(https //myaccou
productId=nagrt

---

Description    Ingredients    Useful Information    Customer Reviews    Customer Q&A

## DESCRIPTION

**NaturVet GrassSaver** this unique formula contains a synergistic combination of B Complex vitamins and amino acids  Imagine how
green your lawn can look  Simply feed GrassSaver to your dog on a daily basis and rid your lawn of yellow spots

• A healthy supplement to help rid your lawn of yellow spots
• Unique formula contains a synergistic combination of B Complex vitamins and amino acids
• Yucca contained in GrassSaver also helps to reduce stool odor
• Chewable tablet tastes like a treat
• Made in the USA

## Limit 12 per order

## INGREDIENTS

**Guaranteed Analysis per 500 mg Tablet**

dl-Methionine                                                    25% Min

Each tablet contains 133 mg of dl Methionine

**Ingredients** dl Methionine  Maltodextrin  Dicalcium Phosphate  Yucca schidigera Extract, Microcrystalline Cellulose  Natural Flavoring  Thiamine Mononitrate  Biotin  Vitmain B12 Supplement  Pyridoxine Hydrochloride  Stearic Acid  Magnesium Stearate  and Silica Aerogel

## USEFUL INFORMATION

| Weight | Daily Amount |
|---|---|
| **Up to 10 lbs** | 1 tablet |
| **11-19 lbs** | 2 tablets |
| **20-50 lbs** | 3 4 tablets |
| **51-79 lbs** | 5 6 tablets |
| **80 lbs and over** | 7 tablets |

**NOTE** Double the daily amount for the first 2 weeks

**CAUTIONS** If your dog is on a 'prescription diet  by a veterinarian  or if your dog has a metabolic disease (particularly liver or kidney dysfunction) then consult your veterinarian before using  Feed only the recommended amount to avoid adverse effects of excess methionine consumption  For animal use only  Keep out of reach of children and pets  An accidental overdose may cause vomiting disorientation or unsteady  uncoordinated walking  In case of an overdose  contact a veterinarian immediately

## CUSTOMER REVIEWS

NaturVet GrassSaver
(https //www healthypets com/nagrta html)
**$13 99**

Write a Review
(https //myaccount healthypets com/mod_productReviews/reviewForm php?
productId=nagrta)

## CUSTOMER Q&A

There are no questions or answers for this item

Ask a Question
(https //myaccount healthypets com/mod_questionsAndAnswers/questionForm php?
productId=nagrta)

## BE THE FIRST TO SAVE!

✉ Subscribe to Newsletter

 LIVE CHAT

CALL IN YOUR ORDER

**800.889.9475
(tel:1-800-889-9475)**

### Contact Us

sales@healthypets.co m (ma lto )

Tel  800 889 9475

(https //www.healthypets.com/nagrta.html)

### My Account (https://myaccount.healthypets.com/)

Log in
(https //myaccount healthypets com/)

(https //myaccount healthypets com/)

Shopping Cart
(https //secure healthypets com/healthyp etscom/cgi bin/wg order?
healthypetscom)

Autoship (autorship html)

Returns (info html#returns)

### Customer Care (https://myaccount.healthypets.com/)

About Us (aboutus html)

FAQs (faqs html)

Security Policy (privacypolicy2 html)

Shipping Policy (sh html)

### Sales

Red Tag Sale
(https //www healthypets com/redtag htm l?fi ter&sortBy  rank)

Buy One Get One (bogo deal html)

Hip & Joint Sale (jointmaxts1 html)

Coupons & Promotions
(couponcode html)

### Resources

Compare Flea & Tick Medication
(compare html)

Dog Topic Guide (loyaldogbreeds html)

Cat Topic Guide (cattopics html)

Pet Resource Center (healthtopics html)

### Dog Categories

Treats & Chews (dogtreats1 html)

Food (healthy pet food central html)

Joint Supplements (joint supplements for dogs and cats html)

Collars  Leashes & Harnesses
(coandle html)

K dney  Liver & Renal (kidney liver renal health html)

### Cat Categories

Treats & Chews (cattreats1 html)

Food (catsfood html)

Joint Supplements (joint supplements for dogs and cats html)

Toys (cattoys html)

Over the Counter Supplements (over the counter pet medications html)

All Rights Reserved © 2018 | Privacy Policy (privacypolicy1 html)





**Special Offers**   *Sign Up For NaturVet Emails*          Submit

   *What are you looking for?*



**MENU**

# Ear Wash Liquid

O

### Plus Tea Tree Oil

🐾🐾🐾🐾🐾 (2 customer reviews)

A gentle, yet effective formula designed to help dissolve ear wax and remove foreign debris. Can be used as often as needed and is especially recommended after bathing or swimming.



• Reduces Ear Odor
• Safe For Routine Ear Cleaning
• Helps Remove Ear Wax and Debris
• Contains Tea Tree Oil
• With Aloe and Baby Powder Scent

https://naturvet.com/product/ear-wash/

4/6/2018



Shop NaturVet Products Near You

Shop NaturVet Products Online

**Available In**

*4 fl. oz    8 fl. oz    16 fl. oz*

*1 Gallon*

118 mL

**Product Info      Ingredients      Directions      Partner Assets**

A gentle, yet effective formula designed to help dissolve ear wax and remove foreign debris. Can be used as often as needed and is especially recommended after bathing or swimming.

• Reduces Ear Odor

• Safe For Routine Ear Cleaning

• Helps Remove Ear Wax and Debris

• Contains Tea Tree Oil

• With Aloe and Baby Powder Scent

**Caution: For use on dogs and cats only. Keep out of reach of children.** Do not use on infected ears. Consult veterinarian for help in diagnosing ear infections. If mite infestation is suspected as evidenced by ear scratching, head shaking, redness, scaling or presence of mite debris, use a registered miticide.

# We think your pet might also enjoy...









**Aller-911® Skin Care Shampoo**

**Plus Aloe Vera**

**Adult-Cal™ Nutritional Gel**

**Plus Vitamins & Minerals**

**Off Limits™**

**Training Spray**

**Aller-911® Allergy Aid Soft Chews**

**Plus Antioxidants**

**About NaturVet**

NaturVet is pet supplement company that has been manufacturing healthy pet supplements for dogs, cats and horses since 1994. We believe all pets deserve a quality life and a chance at living that life in optimal health and happiness. We are an NASC audited member and we carry the NASC seal on all of our labels. All of our supplements are manufactured in the US in a fully compliant, cGMP standard, FDA registered facility which means we follow the highest industry standards and practices. We also stand behind all of our pet supplements with a 100% money back guarantee.

1. **Cher** says:
   May 26, 2016 at 7:06 pm
   Absolutely LOVE this product! It smells good, easy application and does a great job cleaning and keeping our babies ears clean!

2. **Martha** says:

   July 14, 2016 at 5:28 am

   We are in an area with a number of lakes and over the years have had a number of people come into our store with concerns over their dog's getting water in their ears when swimming. This ear wash works Terrific for help in cleaning and drying the ears out! Can't recommend it highly enough.

# Write a review:

Your email address will not be published. Required fields are marked *

Comment

Name *

Email *

Website

 I'm not a robot

reCAPTCHA
Privacy  Terms

**POST COMMENT**

# Join Us on Social Media

#naturvet #forthehealthofyourpet

    

**Products**
**Where to Buy**
**Inside NaturVet**
**Join Our Pack**
**Partner Assets**

**Coupons**
**Refund Policy**
**Terms Of Use**
**Privacy Policy**
**Contact Us**

Garmon Corp manufactures healthy pet supplements
27461 Via Industria Temecula CA 92590 • M-F 8am-5pm PST • 888-628-8783

© Copyright 2018 by Garmon Corp  All rights reserved



NaturVet Ear Wash with Tea Tree Oil (8 oz)

Search by keyword

CONTACT ⌄ MY ACCOUNT
(HTTPS //ORDER STORE YAHOO NET/HEALTHYPETSCOM/CGI-
BIN/WG-ORDER?HEALTHYPETSCOM)

(index html)

**10% Off Sitewide\* + Free Shipping on $49+  use code : 10FSG49**

Home (index html) > Dog Supplies (dogsupplies html) > Ear & Eye Products (earproducts html) > Ear Cleansers & Treatments (earcleansers html) > Naturvet Ear Wash
(naturvet ear wash html) > NaturVet Ear Wash with Tea Tree Oil (8 oz)



# NaturVet Ear Wash with Tea Tree Oil (8 oz)

Write a Review
(https //myaccount healthypets com/mod_productReviews/reviewForm php?
productId  naturvet ear wash with tea tree oil 8 oz)

Ask a Questi
(https //myaccou
productId  natur

Item  79903801
Availability  In Stock

Was  $16.99

## $12.99
*You Save  $4 00! (24%)*

Quantity    1

Auto Reship & SAVE! Details (autoreship html)
One-Time Order                ☑

**Add to Cart**

Description     Ingredients     Useful Information     Customer Reviews     Customer Q&A

## DESCRIPTION

**NaturVet Ear Wash with Tea Tree Oil** this formula consists of natural active ingredients for cleaning the ear canal of dogs and cats
A gentle  yet effective product designed to help dissolve ear wax and remove foreign debris  Can be used as often as needed  and is
especially recommended after bathing or swimming

- Suitable for cats and dogs of all life stages
- Formula consists of natural active ingredients for cleaning the ear canal
- Made with Tea Tree Oil which has natural antimicrobial properties along with soothing aloe
- Gentle yet effective formula designed to help dissolve ear wax and remove foreign debris  Also helps to reduce ear odor and is safe
  for routine ear cleaning
- Designed to help dissolve ear wax & remove foreign debris safely without harming your pet

**Limit 12 per order**

## INGREDIENTS

Witch Hazel  Deionized Water  Glycerine  Boric Acid, Tea Tree Oil  Polysorbate 80  Echinacea Extract, Natural Coloring, Aloe Vera Extract and Baby Powder Fragrance

## USEFUL INFORMATION

Point spout tip into ear canal  Squeeze bottle to release enough drops to partially fill the ear canal  Gently massage the base of the ear canal to help loosen wax  Remove liquid  dissolved wax  and dirt with cotton balls or facial tissue  Repeat as needed  Do not use cotton swabs or insert pointed objects into the ear

**HAZARDS TO HUMANS AND ANIMALS**  For use on dogs and cats only  Keep out of reach of children  Do not use on infected ears  Consult veterinarian for help in diagnosing ear infections  If mite infestation is suspected as evidenced by ear scratching  head shaking  redness  scaling or presence of mite debris  use a registered miticide

## CUSTOMER REVIEWS

NaturVet Ear Wash with
Tea Tree Oil (8 oz)
(https //www healthypets com/naturvet
ear wash with tea tree
oil 8 oz html)
**$12 99**

Write a Review
(https //myaccount healthypets com/mod_productReviews/reviewForm php?
productId=naturvet-ear-wash-with-tea-tree-oil-8-oz)

## CUSTOMER Q&A

There are no questions or answers for this item

Ask a Question
(https //myaccount healthypets com/mod_questionsAndAnswers/questionForm php?
productId=naturvet-ear-wash-with-tea-tree-oil-8-oz)

## BE THE FIRST TO SAVE!

■ Subscribe to Newsletter

💬 LIVE CHAT

CALL IN YOUR ORDER
**800.889.9475
(tel:1-800-
889-9475)**

Contact Us

sales@healthypets co

My Account
(https://myaccount.healthypets.com/)

Customer Care
(https //healthypets com/cu)

NaturVet Ear Wash with Tea Tree Oil (8 oz)

  

(https://www.facebook.com/healthypetscom/)(tel:)

m (mailto:)
(mailto:)

Tel: 800-889-9475
(tel:)

Log in
(https://myaccount.healthypets.com/)

Check Order
(https://myaccount.healthypets.com/)

Shopping Cart
(https://secure.healthypets.com/healthyp
etscom/cgi-bin/wg-order?
healthypetscom)

Autoship (autoreship.html)

Returns (info.html#returns)

About Us (aboutus.html)

FAQs (faqs.html)

Security Policy (privacypolicy2.html)

Shipping Policy (sh.html)

## Sales

Red Tag Sale
(https://www.healthypets.com/redtag.htm
l?filter&sortBy=rank)

Buy One Get One (bogo-deal.html)

Hip & Joint Sale (jointmaxts1.html)

Coupons & Promotions
(couponcode.html)

## Resources

Compare Flea & Tick Medication
(compare.html)

Dog Topic Guide (loyaldogbreeds.html)

Cat Topic Guide (cattopics.html)

Pet Resource Center (healthtopics.html)

## Dog Categories

Treats & Chews (dogtreats1.html)

Food (healthy pet food central.html)

Joint Supplements (joint supplements for
dogs and cats.html)

Collars Leashes & Harnesses
(coandle.html)

Kidney Liver & Renal (kidney liver renal
health.html)

## Cat Categories

Treats & Chews (cattreats1.html)

Food (catsfood.html)

Joint Supplements (joint supplements for
dogs and cats.html)

Toys (cattoys.html)

Over the Counter Supplements (over the
counter pet medications.html)

All Rights Reserved © 2018 | Privacy Policy (privacypolicy1.html)



# Taft/

111 East Wacker Drive, Suite 2800 / Chicago, Illinois 60601
Tel: 312.527.4000 / Fax: 312.527.4011
www.taftlaw.com

**Eugene F. Zelek, Jr.**
Direct· 312 836 4010
Facsimile: 312.966 8595
E-mail. ezelek@taftlaw com
Reference· GAC05-GN001

February 16, 2018

**_VIA E-MAIL (mghumman@healthypets.com)_**

Dr. Manny Ghumman
President
HealthyPets, Inc.
34501 Seventh Street
Union City, CA  94587

### *Re: Breach of Contract/False and Deceptive Representations*

Dear Dr. Ghumman:

Our client, The Garmon Corporation ("TGC"), is disappointed that HealthyPets, Inc. repeatedly has failed to honor its post-termination duties and obligations under its Authorized Online Dealer Agreement with TGC (the "Agreement"). Moreover, apart from creating claims under the Agreement, HealthyPets continues to falsely and deceptively represent itself as an authorized dealer of TGC products and, without authorization, use the intellectual property of TGC (e.g., its trademarks, trade names, copyrighted images and text, trade dress and designs). Unless your company demonstrates to the satisfaction of TGC no later than seven (7) days from the date of this letter that HealthyPets has complied with all of its contractual and other duties and obligations or has made an appropriate degree of progress, our client will have no choice but to escalate this matter.

After signing the Agreement on April 19, 2016, HealthyPets became a Nonexclusive Authorized Online Dealer of TGC ("Dealer") for various TGC products. On September 12, 2017, your company's status as a Dealer was terminated, as provided in Section 5 of the Agreement. However, under Section 4(i), a number of contractual duties and obligations of HealthyPets survived termination—all of which your company has chosen to ignore.

Quoting from the Agreement, they include without limitation:

- [A]fter termination of this Agreement, [Dealer will] immediately cease at the end of the Coverage Period: (i) advertising, promoting and selling any and all TGC products and (ii) all use of anything which would give the impression that Dealer is an

---

Taft Stettinius & Hollister LLP          Chicago / Cincinnati / Cleveland / Columbus / Dayton / Indianapolis / Northern Kentucky / Phoenix

Dr. Manny Ghumman
February 16, 2018
Page 2

authorized dealer, reseller or representative of or for any or all of such products or has any affiliation whatsoever with TGC or such products.

- [Dealer will] refrain from knowingly or negligently directly or indirectly (i) advertising, promoting or selling in any or all of the following ways: …online in any fashion, unless and only to the extent each website and marketplace used for such purpose by such Dealer is (along with each business name and storefront) approved in advance by TGC for such use…and which approval has not been rescinded by TGC Notice and (ii) selling in either or both of the following ways:  (A) to anyone for resale other than, in the case of permitted returns, to any or all of the Distributors or TGC and (B) to anyone other than the Authorized Customers, including without limitation to the Special Accounts.

- If and as requested by TGC, Dealer will sell or cause the sale to TGC of and, as directed by TGC and at TGC's expense, ship or cause to be shipped to TGC or its designee(s) each of the items in the Dealer's inventory of TGC products (free of all liens, security interests, claims and encumbrances, other than that or those in favor of TGC) which is acceptable (as determined by TGC) at a price equal to the price paid to TGC or each relevant Distributor therefor or, if unpaid, in lieu of the amount due to TGC or each such Distributor therefor, less in either case a restocking charge equal to the amount, if any, described in the DP.

Just to be clear, this letter will confirm that: (1) the Coverage Period (i.e., the time after termination during which a Dealer, as determined by TGC, should have sold or otherwise disposed of all of Dealer's inventory of TGC products) is, with respect to HealthyPets, long over; (2) TSC has rescinded its approval for HealthyPets to sell TGC products online using any website and marketplace and under any business name or storefront whatsoever; (3) your company remains banned from selling TGC products to others for resale, except, in the case of permitted returns, to TSC and Distributors; and (4) HealthyPets refused to sell to TGC the items of TGC products in the former's inventory after receiving a request from TGC to do so.

If TGC files suit in order to assert its rights, Section 4 of the Agreement provides that the claims will be heard in a bench trial in federal or state court in Riverside, California.  Perhaps even more troubling from the perspective of HealthyPets and you, Section 6 states that, if TGC is successful in whole or part in such litigation, your company and its affiliates (which could include you personally or others, if you or they control HealthyPets) are liable for all of the attorneys' fees and litigation expenses of TGC, its court costs and damages, the costs of collection and other relief awarded or ordered by the court.

In addition to what the Agreement allows, continued use of TGC intellectual property by HealthyPets and falsely and deceptively holding itself out as a dealer authorized by our client subjects your company, as well as you and other individuals personally who are in a decision-making capacity, to considerable liability.  A successful lawsuit by TGC will result in an injunction against your company, you and the other individuals, as well as the payment by your company and such individuals of the damages of TGC (or your profits), as well as the attorneys' fees of TGC.

Dr. Manny Ghumman
February 16, 2018
Page 3

Hopefully, going down this path can be avoided.  To that end, no later than seven (7) days after the date of this letter, you must demonstrate to the satisfaction of TGC that HealthyPets has complied with all of its contractual and other duties and obligations or has made an appropriate degree of progress.  Failure to do so will result in our client being forced to take additional steps to assert its rights.

This letter represents the results of our investigation to date, and the position of TGC may change as further information comes to light.  Nothing in this letter should be construed as an admission on the part of TGC or to waive, limit or otherwise restrict any right, claim, defense or counterclaim of our client.

We look forward to your prompt response.

Sincerely,

TAFT STETTINIUS & HOLLISTER LLP

Eugene F. Zelek, Jr.
Senior Counsel

EFZ/axw/22051575 1