John M. Riccione (*pro hac vice*)
jriccione@taftlaw.com
Daniel R. Saeedi (*pro hac vice*)
dsaeedi@taftlaw.com
Brianna M. Skelly (*pro hac vice*)
bskelly@taftlaw.com
Taft Stettinius & Hollister LLP
111 E. Wacker Drive, Suite 2800
Chicago, Illinois 60601
T: (312) 527-4000
F: (312) 966-8571
Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE GARMON CORPORATION, a California corporation<br><br>               Plaintiff,<br><br>        v.<br><br>HEALTHYPETS, INC., a California Corporation; MANDEEP GHUMMAN<br><br>          Defendant(s). | Case No.: 5:18-cv-809 ODW (SHKx)<br><br>Hon. Otis D. Wright II<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION TO PARTIALLY DISMISS DEFENDANTS' COUNTERCLAIMS AND STRIKE DEFENDANTS' AFFIRMATIVE DEFENSES PURUSANT TO F.R.C.P. 12(B)(6) AND (F); MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Hearing Date:  Monday, October 1, 2018<br>Time:  1:30 p.m.<br>Courtroom: 5D |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

23348784.5

1   PLEASE TAKE NOTICE THAT on October 1, 2018 at 1:30 p.m., or as
2   soon as thereafter as the matter may be heard before the Honorable Otis D. Wright
3   in Courtroom 5D, of the Fifth Floor of the First Street Courthouse, located at 350
4   W. 1st Street, Los Angeles, CA 90012, Plaintiff, The Garmon Corporation
5   ("TGC"), will and hereby does move to dismiss Counts II-VI of the
6   Counterclaims (the "Counterclaims") asserted by Defendants HealthyPets, Inc.
7   ("HPI") and Mandeep Ghumman ("Ghumman") (collectively "Defendants")
8   pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6), and its motion to
9   strike Defendants' asserted affirmative defenses pursuant to Rule 12(f).
10  Defendants seek this relief for the reasons stated in their accompanying
11  Memorandum of Points and Authorities.

12      This Motion is made following a conference of counsel pursuant to L.R.
13  7-3 which took place on Thursday, July 12, 2018 at 2:00 p.m. CST.

14
15  DATED:  August 20, 2018                    Respectfully submitted,

16  John M. Riccione (*pro hac vice*)          THE GARMON CORPORATION
    jriccione@taftlaw.com
17  Daniel R. Saeedi (*pro hac vice*)
    dsaeedi@taftlaw.com
18  Brianna M. Skelly (*pro hac vice*)
    bskelly@taftlaw.com
19  Taft Stettinius & Hollister LLP            By: /s/     *Daniel R. Saeedi*
    111 E. Wacker Drive, Suite 2800            ─────────────────────────
20  Chicago, Illinois 60601                           One of its Attorneys
    T: (312) 527-4000
21  F: (312) 966-8571

22  M. Laurie Murphy (SNB 121866)
    mlm@vrmlaw.com
23  Stephen F. Moeller (SBN 56344)
    sfm@vrmlaw.com
24  Valensi Rose, PLC
    1888 Century Park East, Suite 1100
25  Los Angeles, CA 90067
    Telephone:  (310) 601-7020
    Facsimile:  (310) 277-1706
    Attorneys for Plaintiff

23348784.5

## MEMORANDUM OF POINTS AND AUTHORITIES

HPI has asserted counterclaims and affirmative defenses against TGC, based on meritless arguments that this Court has already considered and rejected. On June 4, 2018, this Court granted TGC's motion for a preliminary injunction, and enjoined HPI from selling TGC's products or using its intellectual property. This Court specifically rejected HPI's arguments in open court, and instead held that TGC was likely to succeed on the merits of its claim. Now, HPI seeks to repackage its prior arguments as counterclaims and affirmative defenses. Accepting the pleadings as true, HPI's counterclaims (Counts II-VI) fail to state a claim pursuant to Rule 12(b)(6), and HPI's affirmative defenses all fail to provide any factual detail and should be stricken pursuant to Rule 12(f).

## FACTUAL BACKGROUND

The Counterclaims allege the following facts, which TGC assumes are true solely for purposes of this motion to dismiss: HPI is a California corporation that acts as an online distributor and retailer of pet supplies, and Ghumman is HPI's Chief Executive Officer and Director. Dkt. 61, p. 5, ¶¶ 43-44. HPI alleges that, on information and belief, TGC markets and sells its products through dealers and distributors authorized by TGC, and enters into non-exclusive agreements with these dealers and distributors. *Id.* p. 19, ¶¶ 10-12. On April 19, 2016, TGC and HPI entered into the Authorized Online Dealer Agreement. *Id.* p. 20, ¶ 13. After entering this contract, HPI sold TGC's products. *Id.* p. 20, ¶ 16.

HPI alleges that the Authorized Online Dealer Agreement "does not contain, include or reference the 'Retail Price Policy' referred to in TGC's Complaint." *Id.* p. 21, ¶ 19. HPI also alleges that "at the time [HPI] and TGC entered into the [Authorized Online Dealer] Agreement, no Retail Price Policy was discussed between the parties and no Retail Price Policy was provided by

23348784.5

1    TGC to HPI." *Id*. p. 21, ¶ 20.  HPI further alleges that TGC "failed to provide
2    notice and obtain [HPI] approval or signature to amend the [Authorized Online
3    Dealer] Agreement to include the Retail Price Policy." *Id*. p. 21, ¶ 22.

4         HPI asserts twenty-two affirmative defenses, and does not provide any
5    supporting facts for the context of these defenses. Dkt. 61, pp. 15-17, ¶¶ 1-22.
6    HPI also asserts six counterclaims against TGC: Count I for Declaratory
7    Judgment and based upon the terms of the Authorized Online Dealer Agreement;
8    Count II for "price fixing"; Count III for breach of the implied covenant of good
9    faith and fair dealing; Count IV for "unfair competition" and solely based upon
10   TGC bringing this litigation in "bad faith"; Count V for violation of an alleged
11   "prohibition on restrictive covenants"; and Count VI, again for "unfair
12   competition" based upon TGC's principal Scott Garmon ("Garmon") vaguely
13   seeking to "influence" an independent body, the National Animal Supplement
14   Council, to "investigate" HPI.  Dkt. 61, pp. 21-31.

15                        <u>**LEGAL STANDARD**</u>
16        To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure
17   ("Rule") 12(b)(6), a complaint must contain sufficient factual matter, which, if
18   accepted as true, states a claim to relief "that is plausible on its face." *Hicks v.*
19   *PGA Tour, Inc.,* No. 16-15370, 2018 WL 3597316, at *5 (9th Cir. July 27, 2018);
20   citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).   A claim "has facial
21   plausibility when the plaintiff pleads factual content that allows the court to draw
22   the reasonable inference that the defendant is liable for the misconduct alleged."
23   *Hicks*, 2018 WL 3597316, at *5; citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,
24   566 (2007).  A complaint that only speculates as to relevant facts "stops short of
25   the line between possibility and plausibility of entitlement to relief." *DeHoog v.*

*Anheuser-Busch InBev SA/NV*, No. 16-35912, 2018 WL 3747591, at \*4 (9th Cir. Aug. 8, 2018) (internal citations omitted).

Motions to strike pursuant to Rule 12(f) "are appropriate when an affirmative defense is insufficient as a matter of law or as a matter of pleading." *Ross v. White*, No. 2:17-CV-04149-ODW-JC, 2018 WL 3419647, at \*2–3 (C.D. Cal. July 12, 2018). Courts apply the principles of *Twombly* and *Iqbal* to affirmative defenses, and require "at least some valid factual basis for pleading an affirmative defense." *Id*.; *see also Sadowski v. Internet Brands, Inc.*, No. 218CV00704ODWFFM, 2018 WL 3219374, at \*2 (C.D. Cal. June 28, 2018) ("Applying the standard for heightened pleading to affirmative defenses serves a valid purpose in requiring at least some valid factual basis for pleading an affirmative defense and not adding it to the case simply upon some conjecture that it may somehow apply.").

## **ARGUMENT**

## **I.   HPI FAILS TO PLEAD A VALID CLAIM FOR PRICE FIXING UNDER THE CARTWRIGHT ACT.**

In Count II, HPI alleges that TGC has violated the Cartwright Act (Cal Bus. & Prof. Code § 16720), California's state antitrust law. A cause of action for violation of the Cartwright Act must allege "(1) the formation and operation of the conspiracy, (2) the wrongful act or acts done pursuant thereto, and (3) the damage resulting from such act or acts." *Chavez v. Whirlpool Corp.*, 93 Cal. App. 4th 363, 373, 113 Cal. Rptr. 2d 175, 182 (2001). Failure to allege sufficient facts supporting any of these elements requires dismissal of a claim under the Cartwright Act. *See id*. (dismissing Cartwright Act claim as insufficiently pled).

23348784.5

Here, HPI's claim is based on unsupported conclusions and fails to allege the necessary, high-threshold elements of an antitrust claim.  For this reason, Count II should be dismissed.

**A.    Defendants fail to allege a conspiracy to engage in anticompetitive activity.**

First, HPI's Cartwright Act claim fails because HPI has failed to allege any conspiracy on the part of TGC with anyone else to allegedly fix prices.  The Cartwright Act requires that HPI identify "a combination of capital, skill or acts by two or more persons for" purposes of undertaking anticompetitive actions.  Cal. Bus. & Prof. Code § 16720(a).  Failure of a plaintiff to allege a conspiracy amongst two or more actors to engage in anticompetitive activity is fatal to a claim under the Cartwright Act.  This is because a "unilateral refusal by a producer to deal with a distributor, absent proof that it was pursuant to an illegal conspiracy" does not violate the Cartwright Act.  *Alan Darush MD APC v. Revision LP*, No. CV 12-10296 GAF (AGRx), 2013 WL 1749539, at *4 (C.D. Cal. Apr. 10, 2013) (dismissing Cartwright Act claim); citing *Kolling v. Dow Jones & Co.*, 137 Cal. App. 3d 709 (1st Dist. 1982).  At the pleadings stage, the "crucial question is whether the challenged anticompetitive conduct stem[s] from independent decision or from an agreement, tacit or express." *Persian Gulf Inc. v. BP W. Coast Prod.* LLC, No. 3:15-CV-01749-L-BGS, 2016 WL 4574357, at *3 (S.D. Cal. July 14, 2016); citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 553 (2007) (internal quotation omitted). In order to allege an agreement between antitrust co-conspirators, "the complaint must allege facts such as a specific time, place, or person involved in the alleged conspiracies to give a defendant seeking to respond to allegations of a conspiracy an idea of where to begin." *Persian Gulf,*

2016 WL 4574357, at *3; citing *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1047 (9th Cir. 2008).

Here, the Counterclaim does not allege a conspiracy between TGC and anyone else to allegedly fix prices for the sale of TGC products.  At best, HPI has alleged that TGC had a unilateral policy on pricing for its products, and that there were no references to this policy in the Authorized Online Dealer Agreement or the discourse between the parties.  Dkt. 61, p. 21, ¶¶ 19-20.  Accepting the pleadings as true, this allegation is insufficient to allege a conspiracy to engage in price fixing under the Cartwright Act.

Moreover, rather that allege an agreement between TGC and some third party, HPI merely alleges that TGC was and acted "under the control of" Scott Garmon, its President.  However, such a bare allegation also does not suffice to allege a conspiracy.  Garmon, as an officer for TGC, acts through TGC and not independently of the company.  To allow HPI's allegation to suffice would swallow the necessity of alleging a conspiracy, since every company acts through its officers and directors.  *See Newport Components, Inc. v. NEC Home Elecs. (U.S.A.), Inc.*, 671 F. Supp. 1525, 1544 (C.D. Cal. 1987) (stating in an analogous context that for purposes of antitrust a parent corporation cannot conspire with wholly-owned subsidiaries); citing *Copperweld Corp. v. Ind. Corp.*, 467 U.S. 752, 771 (1984).  Because HPI was required to allege a joint endeavor between two independent actors to engage in alleged price fixing, but it failed to do so, the claim should be dismissed.

**B.      Defendants fail to allege wrongful acts or coercive actions taken by TGC to force HPI to comply with any alleged pricing policy.**

In addition, HPI has not alleged any coercive actions on the part of TGC regarding price fixing.  Rather, and accepting HPI's pleadings as true, HPI has

alleged nothing more than unilateral conduct by TGC regarding a retail price policy. Courts have held that under the Cartwright Act, a "manufacturer can announce its resale prices in advance and refuse to deal with those who fail to comply," and "a distributor is free to acquiesce in the manufacturer's demand in order to avoid termination." *Chavez*, 93 Cal. App. 4th at 370; citing *U.S. v. Colgate & Co.*, 250 U.S. 300 (1919). A supplier may even "suggest policies and use persuasion to obtain adherence." *Kolling v. Dow Jones & Co.*, 137 Cal. App. 3d 709, 721, 187 Cal. Rptr. 797, 805 (Ct. App. 1982). The Cartwright Act is implicated only when a seller secures compliance with pricing policies through coercive, heavy-handed measures against a distributor, thereby forcing the distributor into "involuntary acquiescence." *Id.; See Hanson v. Shell Oil Co.*, 541 F.2d 1352, 1357 fn. 4 (9th Cir. 1976) ("No violation [of antitrust law] is made out unless plaintiff can show that the supplier's conduct rose to the level of coercion sufficient to deprive the dealers of their free choice. Hanson made no such showing."); *Alan Darush MD APC v. Revision LP,* No. CV 12-10296 GAF AGRX, 2013 WL 1749539, at *5 (C.D. Cal. Apr. 10, 2013) (dismissing Cartwright Act claim for failure to allege a conspiracy or coercive conduct on the party of a supplier).

HPI's allegations themselves foreclose any claim that TGC used heavy-handed tactics and coerced HPI into "involuntary acquiescence" of TGC's pricing policies. To the contrary, HPI alleges that the Authorized Online Dealer Agreement "does not contain, include or reference the 'Retail Price Policy' referred to in TGC's Complaint." *Id.* p. 21, ¶ 19. HPI also admits that "at the time [HPI] and TGC entered into the [Authorized Online Dealer] Agreement, no Retail Price Policy was discussed between the parties and no Retail Price Policy was provided by TGC to HPI." *Id.* p. 21, ¶ 20. HPI further alleges that TGC

"failed to provide notice and obtain [HPI] approval or signature to amend the [Authorized Online Dealer] Agreement to include the Retail Price Policy." *Id.* p. 21, ¶ 22.

In other words, according to HPI, TGC's pricing policy was not at the forefront of its business relationship with HPI, and no coercive measures were ever taken against HPI to agree to the Authorized Online Dealer Agreement.  At best, HPI alleges that TGC at times monitors compliance of its policies and refuses to deal with distributors that attempt to "unilaterally set prices."  Dkt. 61, p. 26, ¶ 51.  However, even if true, this is allowed under the Cartwright Act. *Chavez*, 93 Cal. App. 4th at 373 ("Just as the announcement of a resale price policy and refusal to deal with dealers who do not comply is permissible, measures to monitor compliance that do not interfere with the dealers' freedom of choice are permissible.").

HPI's allegations fall well short of the facts required to sufficiently plead coercive measures under the Cartwright Act. *Cf. In re Qualcomm Antitrust Litig.*, 292 F. Supp. 3d 948, 975 (N.D. Cal. 2017) (finding that Qualcomm used coercive measures by forcing exclusive dealing arrangements on Apple by using its superior market power in the modern chip industry); *Kolling*, 137 Cal. App. 3d at 722 (finding coercive conduct where the defendant penalized pricing violations through forced price roll backs and threatened distributors). Taking the pleadings as true, Count II should thus be dismissed.

Furthermore, HPI ignores the plain language of the Authorized Online Dealer Agreement.  This contract between the parties itself undermines HPI's Cartwright Act claim, because it affirms that TGC's pricing policy is not mandatory.  Section 1(i) of the Authorized Online Dealer Agreement states that HPI will "comply with all laws and, except to the extent expressly excluded by

TGC from mandatory compliance therewith, all of the [Dealer Policies]. . . ." Dkt. 1, Ex. B. Section 3 provides that in the event of any conflict between the Dealer Policies and the Authorized Online Dealer Agreement, the Dealer Policies govern.  The first sentence of the Retail Price Policy, referred to by Defendants in their Counterclaim and by TGC in its Complaint, provides that "each Dealer remains free to establish its own resale prices." *See* Retail Pricing Policy, attached hereto as Exhibit 1; *see also Garcia v. Consol. Disposal Servs., L.L.C.,* No. 218CV0417ODWJPR, 2018 WL 2228190, at *3 (C.D. Cal. May 14, 2018) ("the court may consider documents attached to the complaint or referred to in the complaint whose authenticity no party questions.").  The Retail Price Policy further states "that nothing therein shall constitute an agreement by such Dealer to comply with this Policy, as among other things, this Policy is not and should not be construed to be. . . . mandatory." *Id.*  Thus, HPI cannot argue that its compliance with the Retail Price Policy was contractually-required, let alone part of a coercive scheme by TGC to push HPI to "involuntary acquiescence."  For this additional reason, Count II should be dismissed with prejudice.

## II.     HPI'S CLAIM FOR BREACH OF GOOD FAITH AND FAIR DEALING SHOULD BE DISMISSED.

In Count III, HPI alleges a claim for breach of the "implied covenant of good faith and fair dealing."  This is not a valid claim under California law. California courts routinely dismiss independently-brought "implied covenant" claims as duplicative of contract claims.  *See City of Los Angeles by & through Dep't of Water & Power v. Asplundh Constr. Corp.,* No. CV1206057MMMVBKX, 2012 WL 12941957, at *5 (C.D. Cal. Nov. 15, 2012) (dismissing implied covenant claim as duplicative); *Trinity Hotel Inv'rs, LLC v. Sunstone OP Properties, LLC,* No. SACV071356 AHSMLGX, 2009 WL

303330, at *12 (C.D. Cal. Feb. 6, 2009) (same).   There generally is no implied covenant of good faith and fair dealing that exists outside of a contract.   *See Bus. Credit Mgmt. Inc. v. Med. Faculty Assocs. Inc.*, No. 2:12-CV-00568-SVW-E, 2012 WL 13012683, at *2 (C.D. Cal. Aug. 8, 2012) ("In other words, . . . breach of the implied covenant of good faith and fair dealing is simply another theory of breach of contract.").

Here, HPI's good faith and fair dealing claim is nonexistent under California law.   And, to the extent that it was recognizable, the claim is duplicative of HPI's Count I declaratory judgment claim, which requests this Court to construe the parties' rights under the Authorized Online Dealer Agreement.   Count III is also duplicative of HPI's asserted defenses to TGC's breach of contract claim.   *Landucci v. State Farm Ins. Co*., 65 F. Supp. 3d 694, 716 (N.D. Cal. 2014) (dismissing breach of an implied covenant of good faith claim as duplicative of a breach of contract claim).   Allowing Count III to proceed merely serves to waste judicial and party resources throughout this litigation. Thus, Count III should be dismissed with prejudice.

## III.   HPI FAILS TO STATE VALID CLAIMS AGAINST TGC FOR UNFAIR BUSINESS PRACTICES.

In Counts IV and VI, HPI alleges unfair competition by TGC under California's Unfair Competition Law ("UCL"), California Business and Professional Code sections 17200 and 17500.   Both of HPI's UCL allegations are meritless and should be dismissed under Rule 12(b)(6) for failure to state a claim.

23348784.5

**A.    HPI's claim that TGC committed unfair business practices by bringing this litigation is refuted by the "judicial privilege" and the fact that this Court has already enjoined HPI.**

In Count IV, HPI alleges that TGC committed unfair business practices merely by bringing this litigation against HPI.  Specifically, HPI alleges that TGC "is aware" that under the law (or more accurately HPI's interpretation of it) HPI is allowed to sell TGC products on its websites.  Dkt. 61, p. 28, ¶¶ 59-61.  HPI also alleges that TGC "wrongfully alleged" claims against HPI, and "willfully and intentionally" brought these claims in "bad faith."  *Id.* p. 29, ¶¶ 64-65.

HPI's claim is meritless and should be dismissed with prejudice.  HPI is not the first defendant to attempt to allege unfair business practices against a plaintiff merely because the defendant was sued.  Unsurprisingly, courts have repeatedly rejected these claims, and have done so under the "litigation privilege."  The "principal purpose of the litigation privilege is to afford litigants and witnesses the utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions."  *People ev rel. Gallegos Pac. Lumber Co.*, 158 Cal. App. 4th 950, 958 (1st Dist. 2008).

To achieve this end, "the absolute privilege is interpreted broadly to any communication, not just a publication, having some relation to a judicial or quasi-judicial proceeding, irrespective of the communication's maliciousness or untruthfulness."  *Id.* (applying the litigation privilege against UCL claims).  This privilege is derived not only from common law principles but also California statute; Section 47(b) of the California Civil Code states that a "privileged publication or broadcast" is one made "in any judicial proceeding."  *See also Loeffler v. Target Corp.*, 58 Cal. 4th 1081, 1125 (2014) ("When a statute such as that defining the litigation privilege, for example, renders the conduct complained

-10-

23348784.5

of immune from tort liability, a plaintiff cannot use the UCL to plead around that immunity.") (internal quotations omitted).

Here, HPI's unfair competition claim is based solely upon TGC's filing of this lawsuit.  The litigation privilege is an absolute bar to HPI's claim, and forecloses HPI's claim under the UCL.  Furthermore, even if the litigation privilege did not apply, HPI cannot show that TGC brought this litigation in bad faith.  HPI provides no allegations illustrating bad faith conduct, despite the fact that it was required to plead its UCL claim with particularity.  *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (holding that parties bringing claims under the UCL are subject to Rule 9(b)'s heightened pleading standards). To the contrary, on June 4, 2018, this Court entered a preliminary injunction in this case, and, as part of this ruling, found that TGC is likely to succeed on the merits of its claim.  *See* Dkt. 38, p. 1 ("Mr. Garmon is likely to succeed on the merits of its breach of contract claim against HPI because the Dealer Agreement is a valid contract between the parties that requires HPI to perform certain post-termination obligations, including to discontinue selling Garmon's products, refrain from using its intellectual property, and discontinue using anything which would give the impression that HPI was an authorized dealer.").  Given this Court's ruling, HPI can never demonstrate that TGC brought this litigation in bad faith, and Count IV should be dismissed with prejudice.

**B.    HPI's unfair competition claim based upon TGC allegedly influencing a third party to investigate HPI is based upon mere speculation and should be dismissed.**

In Count VI, HPI brings another UCL claim against TGC, this time predicated on HPI's "information and belief" that Mr. Garmon used his position as a board member for the National Animal Supplemental Council ("NASC") to

-11-

1   "influence the NASC to investigate" HPI.  Dkt. 61, p. 31, ¶ 78.  HPI's claim is
2   based upon mere speculation, devoid of any factual support, and, at any rate, fails
3   to state a valid UCL claim.

4        The UCL prohibits any "unlawful, unfair or fraudulent business act or
5   practice and unfair, deceptive, untrue or misleading advertising. . . ."  UCL, Cal.
6   Bus. & Prof. Code § 17200.  A plaintiff alleging unfair business practices under
7   the UCL "must state with reasonable particularity the facts supporting the
8   statutory elements of the violation." *Arzamendi v. Wells Fargo Bank, N.A.*, No.
9   117CV01485LJOSKO, 2018 WL 1210978, at *8 (E.D. Cal. Mar. 8, 2018); citing
10   *Khoury v. Maly's of California, Inc.*, 14 Cal. App. 4th 612, 619 (1993).  A UCL
11   claim that fails to plead with particularity under Rule 9(b) how conduct violates
12   the law must be dismissed.  *See Kearns*, 567 F.3d at 1125 (applying Rule 9(b)'s
13   heightened pleading standard to a UCL claim); *see also Khoury*, 14 Call. App.
14   4th at 712 (dismissing a UCL claim because the complaint identified "no
15   particular section of the statutory scheme which was violated and fail[ed] to
16   describe with any reasonable particularity the facts supporting [the] violation.").

17        Here, HPI's UCL claim fails because it does not identify any wrongful act
18   on the part of TGC or Mr. Garmon.  HPI does not state how Mr. Garmon allegedly
19   "influenced" the NASC.  To the extent that HPI's claim is based upon an alleged
20   false statement by Mr. Garmon, HPI fails to identify (1) what alleged statement
21   was made by Mr. Garmon; (2) when the alleged statement was made and to
22   whom; (3) why the alleged statement was false; and (4) how the alleged statement
23   "influenced" the NASC to take steps against HPI to the latter's detriment.  *See*
24   *Kearns*, 567 F.3d at 1126 (rejecting UCL claim where the plaintiff "failed to
25   articulate the who, what, when, where, and how of the misconduct alleged.").

23348784.5

1    Because of these omissions, HPI's claim cannot meet the elements of
2    defamation, and HPI cannot repackage this claim under the UCL. *Jacobson v.*
3    *Schwarzenegger*, 357 F. Supp. 2d 1198, 1216 (C.D. Cal. 2004) ("Under
4    California law, although a plaintiff need not plead the allegedly defamatory
5    statement verbatim, the allegedly defamatory statement must be specifically
6    identified, and the plaintiff must plead the substance of the statement."); *Choi v.*
7    *8th Bridge Capital, Inc.*, No. 217CV08958CASAFMX, 2018 WL 3469053, at
8    *12 (C.D. Cal. July 16, 2018) (holding that there was no UCL violation where
9    the counterclaimant could not identify a wrongful act or statement under
10   defamation principles); *Arzamendi*, 2018 WL 1210978, at *8 ("The UCL does
11   not give a plaintiff license to plead around the absolute bars to relief contained in
12   other possible causes of action by recasting those causes of action as ones for
13   unfair competition.") (internal citations omitted).

14   The claim is completely baseless for another obvious reason.  HPI also
15   does not and cannot allege causation or damages as part of its UCL claim.  In
16   terms of causation, HPI never alleges that the NASC actually undertook an
17   investigation of HPI or made any improper findings against HPI.  And, HPI fails
18   to allege how a single board member could be solely responsible for the entire
19   independent body's findings (to the extent the NASC ever undertook an
20   investigation or made findings).  HPI does not even discuss the regulatory
21   authority that the NASC has over it, if any.  Finally, as to damages, HPI does not
22   explain how any NASC action caused HPI to incur "lost profits," as it claims.
23   Thus, HPI cannot show how TGC actually caused HPI damages.  *See Holomaxx*
24   *Techs. v. Microsoft Corp.*, 783 F. Supp. 2d 1097, 1107–08 (N.D. Cal. 2011) ("[A]
25   plaintiff must have suffered an 'injury in fact' or 'lost money or property as a
result of the unfair competition' to have standing to pursue either an individual

-13-

1    or a representative claim under California [UCL].").  Thus, Count VI should be

2    dismissed.

3    **IV.   COUNT V FAILS TO STATE A RECOGNIZABLE CLAIM.**

4         In Count V, HPI brings an independent claim under Section 16600 of the

5    California Business and Professional Code.  Section 16600 bars contracts that

6    restrain individuals "from engaging in lawful profession, trade, or business of any

7    kind."  Cal. Bus. & Prof. Code § 1660.  HPI's claim fails as a matter of law, for

8    several reasons.

9         First, HPI's claim fails because Section 16600 does not provide an

10   independent cause of action for parties.  Rather, it merely provides a defense to

11   the validity of certain types of contracts.  No part of Section 1660's statutory

12   scheme allows a party to maintain a cause of action.  *See id.*  HPI's allegation

13   should be dismissed for this reason alone.   Second, even if Section 16600

14   permitted an independent cause of action, HPI's claim is duplicative of its

15   declaratory judgment claim.  Here, HPI invoked this same defense in its Count I

16   declaratory judgment action.  Count I requests this Court to determine its rights

17   under the Authorized Online Dealer Agreement.  *See* Dkt. 61, p. 21.  As part of

18   Count I, HPI asserts that TGC cannot prohibit HPI from selling TGC's products.

19   *Id.* p. 22, ¶¶ 28, 30.  Thus, HPI has already asserted the same defense in its Count

20   I that is the basis for its claim under Count V.  This Court therefore should dismiss

21   Count V as duplicative.  *See Combs v. Bank of New York Mellon*, No. EDCV 12-

22   1734-DTB, 2013 WL 12129399, at *7 (C.D. Cal. Jan. 29, 2013) (dismissing

23   claim as duplicative of a declaratory judgment claim).

24        Third, HPI does not rely on any express terms of the Authorized Online

25   Dealer Agreement to support its claim.  Rather, it has merely alleged that *TGC's*

     *interpretation* of the agreement somehow violates Section 16600.  Thus, the

claim fails because it does not allege that the contract is unlawful but, instead, that TGC's interpretation of it is.  This fails to meet pleading standards under Rule 12(b)(6).  *See Mahmoud v. Select Portfolio, Inc*., No. 3:17-CV-00568-MEJ, 2017 WL 3387470, at *5 (N.D. Cal. Aug. 7, 2017) (holding that the plaintiff's breach of contract claim failed because he did not allege facts showing how he performed his contractual duties and how the defendants breached those duties).

Finally, Count V should be dismissed because Section 16600 does not apply to the type of contract at issue in this case.  Although HPI attempts to characterize Section 16600 as a *per se* bar on competition, California courts have held that "restrictions on distributors and exclusive dealing arrangements— whereby dealers are precluded from distributing products other than those furnished by the supplier—are not governed by the '*per se*' rule." *Kolling*, 137 Cal. App. 3d at 726.  Rather, these types of contracts "are tested by the 'rule of reason,' and are thus unlawful only if found unreasonable." *Id.*  The "rule of reason" permits certain restraints upon trade to be found reasonable. *Id.; see also Great Western Dist. Prods., v. John A. Wathen Dist. Co.*, 10 Cal. 2d 442 (1937) (holding that the statutory non-compete bar was inapplicable and instead imposing a reasonableness standard).  Thus, HPI's attempt to impose a *per se* bar upon the Authorized Online Dealer Agreement is refuted by California law, and Count V should be dismissed.

## V.   HPI'S AFFIRMATIVE DEFENSES AND JURY DEMAND SHOULD BE STRICKEN.

Finally, HPI has asserted twenty-two affirmative defenses in conclusory fashion, and with no factual allegations or substantive discussions as to why the defenses apply or what the factual predicates are for asserting these defenses.

23348784.5

1  HPI's affirmative defenses do not satisfy *Twombly/Iqbal* pleadings standards,
2  and should be stricken under Rule 12(f).

3  An affirmative defense "is insufficiently pled if it fails to give the plaintiff
4  'fair notice' of the nature of the defense." *Hartford Underwriters Ins. Co. v.*
5  *Kraus USA, Inc.*, 313 F.R.D. 572, 574 (N.D. Cal. 2016); citing *Wyshak v. City*
6  *Nat'l Bank*, 607 F.2d 824, 827 (9th Cir.1979). The pleading standards of *Bell*
7  *Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S.
8  662 (2009) "apply to affirmative defenses and require sufficient facts to render
9  the defenses plausible." *Hartford*, 313 F.R.D. at 575. In other words, HPI is
10 required to allege enough factual detail to provide TGC with fair notice as to how
11 the affirmative defense applies to this case. *See Sadowski v. Internet Brands,*
12 *Inc.*, No. 218CV00704ODWFFM, 2018 WL 3219374, at *2 (C.D. Cal. June 28,
13 2018) ("Applying the standard for heightened pleading to affirmative defenses
14 serves a valid purpose in requiring at least some valid factual basis for pleading
15 an affirmative defense and not adding it to the case simply upon some conjecture
16 that it may somehow apply."); *Ross v. White,* No. 2:17-CV-04149-ODW-JC,
17 2018 WL 3419647, at *2-3 (C.D. Cal. July 12, 2018) (same). Furthermore,
18 affirmative defenses are struck under Rule 12(f) where they are not an actual
19 affirmative defense, but rather merely defects in the plaintiff's prima facie claim.
20 *TSX Toys, Inc. v. 665, Inc.*, No. EDCV1402400RGKDTBX, 2015 WL 12746211,
21 at *8 (C.D. Cal. Sept. 23, 2015).

22 Applying these principles, each of Defendants' affirmative defenses fails
23 to provide any facts whatsoever, and does not provide TGC with fair notice of
24 the reasons for why Defendants are asserting the affirmative defense. They
25 should all be stricken for this reason alone. The affirmative defenses are further
   addressed below:

-16-

### 1.   Affirmative Defenses 1 and 6 – Failure to state a claim.

HPI's first affirmative defense – failure to state a claim – should be stricken.  The "failure to state a claim is not an affirmative defense; it is a defect in a plaintiff's claim and not an additional set of facts that would bar recovery notwithstanding the plaintiff's valid prima facie case." *See TSX Toys, Inc. v. 665, Inc.*, No. EDCV1402400RGKDTBX, 2015 WL 12746211, at *8 (C.D. Cal. Sept. 23, 2015).  HPI rehashes this same concept in affirmative defense six, which alleges that the Complaint is "void" and fails to state a cause of action." Affirmative defense six should be stricken for the same reason as defense one.

### 2.   Affirmative Defenses 2 and 8 – Statute of limitations and laches.

HPI's second and eighth affirmative defense – based upon the statute of limitations and laches – should be stricken for failure to allege relevant facts supporting these defenses.  HPI's statute of limitations defense generically invokes all "appropriate" limitations periods, and fails to allege any specific facts showing that TGC untimely filed its Complaint.  *See Landmark Equity Fund, II, LLC v. Arias*, No. 1:15-CV-00202-JLT, 2015 WL 4224176, at *6 (E.D. Cal. July 10, 2015) (striking statute of limitations affirmative defense).  Furthermore, HPI's laches defense should be stricken because HPI has failed to allege any facts showing an unreasonable delay by the TGC that caused prejudice to HPI.  *See id*. (striking a laches affirmative defense because the defendants "did not allege facts to demonstrate [the plaintiff] unreasonably delayed in commencing this action, or allege facts supporting a determination that prejudice resulted due to the delay in filing.").

### 3.     Affirmative Defenses 3, 5, 7, 9, 10, 14-15 – nonsensical buzzwords.

HPI does not assert any facts for any of its affirmative defenses.  And in most cases, the affirmative defenses are unrecognizable and little more than legal nonsense. This is especially true for defenses three, five, seven, nine, ten, fourteen and fifteen.  In defense three, HPI alleges that the Complaint is barred by "a failure of consideration," and in defense nine, HPI repeats this "lack of consideration" defense.  In defense five, HPI alleges that TGC "did not reasonably rely on any representations" made by HPI.  In defense ten, HPI alleges that the Complaint is barred by "estoppel," but fails to allege how this judicial doctrine applies to this case.  And, in defenses fourteen and fifteen, HPI alleges that the Complaint is barred by "the doctrine of merger" and TGC's "consent." None of these legal buzzwords have any meaning or context, and must be stricken for failure to provide any fair notice to TGC as to their context.

Finally, defense seven is not even an alleged defense to the Complaint, but rather a mere statement that Defendants "met their duty of good faith and fair dealing."  This is not a cognizable defense, and to the extent that it is a defense, is duplicative of the issues to be decided in TGC's breach of contract claim and Defendants' Count I declaratory judgment action.  Thus, it should be stricken.

### 4.     Affirmative Defense 4 – Failure to mitigate.

HPI's fourth affirmative defense – failure to mitigate – should be stricken because HPI has not alleged any facts showing how TGC had a duty to mitigate in this case, or how it breached this duty.  While a failure to mitigate could in theory be an affirmative defense, because HPI has not clarified how this defense applies, this Court should strike it for failure to provide TGC fair notice.  *See E & J Gallo Winery v. Grenade Beverage LLC*, No. 1:13-CV-00770-AWI, 2014

WL 641901, at *8 (E.D. Cal. Feb. 18, 2014) (striking a failure to mitigate affirmative defense where it was not accompanied by any facts or arguments showing how it applied to the case).

### 5.   Affirmative Defenses 11-13 – Bad faith, unclean hands and fraud.

HPI's eleventh, twelfth and thirteenth affirmative defenses (bad faith, unclean hands and fraud, respectively) should be stricken because HPI failed to plead any facts, let alone facts with particularity under Federal Rule of Civil Procedure 9.  *See TSX Toys, Inc. v. 665, Inc.*, No. EDCV1402400RGKDTBX, 2015 WL 12746211, at *7 (C.D. Cal. Sept. 23, 2015).  These heightened pleading requirements apply "to the defense of unclean hands if the allegation of unclean hands involves the elements of fraud." *Id.*  Affirmative defenses 11-13 all invoke wrongful bad faith and/or fraudulent conduct on the part of TGC, and therefore were required to be pled with particularity.  HPI has failed to provide any factual bases for these defenses.

### 6.   Affirmative Defenses 16-18 – Challenges to the contract.

HPI's sixteenth, seventeenth and eighteenth affirmative defenses all rehash the same point as its Count I declaratory judgment counterclaim, *i.e.,* that the contract (presumably referring to the Authorized Online Dealer Agreement) has no continuing force and effect.  These should all be stricken as duplicative of the issues to be decided in TGC's case in chief and HPI's Count I declaratory judgment.

### 7.   Affirmative Defenses 19-21– Trademark claim defects.

HPI's nineteenth, twentieth and twenty-first affirmative defenses are all versions of HPI's previously-used argument that TGC cannot bar HPI from selling goods under a "first sale" doctrine.  These defenses are all redundant of

each other and should be stricken.  Furthermore, they do not provide any factual content as to why the first sale doctrine applies in this case.

### 8.   Affirmative Defense 22 – Failure to perfect copyright protection.

HPI's twenty-second affirmative defense – failure to perfect copyright protection – should be stricken because "it constitutes an attack on TGC's case-in-chief, rather than an affirmative defense." *See TSX Toys, Inc. v. 665, Inc.*, No. EDCV1402400RGKDTBX, 2015 WL 12746211, at *8 (C.D. Cal. Sept. 23, 2015) (dismissing copyright affirmative defense).

### 9.   HPI's Jury Demand Should Be Stricken.

Finally, HPI demands a trial by jury on all issues in this case.  Dkt. 61 p. 18, HPI's request should be stricken.  It is undisputed that HPI waived any right to a trial by jury through the Authorized Online Dealer Assessment.  Section 4 of the agreement states that each dispute between TGC and HPI "shall be" litigated in a "bench trial," with "each Party waiv[ing] trial by jury."  Dkt. 1 p. 71.  Thus, HPI has waived its right to a jury trial, and its request should be stricken.

### CONCLUSION

For these reasons, TGC asks that this Court dismiss Counts II-VI of HPI's Counterclaim for failure to state a claim under Rule 12(b)(6), and strike all of HPI's affirmative defenses for failure to meet the requirements of Rule 12(f). TGC further requests that this Court grant any other relief that it deems proper.

-20-

23348784.5

1

DATED:  August 20, 2018

Respectfully submitted,

2

3

John M. Riccione (*pro hac vice*)
jriccione@taftlaw.com

THE GARMON CORPORATION

4

Daniel R. Saeedi (*pro hac vice*)
dsaeedi@taftlaw.com

5

Brianna M. Skelly (*pro hac vice*)
bskelly@taftlaw.com

By:  /s/     *Daniel R. Saeedi*

6

One of its Attorneys

7

Taft Stettinius & Hollister LLP
111 E. Wacker Drive, Suite 2800

8

Chicago, Illinois 60601
T: (312) 527-4000

9

F: (312) 966-8571

10

11

Laurie Murphy (SNB 121866)
mlm@vrmlaw.com

12

Stephen F. Moeller (SBN 56344)
sfm@vrmlaw.com

13

Valensi Rose, PLC

14

1888 Century Park East, Suite 1100

15

Los Angeles, CA 90067
Telephone:  (310) 601-7020

16

Facsimile:  (310) 277-1706

17

18

Attorneys for Plaintiff

19

20

21

22

23

24

25

-21-

23348784.5

**CERTIFICATE OF SERVICE**

The undersigned certifies that, on August 20, 2018, he caused this document to be electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of filing to counsel of record for each party.

Dated:  August 20, 2018

By:  <u>*s/ Daniel R. Saeedi*</u>
    *(pro hac vice)*

FOR PLAINTIFF THE GARMON CORPORATION

23348784.5