IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE GARMON CORPORATION, a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>HEALTHYPETS, INC., a California corporation; MANDEEP GHUMMAN,<br><br>Defendants. | Case No: 5:18-cv-809- ODW(SHKx)<br><br>Hon. Otis D. Wright II<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR CONTEMPT [39]** |

## I. INTRODUCTION

Presently before the Court is Plaintiff The Garmon Corporation's Motion for Contempt. (ECF No. 39.) Plaintiff moves to impose a hefty financial penalty against Defendants for violations of the Court's Preliminary Injunction. (ECF No. 38.) For the reasons that follow, Plaintiff's Motion is **GRANTED**.[1]

//

//

---

[1] After considering the papers filed in connection with this Motion, the Court deemed this matter appropriate for decision without oral argument. Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15.

## II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff, The Garmon Corporation ("Garmon"), manufactures products for pets and other animals, which are then sold through dealers authorized by Garmon ("Authorized Dealers"). (Compl. ¶¶ 10, 13; ECF No. 1.) On or about April 19, 2016, Garmon and Healthypets, Inc. ("HPI") entered into an Authorized Online Dealer Agreement, authorizing HPI to sell Garmon's products online (the "Dealer Agreement"). (*Id.* ¶¶ 44–45.) Allegedly, HPI and Mandeep Ghumman, the CEO and Director of HPI (collectively "Defendants"), breached the Dealer Agreement, causing Garmon to terminate it in September 2017. (*Id.* ¶¶ 43, 51, 53, 61.) After the Dealer Agreement was terminated, HPI lost its status as an Authorized Dealer of Garmon's products, and certain "post-termination obligations" arose. (*Id.* ¶ 57.) Among other things, HPI was obligated to discontinue selling Garmon's products, refrain from using its intellectual property, and discontinue using "anything which would give the impression that HPI [was] an authorized dealer." (*Id.* ¶ 58.)

According to Garmon, HPI failed to perform the post-termination obligations, and "continues to advertise, promote, and sell hundreds of [Garmon's] products to end users on the HPI Websites without authorization and in breach of the Dealer Agreement." (*Id.* ¶ 61.) As a result, Garmon filed its Complaint against HPI, asserting eight causes of action. (Compl. 1.) Approximately one week after filing its Complaint, Garmon moved the Court for a Preliminary Injunction, seeking to enjoin HPI from selling Garmon's products and from holding itself out to consumers as an Authorized Dealer. (Mot. for Prelim. Inj. 4; ECF No. 17.) On June 4, 2018, the Court granted Plaintiff's Motion for Preliminary Injunction. (ECF No. 38.) The instant Motion followed eight days thereafter.

### III. LEGAL STANDARD

A court's contempt powers are broadly divided into two categories:

civil contempt and criminal contempt. "The difference between criminal and civil contempt is not always clear. The same conduct may result in citations for both civil and criminal contempt." *United States v. Rylander*, 714 F.2d 996, 1001 (9th Cir. 1983) (citing *United States v. UMWA*, 330 U.S. 258 (1947)). In distinguishing between criminal and civil contempt, courts must look to the sanction's "character and purpose." *Int'l Union, UMWA v. Bagwell*, 512 U.S. 821, 827 (1994). "The purpose of civil contempt is coercive or compensatory, whereas the purpose of criminal contempt is punitive." *Koninklijke Philips Elecs. N.V. v. KXD Tech., Inc.,* 539 F.3d 1039, 1042 (9th Cir. 2008) (quoting *United States v. Armstrong,* 781 F.2d 700, 703 (9th Cir. 1986)). The civil contemnor is said to "carr[y] the keys of his prison in his own pocket," whereas the criminal contemnor "is furnished no key, and he cannot shorten the term by promising not to repeat the offense." *Bagwell,* 512 U.S. at 828–29.

A court may wield its civil contempt powers for two separate and independent purposes: (1) "to coerce the defendant into compliance with the court's order"; and (2) "to compensate the complainant for losses sustained." *UMWA,* 330 U.S. at 303–04, 67; *see also Ohr ex rel. NLRB v. Latino Express, Inc.*, 776 F.3d 469, 479–80 (7th Cir. 2015) ("A civil contempt order can serve to coerce a party to obey a court order, or it can be intended to compensate a party who has suffered unnecessary injuries or costs because of contemptuous conduct."). Because civil compensatory sanctions are remedial, they typically take the form of unconditional monetary sanctions; whereas coercive civil sanctions, intended to deter, generally take the form of conditional fines. *See id.* at 780 (citing *Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418, 444 (1911)). In civil contempt actions, "a court *may* assess attorneys' fees ... as part of the fine to be levied on the defendant." *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 258 (1975) (quoting *Fleischmann Distilling Corp. v. Maeir Brewing Co.,* 386 U.S. 714, (1967) (emphasis added)).

In a civil contempt action, "[t]he moving party has the burden of

showing by clear and convincing evidence that the contemnors violated a specific and definite order of the court. The burden then shifts to the contemnors to demonstrate why they were unable to comply." *FTC v. Affordable Media, LLC,* 179 F.3d 1228, 1239 (9th Cir. 1999) (quoting *Stone v. City and County of San Francisco,* 968 F.2d 850, 856 n.9 (9th Cir. 1992)).

## IV. DISCUSSION

The Court's Preliminary Injunction provided that HPI must "immediately cease and desist from advertising, promoting, and selling any and all TGC products that would give the impression that HPI is an authorized dealer, reseller, or representative of . . . Garmon or such products." (Order 2–3, ECF No. 38.) The Injunction also prohibited HPI from advertising, promoting, or selling TGC products online in any fashion, and also prohibited sales to anyone for resale other than in the case of returns, to Garmon. *Id.* Thus, the Court's mandate that HPI not sell or resell any of Garmon's products was specific and definite.

In support of the instant Motion, Garmon produced various exhibits in the days following the issuance of the Injunction, which included website "screengrabs" taken on June 8 and June 11 of HPI-operated storefronts on Amazon and Ebay, as well as Healthypets.com, which were all selling Garmon products. (Mot. for Contempt ("Mot.") Ex. B, ECF No. 39-2.). The exhibits represent clear and convincing evidence that Garmon products were in the stream of commerce through HPI-operated internet storefronts. The burden accordingly shifts to HPI to argue why they could not comply with the Injunction.

HPI maintains that Garmon is requesting the Court hold it to an "impossible" standard. The veracity of this claim would turn markedly if Garmon brought this action the day after the Injunction issued, but that is certainly not the case. Rather, Garmon first noted noncompliance four days

after the issuance of the Injunction and brought the instant Motion three days later after observing its products in the stream of commerce against the Court's instruction.

HPI's main thrust is that they took all reasonable steps to comply with the Injunction, and that "lingering products" were available due to "an artifact of the time-consuming process of searching for, identifying, and removing Plaintiff's products from numerous retail channels." (Def's Opp. to Mot. for Contempt ("Opp'n") 2, ECF No. 50.) HPI's argument thus centers on product removal where a single individual cannot effect change, but the Court is not convinced that all storefronts require third-party intervention to remove Garmon products. Specifically, the Court focuses on eBay and Amazon storefronts because HPI indicated that they immediately "reached out to third parties (e.g., eBay and Amazon)" in an effort to comply with the Injunction. (Opp'n 4, ECF No. 50.)

Although immediate compliance is no small feat, the Court is not convinced that even general compliance occurred here. According to HPI, they immediately contacted eBay and Amazon and yet, Garmon products were still visible for sale on their storefronts one week after the Injunction issued. HPI provided exhibits detailing product removal standard operating procedures of Yahoo, Bing, and Google, but make no mention of eBay or Amazon. (Decl. of Jesse Padilla in Support of Opp'n, Exs. A–C, ECF Nos. 50-1, 50-2, 50-3, 50-4.). It seems dubious that HPI's "immediate contact" was insufficient to effect removal of products from their own eBay and Amazon storefronts. (Mot. Ex. B, ECF No. 39-2) Thus, the Court is not convinced that HPI took all reasonable steps in compliance and therefore violated the Preliminary Injunction. All that remains is an appropriate remedy, to which the Court now turns.

Garmon requests the Court assess $10,000 per day penalty for HPI's

violation of the Injunction, require HPI to turn over all revenue from Garmon product sales plus 4% interest since the entry of the Preliminary Injunction, and to award attorneys' fees and costs related to enforcing the Preliminary Injunction and obtaining the Contempt Order. (Mot. 12, ECF No. 39.).

Regarding the $10,000 per day penalty, the Court is not convinced that the bounds of civil contempt permit such an award. Civil contempt is not employed as a punitive measure, as that is within the purview of criminal contempt. The Court views Garmons's 4% interest request in the same vein. Accordingly, the Court denies both requests.

While a civil contempt order cannot penalize conduct, it can make Garmon whole. Thus, the Court **GRANTS** Plaintiff's request that HPI turn over all revenue gained from Garmon product sales since the entry of the Preliminary Injunction. Regarding attorneys' fees, Garmon has not provided documentation detailing attorneys' fees or costs. The Court is inclined to grant such a request but will not do so until supporting documentation is provided.

## V. CONCLUSION

For the reasons discussed above, the Court **ORDERS** as follows:

(1) HPI must turn over to Garmon all revenue gained from Garmon product sales after the issuance of the Preliminary Injunction.

(2) Garmon shall produce documents detailing attorneys' fees and costs incurred related to the instant Motion and enforcing the Preliminary Injunction.

**IT IS SO ORDERED.**

October 10, 2018

_____
Hon. Otis D. Wright, II
United States District Judge