1  Richard C. Vasquez (CA SBN 127228)
   rvasquez@vbllaw.com
2  Jeffrey T. Lindgren (CA SBN 176400)
   jlindgren@vbllaw.com
3  VASQUEZ BENISEK & LINDGREN LLP
4  3685 Mt. Diablo Blvd., Suite 300
   Lafayette, CA  94549
5  Telephone:  (925) 627-4250
   Facsimile:    (925) 403-0900
6
7  Attorneys for Defendants
   HEALTHY PETS, INC. AND MANDEEP GHUMMAN
8
9            **IN THE UNITED STATES DISTRICT COURT**

10        **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

11
12  THE GARMON CORPORATION, a          Case No:  5:18-cv-809 ODW (SHKx)
    California corporation,
13                                      Hon. Otis D. Wright II
              Plaintiff,
14                                      **DEFENDANTS' MEMORANDUM OF**
                                        **POINTS AND AUTHORITIES IN**
15       v.                             **SUPPORT OF MOTION FOR**
                                        **JUDGMENT ON THE PLEADINGS**
16  HEALTHYPETS, INC., a California     **AS TO COUNTS 1-4, 6 AND 8 OF**
    corporation; MANDEEP               **THE COMPLAINT**
17  GHUMMAN,
                                        Date:   November 19, 2018
18            Defendants.              Time:  1:30 p.m.
                                        Hon. Otis D. Wright
19
20
21
22
23
24
25
26
27
28

DEFENDANTS' MPA ISO MOTION FOR
JUDGMENT ON THE PLEADINGS

# **TABLE OF CONTENTS**

| **Title** | **Page** |
|---|---|
| I. INTRODUCTION | 1 |
| II. STATEMENT OF RELEVANT FACTS | 1 |
| III. LEGAL STANDARD | 4 |
| IV. ARGUMENT | 4 |
|    A. Plaintiff's Trademark Related Claims Are Barred By The First Sale Doctrine. | 4 |
|    B. Plaintiff's California Unfair Competition Claim Must Be Dismissed On The Same Ground As The Trademark Claims. | 7 |
|    C. Plaintiff's Contract Claims Must Be Dismissed Because The Dealer Agreement Is An Unlawful Restraint Of Trade. | 8 |
|    D. Plaintiff's Interference With Prospective Economic Advantage Claim Fails Because There Is No Wrongful Act. | 11 |
| V. CONCLUSION | 12 |

# TABLE OF AUTHORITIES

**Cases**                                                                                          **Page**

*Chamberlain v. Augustine*, 172 Cal. 285 (1916)                                                    10, 11

*Chavez v. United States*, 683 F.3d 1102 (9th Cir. 2012)                                           4

*Cleary v. News Corp.*, 30 F.3d 1255 (9th Cir. 1998)                                               8

*Cousins v. Lockyer*, 568 F.3d 1063 (9th Cir. 2009)                                                4

*Crown Imports LLC v. Superior Court*, 223 Cal. App. 4th 1395 (2014)                               12

*Della Penna v. Toyota Motor Sales, U.S.A., Inc.*, 11 Cal. 4th 376 (1995)                          11, 12

*Denbicare U.S.A. Inc. v. Toys "R" Us, Inc.*, 84 F.3d 1143 (9th Cir. 1996)                         8

*Edwards v. Arthur Andersen LLP*, 44 Cal. 4th 937 (2008)                                           9

*Golden v. Cal. Emergency Physicians Med. Grp.*, 782 F.3d 1083 (9th Cir. 2015)                     9

*Golden v. Cal. Emergency Physicians Med. Grp.*, 896 F.3d 1018 (9th Cir. 2018)                     9

*Jablonski v. Pan Am. World Airways, Inc.,* 863 F.2d 289 (3rd Cir. 1988)                           4

*Kirtsaeng v. John Wiley & Sons, Inc.*, 568 U.S. 519 (2013)      8

*Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134 (2003)      12

*MGA Entm't, Inc. v. Dynacraft BSC, Inc.*, Case No. 2:17-cv-08222-      8
ODW-KS, 2018 WL 2448123 (C.D. Cal. May 30, 2018)

*NEC Elec. v. CAL Circuit Abco*, 810 F.2d 1506 (9th Cir. 1987)      5, 6, 7

*NEC Elec., Inc. v. Cal Circuit ABCO, Inc., et al.*, Case No CV 85-1344,      5, 6
1986 WL 765406 (C.D. Cal. Aug. 20, 1986)

*People v. Lynam*, 253 Cal. App. 2d 959 (1967)      12

*Schmidt v. Skolas*, 770 F.3d 241(3d Cir. 2014)      1

*S. Bay Joint Venture v. G.C. Theatre Corp. of Cal.*, Case. No. B138751,      10
2002 WL 31082217 (Cal. Ct. App., 2d Dist., Sept. 18, 2002)

**<u>Rules</u>**

Federal Rules of Civil Procedure 12(b)(6)      4

Federal Rules of Civil Procedure 12(c)      1, 4

# I.     INTRODUCTION

The majority of Plaintiff's claims in the Complaint are based on either (1) conduct that creates no Lanham Act liability because of the first sale doctrine or (2) a contract that is unenforceable because it is an unlawful restraint of trade. HPI is alleged to have offered and sold genuine TGC products under Plaintiff's trademark that were lawfully purchased from Plaintiff's authorized dealers ("Authorized Dealers") and distributors ("Distributors") on the open market after its contract with Plaintiff terminated. Such conduct creates no Lanham Act or California unfair competition liability. Such conduct is neither wrongful nor in any manner unlawful. Plaintiff's claim that its contract with HPI perpetually bans HPI from engaging in this lawful conduct demonstrates that the contract contravenes California's public policy against unlawful restraints of trade. Consequently, Counts 1-4, 6 and 8 of Plaintiff's Complaint must be dismissed.

# II.    STATEMENT OF RELEVANT FACTS

Plaintiff and HPI entered into an Authorized Online Dealer Agreement ("Dealer Agreement") on or about April 19, 2016, which is attached as Exhibit B to Plaintiff's Complaint against Defendants filed on April 19, 2108. Complaint ("Compl.") ¶ 44. Plaintiff contends that HPI, as an Authorized Dealer, was subject to Plaintiff's Authorized Dealer Retail Price Policy (RPP) ("Retail Policy").[1] Compl. ¶¶ 20-22, 47-48. The Dealer

---

[1] The Retail Policy is repeatedly cited and paraphrased throughout the Complaint but is not attached as an exhibit. It is an "integral document" that the Court may consider in its determination under Rule 12(c). *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014). Plaintiff filed the Retail Policy as an exhibit to its Motion for Preliminary Injunction. See Exhibit A to Declaration of Marty Candiotta in Support of Motion for Preliminary Injunction (ECF No. 18). Hereafter, the Retail Policy will be cited as "Exhibit A Retail Policy (ECF No. 18) at 14-18." The page number

DEFENDANTS' MPA ISO MOTION FOR JUDGMENT ON THE PLEADINGS                1

1  Agreement contains an integration clause that Plaintiff alleges incorporates

2  its policies, such as the Retail Policy. Compl. at ¶ 48. However, this

3  allegation is belied by the actual language of the Retail Policy itself:

4  "Notwithstanding anything to the contrary which may be expressed or

5  implied in or by one or more agreements between a Dealer and Garmon or

6  such Dealer and the distributor(s) (if any) from which such Dealer obtains

7  any or all Garmon products, nothing therein shall constitute an agreement by

8  such Dealer to comply with this Policy, as among other things, *this policy is*

9  *not and should not be construed to be one of the Garmon Policies (as such*

10  *term is or may be used in any or all of such agreements) where such*

11  *compliance is mandatory*." Exhibit A Retail Policy (ECF No. 18) at 18

12  (emphasis added). As a consequence of the above, the Retail Policy is not

13  integrated into the Dealer Agreement.

14       Plaintiff claims it terminated the Dealer Agreement with HPI pursuant

15  to its terms on September 12, 2017, which termination became effective on

16  October 12, 2017. Compl. at ¶¶ 52-53, 56. According to Plaintiff, Section

17  1(k) of the Dealer Agreement imposes post termination obligations on HPI

18  and specifically provides: "(k) after termination of this Agreement,

19  immediately cease at the end of the Coverage Period (i) advertising,

20  promoting, and selling any and all TGC products and (ii) all use of anything

21  which would give the impression that Dealer is an authorized dealer, reseller

22  or representative of or for any or all of such products or has any affiliation

23  whatsoever with TGC or such products." Compl. Ex. B at 70. Although

24  there is no allegation within the Complaint regarding when the Coverage

25

26

27  identified will be the page number of ECF No. 18 rather than the page number of the underlying document.

28  DEFENDANTS' MPA ISO MOTION FOR JUDGMENT ON THE PLEADINGS      2

Period ended, in a February 16, 2018 letter to HPI, Plaintiff took the position
that the Coverage Period had long since lapsed. Compl. Ex. H at 101.
Plaintiff further claims that the Dealer Agreement requires that after
termination HPI must "[d]iscontinue the use of TGC's intellectual property,
including its trademarks, trade names, copyrighted images and text, trade
dress and designs." Compl. ¶ 58.b. No such express provision is found
within the Dealer Agreement.

Plaintiff contends that after termination of the Dealer Agreement HPI
continued to advertise, promote and sell TGC products to end users through
HPI's websites. Compl. ¶ 61. In conjunction with these activities, Plaintiff
alleges that HPI used Plaintiff's trademarks on the HPI websites to advertise,
promote, and sell TGC products bearing these trademarks. Compl. ¶¶ 66-69.
According to Plaintiff, HPI's use of Plaintiff's trademarks gives consumers
the impression that HPI is one of Plaintiff's authorized dealers, resellers or
representatives. Compl. ¶ 66. HPI is alleged to have purchased TGC
products from Plaintiff's Authorized Dealers and Distributors. Compl. ¶ 63.

Nowhere does Plaintiff allege that HPI is selling non-genuine,
counterfeit, repackaged, defective, or otherwise altered TGC products;
rather, Plaintiff alleges only that HPI sold the same TGC products bearing
Plaintiff's trademarks sold by Plaintiff's Authorized Dealers and
Distributors (from whom HPI purchased those TGC products). Compl. ¶¶
103, 122. Plaintiff suggests that these products sold are "materially
different" from the identical products sold by Authorized Dealers and
Distributors "because HPI no longer provides the services, abides by the
restrictions and applies the knowledge and experience in connection with
such promotion and sale as required or encouraged by the terms and

DEFENDANTS' MPA ISO MOTION FOR
JUDGMENT ON THE PLEADINGS

3

conditions of the Authorized Online Dealer Agreement and the Retail Policy." Compl. ¶ 97.

## III.   LEGAL STANDARD

Defendants seek dismissal of Counts 1-4 and 6-8 of the Complaint pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. "Analysis under Rule 12(c) is substantially identical to analysis under Rule 12(b)(6) because, under both rules, a court must determine whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy." *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (internal quotations and citations omitted). Judgment under Rule 12(c) is granted when the movant "establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." *Jablonski v. Pan Am. World Airways, Inc.,* 863 F.2d 289, 290 (3d Cir. 1988). Although all factual allegations in the complaint are deemed true and construed in the light most favorable to the non-moving party, "conclusory allegations of law and unwarranted inferences" are not sufficient to preclude dismissal. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). Finally, under Rule 12(c) a court may go beyond the allegations in the complaint and the exhibits attached to it and consider external documents on which the complaint is based. *Schmidt*, 770 F.3d at 249.

## IV.   ARGUMENT

### A.   Plaintiff's Trademark Related Claims Are Barred By The First Sale Doctrine.

Counts 3 and 4 of the Complaint must be dismissed because each is based on HPI's advertisement, promotion and sale of genuine TGC products bearing Plaintiff's original trademarks that were purchased by HPI from

DEFENDANTS' MPA ISO MOTION FOR
JUDGMENT ON THE PLEADINGS

4

third parties. The Ninth Circuit has previously held such conduct incurs no liability under the Lanham Act:

> Trademark law generally does not reach the sale of genuine goods bearing a true mark even though such sale is without the mark owner's consent. Once a trademark owner sells his product, the buyer ordinarily may resell the product under the original mark without incurring any trademark law liability. The reason is that trademark law is designed to prevent sellers from confusing or deceiving consumers about the origin or make of a product, which confusion ordinarily does not exist when a genuine article bearing a true mark is sold.

*NEC Elec. v. CAL Circuit Abco*, 810 F.2d 1506, 1509 (9th Cir. 1987) (internal citations omitted). Courts have routinely found no basis for Lanham Act trademark infringement and unfair competition claims under facts strikingly similar to those alleged by Plaintiff.

For example, in *NEC* the plaintiff NEC-USA argued that the defendant's unauthorized use of the "NEC" trademark to sell genuine NEC computer chips in the United States–which defendant purchased on the grey market–constituted trademark infringement and unfair competition under Section 43(a) of the Lanham Act. *Id*. at 1508. NEC-USA argued that defendant's sale of NEC computer chips without NEC-USA's servicing and warranties confused purchasers who thought the sales were authorized by or connected to NEC-USA and mistakenly believed these chips were protected by NEC-USA's servicing and warranties. *Id*. As described in the lower court ruling on appeal to the Ninth Circuit, NEC-USA argued that its servicing and warranties were "part and parcel of the 'NEC' trademarked product." *NEC Elec., Inc. v. Cal Circuit ABCO, Inc., et al.*, Case No CV 85-1344, 1986 WL 765406 at *7 (C.D. Cal. Aug. 20, 1986), *reversed in part, vacated in part by NEC Elec. v. CAL Circuit Abco*, 810 F.2d 1506, 1509 (9th Cir. 1987). NEC-USA described the key servicing and warranties as "front end technical support to its customers, quality control, significant warranty

service, extensive advertising and promotion of its product, and the selection and training of its technical personnel." *NEC Elec*., 1986 WL 765406 at *6. The Ninth Circuit, however, held that the lack of the accompanying services or the potential consumer confusion could not save NEC-USA's trademark claims from application of the first sale doctrine. *NEC Elec,* 810 F.2d at 1509-10.

Moreove, in *Sebastian Int'l Inc. v. Longs Drug Stores Corp.*, 53 F.3d 1073 (9th Cir. 1995), the Ninth Circuit held that the "first sale" doctrine precluded trademark infringement and unfair competition under the Lanham Act. "Beginning with *Prestonette, Inc. v. Coty*, 264 U.S. 359, 44 S. Ct. 350, 68 L.Ed. 731 (1924), courts have consistently held that, with certain well-defined exceptions, the right of a producer to control distribution of its trademarked product does not extend beyond the first sale of the product. Resale by the first purchaser of the original article under the producer's trademark is neither trademark infringement nor unfair competition." *Sebastian*, 53 F.3d at 1074. The underlying facts in Sebastian are instructive.

The plaintiff Sebastian manufactured hair care products affixed with its trademark on each container and sold these products solely to professional salons and distributors who were members of the "Sebastian Collective Membership Program." Members were contractually barred from reselling to non-members, such as Longs, and the court presumed that Longs purchased the trademarked products from a member who sold them in violation of its contract with Sebastian. *Id*. Sebastian asserted that Longs' sales of Sebastian's trademarked products were unauthorized and falsely represented to consumers that Longs was authorized by Sebastian to resell the products. *Id*. This was the basis for Sebastian's claims of trademark infringement and unfair competition under Lanham Act section 43(a).

1   The Ninth Circuit held that the "first sale" doctrine precluded
2   Sebastian's attempt to bar Longs from reselling genuine Sebastian products
3   purchased on the open market. *Sebastian*, 53 F.3d at 1075. "It is the essence
4   of the 'first sale' doctrine that a purchaser who does no more than stock,
5   display, and resell a producer's product under the producer's trademark
6   violates no right conferred upon the producer by the Lanham Act." *Id*. at
7   1076. This is true even if a consumer were to erroneously "believe the
8   reseller is affiliated with or authorized by the producer." *Id*.

9   Plaintiff alleges only that HPI stocks and sells genuine TGC products
10   bearing Plaintiff's trademarks that are purchased from Plaintiff's Authorized
11   Dealers and Distributors. Compl. ¶¶ 103, 122. The Ninth Circuit precedent
12   applies the first sale doctrine to bar Lanham Act liability on such facts.
13   *Sebastian,* 53 F.3d at 1075-76. Plaintiff's attempt to evade the first sale
14   doctrine by claiming that the genuine products HPI advertised, promoted,
15   and sold are "materially different" because HPI does not provide certain
16   accompanying "services" with its offer and sale of the trademarked products
17   was firmly rejected by the Ninth Circuit in its *NEC* decision on almost
18   identical facts. *NEC*, 810 F.2d at 1509-10. Accordingly, Count 3 for
19   trademark infringement and Count 4 for unfair competition under the
20   Lanham Act section 43(a) must be dismissed under the first sale doctrine.

21   **B.   Plaintiff's California Unfair Competition Claim Must Be
22        Dismissed On The Same Ground As The Trademark Claims.**

23   The California unfair competition claim in Count 6 should be
24   dismissed for the same reason as Plaintiff's claims under the Lanham Act in
25   Counts 3 and 4. Plaintiff's claim under California Business and Professions
26   Code §§ 17200 and 17500 *et seq*. is premised on the same conduct as its
27   claims under Lanham Act §§ 32 and 43(a). The Ninth Circuit has repeatedly
28   DEFENDANTS' MPA ISO MOTION FOR                                7
     JUDGMENT ON THE PLEADINGS

held that state unfair competition claims under §§ 17200 and 17500 are "substantially congruent" to Lanham Act claims and dismissed the state law claims because the Lanham Act claims were dismissed. *See Denbicare U.S.A. Inc. v. Toys "R" Us, Inc.*, 84 F.3d 1143, 1152-53 (9th Cir. 1996) (affirming dismissal of plaintiff's §17200 and §17500 claims based on dismissal of Lanham Act claim), *abrogated in part on other grounds by*, *Kirtsaeng v. John Wiley & Sons, Inc.*, 568 U.S. 519 (2013); *Cleary v. News Corp.*, 30 F.3d 1255, 1262-63 (9th Cir. 1998) (affirming dismissal of plaintiff's §17200 claim based on proper dismissal of Lanham Act claim). This Court recently made a finding on these same grounds. *MGA Entm't, Inc. v. Dynacraft BSC, Inc.*, Case No. 2:17-cv-08222-ODW-KS, 2018 WL 2448123 at *5 (C.D. Cal. May 30, 2018) (dismissing §17500 claim because corresponding Lanham Act § 43(a) claim failed). For the same reason Counts 3 and 4 must be dismissed, Count 6 must be dismissed.

**C.   Plaintiff's Contract Claims Must Be Dismissed Because The Dealer Agreement Is An Unlawful Restraint Of Trade.**

Counts 1 and 2 must be dismissed because the Dealer Agreement is void as an unlawful restraint of trade in contravention of California Business and Professions Code § 16600. At the heart of Plaintiff's contract claims is its attempt to enforce a perpetual post termination ban on HPI's ability to advertise, promote, and sell genuine Plaintiff products that HPI can lawfully purchase on the open market. While Plaintiff can decide not to sell TGC products to HPI, a perpetual contractual ban on HPI's right to sell TGC products available to it on the open market is an impermissible restraint on lawful competition in the marketplace.

Business and Professions Code §16600 states: "Except as provided in this chapter, every contract by which anyone is restrained from engaging in a

lawful profession, trade, or business of any kind is to that extent void." California courts "have been clear in their expression that section 16600 represents a strong public policy of the state which should not be diluted by judicial fiat." *Edwards v. Arthur Andersen LLP*, 44 Cal. 4th 937, 949 (2008). "Section 16600 is unambiguous, and if the Legislature intended the statute to apply only to restraints that were unreasonable or overbroad, it could have included language to that effect." *Id.* at 950. Section 16600 is not limited to any type of contract, "[r]ather, section 16600 voids 'every contract' that 'restrains' someone 'from engaging in a lawful profession, trade, or business.'" *Golden v. Cal. Emergency Physicians Med. Grp.*, 782 F.3d 1083, 1090 (9th Cir. 2015). Courts have applied § 16600 to a wide variety of contracts and restraints, including post termination bans on competition in distributor or reseller agreements. See e.g., *Gatan, Inc. v. Nion Co.*, Case No. 15-cv-1862-PJH, 2016 WL 1243477 at *3 ((N.D. Cal. Mar. 30, 2016) (holding one-year ban on distributing competing or similar products in reseller agreement void under § 16600); *Beatty Safway Scaffold, Inc. v. Skrable*, 180 Cal.App.2d 650, 656 (1960)(finding three-year post-termination bar on competition in distributor agreement violated § 16600); *Scott v. Snelling and Snelling*, 732 F.Supp. 1034, 1042-42 (N.D Cal. 1990)(holding franchise agreement's two-year post termination bar against operating competing business in former franchise area unenforceable under § 16600); *Golden v. Cal. Emergency Physicians Med. Grp.*, 896 F.3d 1018, 1024 (9th Cir. 2018)(finding settlement agreement with ban on doctor working for any hospital defendant owned or contracted with now or in the future void under § 16600).

   "[A] contractual provision imposes a restraint of a substantial character if it significantly or materially impedes a person's lawful

profession, trade, or business." *Golden*, 896 F.3d at 1024 (citations omitted). "To meet this standard, a provision need not completely prohibit the business or professional activity, nor does it need to be sufficient to dissuade a reasonable person from engaging in that activity." *Id*. (*citing Edwards*, 44 Cal. 4th at 946) "But its restraining effect must be significant enough that its enforcement would implicate the policies of open competition and employee mobility that animate section 16600." *Id*. (*citing Edwards*, 44 Cal. 4 th at 946) "A restraint can be substantial even if it is reasonable and even if it is narrow." *Id*. at 1023 (internal citations omitted). Section 16600 makes "no exception in favor of contracts only in partial restraint of trade." *Chamberlain v. Augustine*, 172 Cal. 285, 289 (1916).

"California courts have interpreted section 16600 as a *per se rule*, rendering any restraint on business or trade automatically unenforceable." *S. Bay Joint Venture v. G.C. Theatre Corp. of Cal.*, Case. No. B138751, 2002 WL 31082217 at *3 (Cal. Ct. App., 2d Dist., Sept. 18, 2002). "California courts have repeatedly held that section 16600 should be interpreted as broadly as its language reads." *Scott*, 732 F.Supp. at 1042. "A simple reading of this statute, giving the words their ordinary meaning, demonstrates that the California state legislature intended section 16600 to apply to any sort of contract which contains a covenant restraining competition." *Id*. at 1040.

Here, Plaintiff seeks enforcement of the Dealer Agreement's perpetual post-termination ban on HPI's ability to advertise, promote, or sell any Plaintiff's products that HPI can lawfully purchase on the open market. Compl. ¶ 63. Such a restraint prevents HPI from engaging in a portion of its lawful business, which is reselling animal supplement products that it purchases on the open market. This ban interferes with HPI's lawful

business and restricts competition in the marketplace. As such, this restriction is void under §16600. *See Edwards*, 44 Cal. 4th at 948 (finding agreement preventing plaintiff from performing for eighteen (18) months after termination the same services he provided while with the defendant for any client on whose account he worked during eighteen (18) month period before termination was invalid under §16600). That this restraint is only partial makes it no less unlawful. *See Chamberlain*, 172 Cal. at 288. The centrality of this perpetual post-termination ban on the sale of TGC products to the Dealer Agreement makes the entire agreement unenforceable pursuant to §16600. On this basis, Counts 1 and 2 should be dismissed.

**D.    Plaintiff's Interference with Prospective Economic Advantage Claim Fails Because There Is No Wrongful Act.**

Count 8 must be dismissed because Plaintiff cannot plead the requisite independent wrongful act. Plaintiff seeks to plead its tortious interference with prospective economic advantage claim by relying on Defendants' alleged Lanham Act violations to support a finding that Defendants engaged in independently wrongful conduct. For the reasons discussed above, the Lanham Act claims must be dismissed and as a result there is no basis to find Defendants committed alleged wrongful act to support a claim of tortious interference with prospective economic advantage.

To sustain its claim of tortious interference with prospective economic advantage Plaintiff must demonstrate (1) an economic relationship between plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendants' knowledge of the relationship; (3) intentional acts on the part of the defendants designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the defendants' acts. *Della Penna v.*

DEFENDANTS' MPA ISO MOTION FOR
JUDGMENT ON THE PLEADINGS

11

*Toyota Motor Sales, U.S.A., Inc.*, 11 Cal. 4th 376, 398-99 (1995); *People v. Lynam*, 253 Cal. App. 2d 959, 965 (1967). This cause of action "is not intended to punish individuals or commercial entities for their choice of commercial relationships or their pursuit of commercial objectives, unless their interference amounts to independently actionable conduct." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1158-59 (2003). Courts therefore require the additional showing that the interference was wrongful by some measure beyond the fact of the interference itself. *Della Penna*, 11 Cal. 4th at 392-93. To be independently wrongful, the act must be "unlawful, that is … it is proscribed by some constitutional, statutory, regulatory, common law or other determinable legal standard." *Korea Supply*, 29 Cal. 4th at 1159. This independently wrongful act must be the interfering act as well as being itself independently wrongful. *Crown Imports LLC v. Superior Court*, 223 Cal. App. 4th 1395, 1404 (2014).

Plaintiff's Count 6 relies solely on the conduct alleged to violate the Lanham Act as the basis for the required independently wrongful act. Complaint at ¶¶ 91-98, 103-104, and 129. For the reasons addressed above regarding Counts 3 and 4, Plaintiff's Lanham Act claims must be dismissed based on the first sale doctrine. As a result, the absence of any Lanham Act violation precludes Plaintiff from showing Defendants committed any act of interference that is itself an independently wrongful act. This failure is fatal to Plaintiff's claim and Count 8 must be dismissed.

## V.    CONCLUSION

For the foregoing reasons, Defendants ask the Court to dismiss Counts 1-4, 6, and 8 of the Complaint.

DEFENDANTS' MPA ISO MOTION FOR JUDGMENT ON THE PLEADINGS

12

DATED:  October 19, 2018         Respectfully submitted,

                                  By:  /s/Richard C. Vasquez
                                       Richard C. Vasquez
                                       Attorneys for Defendants
                                       HEALTHYPETS, INC. and MANDEEP
                                       GHUMMAN

                                  Richard C. Vasquez
                                  Jeffrey T. Lindgren
                                  VASQUEZ BENISEK & LINDGREN LLP
                                  3685 Mt. Diablo Boulevard, Suite 300
                                  Lafayette, CA 94549
                                  925-627-4250
                                  925-403-0900-Fax
                                  rvasquez@vbllaw.com
                                  jlindgren@vbllaw.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system on October 19, 2018.

                                  /s/Richard C. Vasquez