O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE GARMON CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>HEALTHYPETS, INC.; MANDEEP GHUMMAN,<br><br>Defendants. | Case No. 5:18-cv-00809-ODW (SHKx)<br>**ORDER GRANTING IN PART DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS [89]** |

## I. INTRODUCTION

Presently before the Court is Defendants' Motion for Judgment on the Pleadings ("Motion"). (ECF No. 89.) Plaintiff, The Garmon Corporation ("Garmon") initiated this action against Defendants HealthyPets, Inc., and its President and Chief Executive Officer, Mandeep Ghumman (collectively, "HPI or Defendants") on April 19, 2018. (Compl., ECF No. 1.) On October 19, 2018, HPI filed a Motion for Judgment on the Pleadings, which the parties have fully briefed. (ECF Nos. 89–96.) For the reasons that follow, Defendants' Motion is **GRANTED IN PART**.[1]

## II. FACTUAL BACKGROUND

Garmon is a California Corporation that is in the business of manufacturing

---

[1] After carefully considering the papers filed in connection with the Motion, the Court deems the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

1

products for pets and other animals, which are then sold through dealers authorized by Garmon ("Authorized Dealers"). (Compl. ¶¶ 2, 10, 13.) HPI is also a California Corporation who, on or about April 19, 2016, entered into an Authorized Online Dealer Agreement with Garmon, which permitted HPI to sell Garmon's products online (the "Dealer Agreement"). (*Id.* ¶¶ 3, 44–45.) The Dealer Agreement restricts sales: "(A) to anyone for resale other than, in the case of permitted returns, to any or all of the Distributors or [Garmon,] and (B) to anyone other than the Authorized Customers." (Compl., Ex. B, at 1.) Moreover, if the Dealer Agreement was ever terminated, HPI was obligated to discontinue selling Garmon's products, refrain from using its intellectual property, and discontinue using "anything which would give the impression that HPI [was] an authorized dealer." (*Id.* ¶ 58.)

Allegedly, HPI breached the Dealer Agreement, causing Garmon to terminate it in September 2017. (*Id.* ¶¶ 51, 53.) After the Dealer Agreement was terminated, HPI lost its status as an Authorized Dealer of Garmon's products, and certain "post-termination obligations" arose. (*Id.* ¶ 57.)

According to Garmon, HPI failed to perform the post-termination obligations, and "continues to advertise, promote, and sell hundreds of [Garmon's] products to end users on the HPI Websites without authorization and in breach of the Dealer Agreement." (*Id.* ¶ 61.) As a result, Garmon initiated the instant action. (*See generally* Compl.) Approximately one week after filing its Complaint, Garmon moved for a Preliminary Injunction, seeking to enjoin HPI from selling Garmon's products and from holding itself out to consumers as an Authorized Dealer. (Mot. for Prelim. Inj. 4, ECF No. 17.) HPI did not oppose the Preliminary Injunction, and on June 4, 2018, the Court granted Garmon's Motion, concluding that Garmon would likely succeed on the merits of its contract claims. (Order, ECF No. 38.) On October 19, 2018, HPI filed the instant Motion with the Court. During the pendency of the Motion, the parties filed a stipulation voluntarily dismissing Garmon's copyright claims, which the Court granted, thereby eliminating Garmon's fifth cause of action. (Order, ECF No. 102.)

### III. LEGAL STANDARD

After the pleadings are closed, but within such time as to not delay the trial, any party may move for judgment on the pleadings. Fed. R. Civ. P. 12(c). The standard applied on a Rule 12(c) motion is essentially the same as that applied on Rule 12(b)(6) motions; a judgment on the pleadings is appropriate when, even if all the allegations in the complaint are true, the moving party is entitled to judgment as a matter of law. *Milne ex rel. Coyne v. Stephen Slesinger, Inc.*, 430 F.3d 1036, 1042 (9th Cir. 2005); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact).") (citations omitted). When ruling on a motion for judgment on the pleadings, a court should construe the facts in the complaint in the light most favorable to the plaintiff, and the movant must clearly establish that no material issue of fact remains to be resolved. *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 810 (9th Cir. 1988). However, "conclusory allegations without more are insufficient to defeat a motion [for judgment on the pleadings]." *Id.* If judgment on the pleadings is appropriate, a court has discretion to grant the non-moving party leave to amend, grant dismissal, or enter a judgment. *See Lonberg v. City of Riverside*, 300 F. Supp. 2d 942, 945 (C.D. Cal. 2004).

### IV. DISCUSSION

In its Complaint, Garmon alleges the following causes of action: (1) injunctive relief; (2) breach of contract; (3) trademark infringement pursuant to 15 U.S.C. § 1114; (4) unfair competition pursuant to 15 U.S.C. § 1125(a); (5) copyright infringement; (6) unfair competition pursuant to Business and Professions Code section 17200; (7) tortious interference with contract; and (8) tortious interference with prospective economic advantage. (Compl. ¶¶ 76–131.) In its Motion, HPI requests the Court grant judgment in its favor for claims 1–4, 6, and 8. (Mot. 4.) Accordingly, the Court begins by analyzing jurisdiction before turning to the arguments presented.

## A. JURISDICTION

Federal courts have a duty to examine their subject-matter jurisdiction regardless of whether the parties raise the issue. *See United Investors Life Ins. Co. v. Waddell & Reed, Inc.*, 360 F.3d 960, 966 (9th Cir. 2004) ("[A] district court's duty to establish subject matter jurisdiction is not contingent upon the parties' arguments.") (citing *Mitchell v. Maurer*, 293 U.S. 237, 244 (1934)).

Garmon maintains that subject matter jurisdiction is proper pursuant to 28 U.S.C. §§ 1331 and 1338, and 15 U.S.C. § 1121, because this case involves federal questions of copyright infringement under the Copyright Act of 1976, 17 U.S.C. §§ 106 and 501, and trademark infringement and unfair competition under the Lanham Act, 15 U.S.C. §§ 1141(a) and 1125(a). (Compl. ¶¶ 5–6.) Garmon also argues that the Court may exercise supplemental jurisdiction under 28 U.S.C. § 1367(a). (*Id.* ¶ 7.)

Given that the parties voluntarily dismissed Garmon's copyright claims, federal question jurisdiction is proper so long as Garmon's Lanham Act claims exist. If the Court finds in HPI's favor and grants judgment on the Lanham Act claims, the matter will only remain properly before the Court if supplemental jurisdiction is appropriate.

## B. FIRST SALE RULE

HPI maintains that Garmon's Lanham Act and unfair competition claims fail because its sales are insulated from trademark infringement through the first sale rule. (Mot. 4–6.)

The Lanham Act allows trademark owners to sue competitors using an unauthorized copy of their mark that is "likely to cause confusion." 15 U.S.C. § 1114 and 1125(a).[2] However, "trademark law generally does not reach the sale of genuine goods bearing a true mark even though such sale is without the mark owner's consent." *NEC Elecs. v. CAL Circuit Abco*, 801 F.2d 1506, 1509 (9th Cir. 1987). Courts generally apply the first sale doctrine to the resale of trademarked goods. *See Sebastian Int'l, Inc.*

---

[2] The court analyzes both provisions together. *Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1047 n.8 (9th Cir. 1999).

*v. Longs Drug Stores Corp.*, 53 F.3d 1073, 1076 (9th Cir. 1995). As a general rule, this doctrine limits the trademark owner's right under the Lanham Act to control distribution of its own products after the product's first sale. *Enesco Corp. v. Price/Costco Inc.*, 146 F.3d 1083, 1085 (9th Cir. 1998). Under this doctrine, a purchaser may "stock, display, and resell a producer's product under the producer's trademark" without infringing on the producer's trademark. *Sebastian Int'l*, 53 F.3d at 1076. "After the first sale, however, the trademark holder may establish infringement only if he demonstrates that the goods are materially different." *Grateful Palate, Inc. v. Joshua Tree Imports, LLC*, 220 F. App'x 635, 637 (9th Cir. 2007) (citing *Enesco Corp.*, 146 F.3d at 1085). The resale of a materially different product constitutes trademark infringement because the product is not genuine and may cause confusion regarding the product's source, quality, or sponsorship. *See Enesco*, 146 F.3d at 1087.

The reason behind the rule "is that trademark law is designed to prevent sellers from confusing or deceiving consumers about the origin or make of a product, which confusion ordinarily does not exist when a genuine article bearing a true mark is sold." *NEC Elecs.*, 810 F.2d at 1509 (citing *Prestonettes, Inc. v. Coty*, 264 U.S. 359, 368–69 (1924)).

HPI argues that Garmon's trademark and unfair competition claims must be dismissed because "each is based on HPI's advertisement, promotion[,] and sale of genuine [Garmon] products bearing [Garmon's] original trademarks that were purchased by HPI from third parties." (Mot. 9.) Garmon counters with four arguments: 1) HPI's first sale rule defense fails because "HPI illegally obtained [Garmon] products by tortuously inducing Authorized Dealers to breach their contracts with [Garmon] and sell products to HPI"; 2) Garmon's animal health products are materially different in accompanying services, quality control, and warranties; 3) HPI has illegally used Garmon's copyrighted images and product descriptions to falsely associate with Garmon; and 4) HPI's actions cause customer confusion and harm Garmon's goodwill. (Opp'n to Mot. 16, ECF No. 90.)

5

### 1. Illegal Procurement

Garmon's first argument centers on HPI's alleged unlawful procurement. (Opp'n 16–17.) The Court finds this argument unavailing, as neither *Sebastian Intern.*, *Prestonettes*, nor any other case from the Ninth Circuit or Supreme Court include lawful acquisition as an element of the first sale rule or require a party invoking the first sale rule to prove lawful procurement. To accept Garmon's argument would add an additional element to the first sale rule as set forth by the Ninth Circuit and Supreme Court. The purpose of the first sale rule specifically, and trademark law generally, is to prevent consumer confusion. Its purpose is not to provide an alternate avenue for litigating contract or tort disputes.

Even assuming for the sake of argument that lawful procurement was a necessary element of the first sale rule, Garmon has offered nothing more than conclusory allegations and assumptions. Specifically, Garmon argues that HPI's procurement stems from its conduct of "unlawfully inducing other dealers to sell product" and repeatedly references HPI's "unlawful purchases." (*Id.*, Compl. ¶ 63.) These statements, without more, fail to rise above the speculative level required to survive. Thus, the Court is unwilling to chart Garmon's proposed course.

### 2. Material Difference

Having found HPI's conduct within the ambit of the first sale rule, the Court must determine whether the products sold by HPI are materially different. *Enesco Corp.*, 146 F.3d at 1085.

HPI maintains that Garmon's Complaint indicates that "HPI stocks and sells genuine [Garmon] products bearing [Garmon's] trademarks that are purchased from [Garmon's] Authorized Dealers and Distributors." (Mot. 7; Compl. ¶¶ 103, 122.) The thrust of Garmon's counter-argument is that Garmon also sells services, quality control, and provides warranties which when detached from the product can create confusion. (Opp'n 18.) Garmon faces an uphill battle in proving material difference because it alleged in its Complaint that HPI is selling trademarked Garmon products, and offers

no explanation bearing on how the HPI's product **itself** is distinguishable from the product produced and sold by other authorized dealers. (Compl. ¶¶ 103, 122.) Nevertheless, the Court addresses Garmon's argument.

The Ninth Circuit has previously addressed services in the material difference context and reversed a district court's grant of partial summary judgment and preliminary injunction based on consumer confusion as to whether services came with the resold product. *NEC Elec. Inc.*, 810 F.2d at 1507. The Ninth Circuit concluded that such a consumer concern was insufficient to preclude application of the first sale rule. *Id*. at 1509–10. A court in this district also concluded that lack of services is insufficient to preclude the application of the first sale rule, resisting the urge to expand the scope of the Lanham Act. *See Summit Technology, Inc. v. High–Line Medical Instruments Co., Inc.*, 922 F. Supp. 299, 311 n.8 (C.D. Cal. 1996) ("[T]he logical conclusion of this argument would mean that any person who sells an unmaintained product could be liable for trademark infringement.") (internal citation and quotation omitted.) The same reasoning applies with equal force here, and the Court finds Garmon's argument unavailing.

As to Garmon's quality control argument, Garmon's Complaint indicates that HPI purchased Garmon product from authorized dealers, but offers no argument that HPI altered its products prior to resale. Such an argument without support is insufficient. Moreover, Garmon attached various exhibits of both Garmon and HPI's websites offering identical products for sale. (Compl., Exs. D–G.) In analyzing these exhibits, it becomes clear that there is no alteration, repackaging, or diminished product available for sale. The products bear names associated with Garmon, not HPI. (*Id*.) *See Harman Int'l Indus., Inc. v. Pro Sound Gear, Inc.*, No. 2:17-cv-06650-ODW (FEMx), 2018 WL 1989518, at *3 (C.D. Cal. Apr. 24, 2018) (holding that products were materially different because Defendant altered Plaintiff's product prior to resale). In sum, the mere allegation that HPI "unlawfully" obtained genuine product from an authorized dealer cannot, without more, transform the quality of the product. Thus, this

argument fails.

Although Garmon initially alleges that the lack of warranty results in a material difference, it did not plead more than conclusory allegations. Thus, the Court will not analyze the warranty argument, and based on the evidence and papers before the Court, the Court finds that the products are not materially different.

### 3. Remaining Arguments

Garmon's third argument of false association also fails because the Ninth Circuit rejected this very argument in *Sebastian*, holding that "the 'first sale' rule is not rendered inapplicable merely because consumers erroneously believe the reseller is affiliated with or authorized by the producer." 53 F.3d at 1075.

As to Garmon's final argument, confusion, the course is clear: for the first sale rule to apply there can be no confusion. Thus, Garmon's remaining arguments fail.

In sum, Garmon's arguments do not demonstrate that the products are materially different, so there is no risk of consumer confusion. Accordingly, the first sale rule applies, and Garmon's trademark infringement and unfair competition claims are dismissed with prejudice.

### 4. Remaining Claims

Given that the Court has dismissed Garmon's Lanham Act trademark infringement and unfair competition claims, all remaining claims are matters of state law. As such, the Court must determine whether to exercise supplemental jurisdiction over Plaintiffs' remaining state-law claims.

## C. SUPPLEMENTAL JURISDICTION

Dismissal of the federal claims do not deprive a federal court of the power to adjudicate the remaining pendent state claims. "However, 'pendent jurisdiction is a doctrine of discretion . . . .'" *Nishimoto v. Federman–Bachrach & Assocs.*, 903 F.2d 709, 715 (9th Cir. 1990) (quoting *United Mine Workers v. Gibbs,* 383 U.S. 715, 726 (1966)) (internal citations omitted). There is a "distinction between the power of a federal court to hear state-law claims and the discretionary exercise of that power."

*Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 349–50 (1988). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors [judicial economy, convenience, fairness, and comity] . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *Id.* at 350 n.7; *Harrell v. 20th Century Ins. Co.*, 934 F.2d 203, 205 (9th Cir. 1991); *Weintraub v. Sotheby's Int'l Realty, Inc.*, No. 18-cv-6922-AB (KSx), 2019 WL 1125343, at *2 (C.D. Cal. Mar. 12, 2019). "[T]hese factors usually will favor a decision to relinquish jurisdiction when 'state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought.'" *Carnegie–Mellon*, 484 U.S. at 350 n.7 (quoting *United Mine Workers*, 383 U.S. at 726).

Garmon initiated this action and premised jurisdiction on federal question through violations of trademark and copyright law. (Compl. ¶ 5.) Given that the Court dismissed Garmon's trademark and unfair competition claims, and the parties voluntarily dismissed Garmon's copyright claim, federal question jurisdiction no longer exists. Further, diversity jurisdiction is not available, as both parties are citizens of California. (*See* Compl. ¶¶ 2, 3.)

After carefully considering the *Carnegie–Mellon* factors, it is clear that this matter is at its heart a contractual dispute, which is a state law issue. Thus, the Court declines to exercise supplemental jurisdiction on the remaining state law claims.

### D. LEAVE TO AMEND

In general, a court should liberally allow a party leave to amend its pleading. *See* Fed. R. Civ. P. 15(a); see also *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001) ("A district court shall grant leave to amend freely when justice so requires," and "this policy is to be applied with extreme liberality.") However, the Court may deny leave to amend where amendment would be futile. *Gardner v. Martino*, 563 F.3d 981, 990 (9th Cir. 2009). "When a proposed amendment would be futile, there is no need to prolong the litigation by permitting further amendment." *Chaset v. Fleer/Skybox Int'l, LP*, 300 F.3d 1083, 1088 (9th Cir. 2002) (affirming the trial court's

denial of leave to amend where plaintiffs could not cure a basic flaw—inability to demonstrate standing—in their pleading).

In sum, permitting Garmon to amend its Complaint is futile because amendment cannot cure Garmon's failed trademark claims. Thus, leave to amend is not permitted.

## V. CONCLUSION

For the foregoing reasons, HPI's Motion for Judgment on the Pleadings is **GRANTED in PART.** (ECF No. 89.) The Court shall issue judgment.

**IT IS SO ORDERED.**

May 16, 2019

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**